UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------X

BRIAN G. McNAMEE,

                          Plaintiff,                                09 Civ. 1647(SJ)(CLP)

    -against-

                                                                  **COMPLAINT/
                                                                  JURY DEMAND**

WILLIAM ROGER CLEMENS,

                          Defendant.

---------------------------------------------------------X

        Plaintiff BRIAN G. MCNAMEE, by his attorneys Emery Celli Brinckerhoff & Abady LLP, for his Complaint alleges as follows:

## INTRODUCTION

        1.     Plaintiff Brian McNamee ("McNamee" or "plaintiff"), an athletic trainer, brings this diversity action, against defendant Roger Clemens ("Clemens" or "defendant"). Clemens is a former Major League Baseball pitcher whom McNamee injected with steroids and HGH. When asked about steroid and HGH use by federal investigators and Congress, McNamee truthfully stated that he had given both substances to Roger Clemens. Rather than acknowledging the truth of McNamee's allegations, Clemens has waged a defamatory public relations campaign against McNamee. Clemens' campaign—which included maliciously filing a complaint containing false allegations—was intended to deceive the public and Congress into falsely believing that McNamee is a liar. This highly-visible, well-financed and orchestrated campaign has had one of its intended effects: to ruin McNamee's livelihood and reputation, and

inflict on him severe emotional distress and pain and suffering.

## JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction because Clemens and McNamee are citizens of different states and the amount in controversy exceeds seventy-five thousand dollars ($75,000), exclusive of interest and costs.

3. This Court has personal jurisdiction over defendant under the New York long-arm statute. Plaintiff's cause of action for defamation and intentional infliction of emotional distress arises out of Clemens' transaction of business in New York (N.Y. CPLR § 302(a)(1)), including, *inter alia,* Clemens' transaction of business with a New York producer (CBS, which produces 60 Minutes), Clemens' contract with plaintiff for personal training in New York, and upon information and belief, Clemens' contracting with Hendricks Sports Management which does business in New York and has employees assigned to New York. Plaintiff's cause of action for intentional infliction of emotional distress and malicious prosecution arise out of Clemens' commission of tortuous acts (N.Y. CPLR § 302(a)). Additionally, defendant has substantial, continuous, and systematic contacts with New York, including, *inter alia,* as a long-time resident of the state, an employee of the New York Yankees, and, upon information and belief, by continuing to receive payments from the New York Yankees and through endorsement and personal services contracts. Moreover, the assertion of jurisdiction over defendant is fair and reasonable, and does not violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

4. Venue is proper in this Court pursuant as defendant Clemens removed this action from New York state court in Queens County, New York.

**JURY DEMAND**

5.      Plaintiff demands a trial by jury in this action.

**PROCEDURAL BACKGROUND**

6.      On January 6, 2008, Clemens filed a civil lawsuit against McNamee in Texas state court.  McNamee removed that lawsuit to the Southern District of Texas and moved to dismiss *Clemens v. McNamee*, 08-cv-00471 (S.D. Tex.).  On February 12, 2009, the Court dismissed Clemens' claim that McNamee defamed Clemens in his statements to Senator Mitchell and his staff and also dismissed Clemens' claim that McNamee defamed Clemens in his statements to a SI.com reporter named Jon Heyman.

7.      Plaintiff filed the instant action by Summons with Notice on December 12, 2008, in Supreme Court of the State of New York, County of Queens, in a case denominated *Brian G. McNamee v. William Roger Clemens,* No. 29813-08.  On or about April 22, 2009, defendant filed a Notice of Removal, and removed the action to this Court.  By means of a Stipulation and Order, ordered by this Court on May 4, 2009, the time for filing and serving a Complaint was extended until July 31, 2009.

**FACTS**

*Plaintiff's Position as an Elite Athletic Trainer*

8.      McNamee began his Major League Baseball (MLB) career as a bullpen catcher and batting practice pitcher with the New York Yankees.

9.      A graduate of St. John's University, where he majored in athletic administration, McNamee later worked as an athletic trainer for the Toronto Blue Jays and the New York Yankees.  He has trained such notable athletes as defendant Roger Clemens, Andy

Pettitte, Chuck Knoblauch, and many others.

10. McNamee's relationship with Clemens began in 1998, when plaintiff was employed as a trainer with the Toronto Blue Jays. It continued while McNamee was employed by the New York Yankees, and, after leaving the Yankees' employ, Clemens hired McNamee to serve as his personal trainer.

11. McNamee trained Clemens in New York.

12. A personal trainer requires expertise in physical care of athletes, truthfulness, discretion, trustworthiness, and following his client's requests. Before Clemens made his defamatory allegations, as detailed below, McNamee had an excellent reputation as a personal trainer.

*Clemens' Use of Steroids and HGH is Revealed*

13. In approximately June 1998, Clemens approached McNamee and asked him for help injecting a steroid called Winstrol. McNamee complied with Clemens' request and injected Clemens with steroids.

14. Pursuant to Clemens' subsequent requests, McNamee injected Clemens with steroids numerous times during the 1998, 2000 and 2001 baseball seasons. During the 2000 baseball season, McNamee also injected Clemens with Human Growth Hormone (HGH).

15. These injections occurred in Clemens' apartment in the Toronto Skydome, the Tampa Bay clubhouse, the New York Yankees clubhouse and, most commonly, in Clemens' apartment on the Upper East Side of Manhattan.

16. McNamee kept Clemens' use of steroids and HGH a secret for years.

17. In Spring 2007, however, McNamee was approached by federal

investigators from the office of the United States Attorney for the Northern District of California.

18. Under penalty of prosecution for making any false statement, McNamee informed the federal investigators that he had injected Clemens with steroids and HGH on multiple occasions.

19. At the insistence of the United States Attorney's office, and on pain of prosecution, McNamee met with former Senator George Mitchell and his staff.  Senator Mitchell was investigating steroid and HGH use in Major League Baseball.  Federal investigators participated in these meetings and McNamee again faced criminal charges if he made any false statements during the meetings with Senator Mitchell.  McNamee repeated to Senator Mitchell and his staff, in the presence of federal investigators, that he had injected Clemens with steroids and HGH on a number of occasions.

20. On December 13, 2007 Senator Mitchell released his report, entitled the "Report to the Commissioner of Baseball of an Independent Investigation into the Illegal Use of Steroids and Other Performance Enhancing Substances by Players in Major League Baseball." That report was known as the "Mitchell Report" and this Complaint will refer to it as such.

21. The Mitchell Report named 89 MLB players who were alleged to have used performance enhancing substances.  One of those players was Roger Clemens.

22. Roger Clemens has publicly stated that he did not know that he would be named in the Mitchell Report prior to its release.  This is false.  In fact, before Senator Mitchell issued his report, McNamee contacted Clemens' agent to inform Clemens that he would be named in the report.  Clemens' counsel immediately sent two investigators to question and surreptitiously tape McNamee who detailed to the investigators the statements he had made to

Senator Mitchell.

23. In addition to McNamee's testimony concerning personally injecting Clemens with HGH and steroids, McNamee has provided federal investigators with used syringes, cotton balls, gauze, and broken steroid ampules that McNamee used to inject Clemens with steroids. McNamee has also provided federal investigators with unused needle heads, steroid pills, and unbroken testosterone ampules that Clemens asked him to dispose of at the end of the 2002 season.

*Clemens Refuses to Admit that he used Steroids/HGH and Instead Launches a Media Campaign Against McNamee*

24. Immediately after release of the Mitchell Report, Clemens launched an intense and coordinated public relations offensive against plaintiff that branded plaintiff a liar.

25. Clemens publicly and vociferously denied that McNamee told the truth about Clemens' use of steroids.

26. Clemens publicly and vociferously denied that McNamee told the truth about Clemens' use of HGH.

27. Instead, Clemens publicly stated that he had never used steroids or HGH.

28. Indeed, Clemens, through his attorney, "vowed to play hardball in attacking Brian McNamee," according to reporting by the *New York Times*.

29. After the Mitchell Report was released, Clemens began a very public campaign claiming that he had never used steroids or HGH. He repeatedly accused McNamee of deceit and defamation.

30. This campaign was directed at McNamee's truthful statements to the federal investigators and Senator Mitchell (and his staff). McNamee is the only person who has

publicly stated that he witnessed Clemens use steroids. McNamee is the only person who has publicly stated that he witnessed Clemens use HGH. McNamee is the only person who has publicly stated that he injected Clemens with steroids. McNamee is the only person who has publicly stated that he injected Clemens with HGH. Accordingly, Clemens' statements denying his use of HGH and steroids are of and concerning plaintiff because the context of Clemens' denials cannot refer to any person other than plaintiff.

31. Moreover, Clemens has never suggested that McNamee's statements about Clemens' use of steroids and HGH resulted from an innocent mistake or misunderstanding. Instead, Clemens has repeatedly accused plaintiff of intentionally lying.

32. In late December 2007, Clemens taped an interview with Mike Wallace on 60 Minutes, as detailed further below. During his interview with Mike Wallace, Clemens repeatedly denied McNamee's allegations, stating that he never took HGH or steroids. He said that McNamee's allegations were "totally false." He insisted that McNamee only injected him with Lidocaine and B-12. (This was another falsehood by Clemens: McNamee never injected Clemens—or anyone else—with Lidocaine or B-12.). That interview was aired on broadcast television on Sunday, January 6, 2008.

33. The day after the 60 Minutes interview was aired, Clemens held a press conference. It was at that press conference that he informed the world—and, for the first time, plaintiff—that the day before, on a Sunday evening, he had filed a defamation suit against McNamee.

34. At the January 7, 2008 press conference, Clemens also played a tape recording of a conversation between him and McNamee that he had surreptitiously taped without

McNamee's permission. In that conversation, which McNamee believed to be a personal, private conversation, McNamee discussed private medical information concerning his son. McNamee believed that information was private and never believed that Clemens would disseminate that information. Without McNamee's consent, Clemens played this tape-recorded phone call at his press conference, which was broadcast nationally, thus revealing the information concerning McNamee's son and disrupting McNamee's family. McNamee suffered extreme emotional distress as a result of having his son's private medical information be revealed to a national audience.

35. Clemens knew that McNamee's statements about Clemens' use of HGH and steroids were wholly true and not defamatory. Accordingly, Clemens' lawsuit was wholly frivolous, a perversion of judicial proceedings, and was initiated with malice and in bad faith. The lawsuit was instituted for the sole purpose of publishing defamatory statements about McNamee and bolstering Clemens' public relations strategy.

36. Clemens continued his public relations campaign in the halls of Congress. Clemens sought and obtained from Congress a public hearing to further brand McNamee as a liar. In February 2008, the House of Representatives' Committee on Oversight and Government Reform held a hearing on the Mitchell Report and Clemens insisted on testifying.

37. After that hearing, wherein Clemens had ample opportunity to attempt to disprove McNamee's statements, on February 27, 2008, the Republican and Democratic ranking members of the House Committee on Oversight and Government Reform asked the U.S. Department of Justice to investigate whether Clemens committed perjury when he denied, under oath, using steroids or HGH.

38. On information and belief, a Grand Jury has been impaneled to investigate Clemens' perjurious statements to the House of Representatives. Some press reports have stated that Clemens expects to be indicted.

*Clemens' Defamatory Statements*

39. Clemens repeatedly denied McNamee's true allegations.

40. Clemens and his agents falsely stated that McNamee was a liar who lied to both federal authorities (in violation of 18 U.S.C. § 1001) and Congress (thereby committing perjury). Clemens and his agents falsely stated that McNamee manufactured evidence. Clemens and his agents falsely stated that McNamee was troubled, "off the deep end," and unstable, a person who had a vendetta against Clemens and was determined to destroy him. Clemens and his agents falsely accused McNamee of "shaking Clemens down," i.e. extorting Clemens. Clemens and his agents repeatedly and falsely accused McNamee of serious criminal conduct.

41. Clemens made these statements personally and through his agents, including Randy Hendricks and Hendricks Sports Management, Rusty Hardin and Lanny Breuer. These agents made these defamatory statements concerning plaintiff pursuant to their actual authority from Clemens (the principal) and/or as specifically authorized by Clemens as part of Clemens' public relations campaign. Clemens never retracted or objected to any statement of the agents listed above and therefore approved and adopted such statements by his agents.

A. <u>Statements Charging that McNamee is a Liar</u>

42. A December 14, 2007 *New York Times* article entitled "Former Trainer Puts Yankees Stars Under Microscope" reported that Clemens "denied that [he] used enhancers." Clemens' agent, Rusty Hardin, stated that "Clemens denied the allegations and was outraged that

his name was included in the report." Mr. Hardin, speaking on Clemens' behalf, described McNamee's allegations as "uncorroborated," though McNamee personally witnessed Clemens' use of HGH/steroids. (Attached as Exhibit A.)

43. A December 18, 2007 *New York Times* story entitled "Trainer's Steroid Testimony Followed Deal With Prosecutors" reported that Clemens' agent, Rusty Hardin, stated that "his client was outraged at the accusations against him in the Mitchell report." He also stated that "McNamee's deal with the government gave him incentive to lie." (Attached as Exhibit B.)

44. In a written statement released on or about December 18, 2007, Clemens stated, referring to "Senator Mitchell's Report," that he "did not take steroids, human growth hormone or any other banned substances at any time in my baseball career or, in fact, my entire life." The statement was widely reported in the media, including in a December 19, 2007 *New York Times* article entitled "Clemens Strongly Denies Allegations by His Ex-Trainer." (Attached as Exhibit C.)

45. In a December 21, 2007 story, in the *Houston Chronicle*, entitled "Judge: Clemens wrongly implicated / Ex-pitcher Grimsley didn't name former Astro, as newspaper reported" Clemens' agent, Mr. Hardin, stated that "Roger Clemens did not take steroids, and anybody who says he did had better start looking for a hell of a good lawyer." (Attached as Exhibit D.)

46. On December 23, 2007, Roger Clemens released a video on the internet website YouTube.com, unofficial transcript attached as Exhibit E. In the video, Clemens speaks directly to the camera and says that in "the last 15 days or so" – clearly referring to the passage

of time since he learned he would be named in the Mitchell Report – have "been extremely difficult." He stated: "I faced this last year when the LA Times reported that I used steroids. I said it was not true then and now the whole world knows it's not true now that that's come out. It surfaced again later now with this Mitchell Report and let me be clear, the answer is no, I did not use steroids, human growth hormone and I've never done so.  I did not provide Brian McNamee with any drugs to inject into my body. Brian McNamee did not inject steroids or human growth hormones into my body either when I played in Toronto for the Blue Jays or the New York Yankees.  This report is simply not true."

47.     On or about December 27, 2007, defendant was interviewed by Mike Wallace of CBS's 60 Minutes, a program produced in New York.  Clemens knew that this interview would be broadcast on national television.  The interview was specifically in response to McNamee's allegations, as detailed in the Mitchell Report.  During that interview, a transcript of which is attached as Exhibit F, Clemens described McNamee's allegations as "ridiculous," "totally false," and said, "It's hogwash for people to even assume this."  Clemens asked "How can you prove your innocence?"  Clemens flatly denied McNamee's allegations, stating "Never. I trained hard my entire career.  It just didn't happen," and "Never happened, Never Happened," and "It didn't happen. It didn't happen, It just didn't happen."  In response to a question as to why Brian McNamee would want to betray him, Clemens said "I don't know, I'm so upset about it, how I treated this man and took care of him."  An edited version of this interview was broadcast on national television on January 6, 2008.

48.     Clemens filed a civil Complaint against McNamee on or about January 6, 2008.  In Clemens' civil Complaint, Clemens stated that "McNamee appeared before the

Mitchell Commission and intentionally and maliciously repeated to its members his false accusations that Clemens had used steroids and HGH." First Amended Complaint ¶ 33, *Clemens v. McNamee*, 08-cv-00471 (S.D. Tex.), attached as Exhibit G. The term "repeated" is in reference to the Complaint's earlier statement that McNamee "told the federal investigators that he had injected Clemens with steroids in 1998, 2000, and 2001, and HGH in 2000." *Id.* ¶ 29. The Complaint also stated that "McNamee has publicly repeated his false accusations that Clemens used steroids." *Id.* ¶ 35. Additionally, the Complaint stated that "McNamee had previously told Andy Pettitte the same fiction that he had told the Mitchell Commission and SI.com—that Clemens had used steroids and HGH. Specifically, McNamee falsely told Pettitte during a conversation in Clemens' home gym in Houston, Texas in 1999 or 2000 that Clemens had used HGH. And McNamee also falsely told Pettitte at Pettitte's home gym in Deer Park, Texas in 2003 or 2004 that Clemens had used steroids." *Id.* ¶ 36. Finally, the Complaint states that "McNamee's accusation that Clemens had used steroids is absolutely false," and McNamee knew it was false." *id.* ¶¶ 40, 42; it also states that "McNamee's accusation that Clemens had used HGH is absolutely false," and "McNamee knew it was false," *id.* ¶¶ 48, 50.

        49.      On January 7, 2008, Clemens' agent, Rusty Hardin, stated that he expected McNamee to "admit he was lying," in an article in the *Houston Chronicle* entitled "Clemens files defamation suit against his ex-trainer." In that same story, Clemens also said that "after a year with the LA Times, at the end of the day I got an apology. Maybe I'll get that again. Maybe I'll get an apology that 'I'm sorry about the lies. I'm sorry that we did what we did.'" In context it is clear that the "lies" Clemens is referring to are McNamee's allegations regarding Clemens' use of steroids and HGH. (Attached as Exhibit H.)

50. In a January 13, 2008 *New York Times* article entitled "Clemens Faces Dangers of Spin in Steroid Case," Clemens' agent, Rusty Hardin, stated, in reference to McNamee's allegations, that "Roger knows that these allegations are untrue." (Attached as Exhibit I.)

51. In a January 30, 2008 *New York Times* article entitled "Pettitte Will Discuss Clemens, Lawyers Say," Clemens' agent, Lanny Breuer, stated "Regardless of what Mr. McNamee purports to have said, Roger Clemens's remarkable success as a pitcher has everything to do with his extraordinary work ethic and his innate abilities, and nothing to do with H.G.H. or steroids." He also stated, "Let me be clear: Roger Clemens never took H.G.H. and he never took steroids." (Attached as Exhibit J.)

52. In a February 8, 2008 article in the *New York Times* entitled "Clemens and McNamee Take Stories to the Hill," Clemens' agent, Rusty Hardin stated, in reference to McNamee's allegations that Clemens had used steroids and HGH, that McNamee "is constantly lying." (Attached as Exhibit K.)

53. A March 5, 2008 *New York Times* article entitled "McNamee's Lawyers Seek Ouster of Hardin," reported that Clemens' agent, Rusty Hardin, stated in an email message that: "Brian McNamee's statements to the Mitchell commission and others concerning steroid and H.G.H. use by Roger Clemens are absolutely false and the very definition of defamatory." (Attached as Exhibit L.)

54. In a May 6, 2008 article in the *New York Times* entitled "Clemens Acknowledges Mistakes in Personal Life," Clemens stated that in reference to the assertions by McNamee: "But I cannot confess to, nor apologize for, things I did not do." (Attached as Exhibit

M.)

55. On May 12, 2009, Clemens was interviewed for ESPN's "Mike & Mike in the Morning" show, which is broadcast nationally on the radio. As part of that interview Clemens stated, in a response to a question about drug "paraphernalia provided by Brian McNamee reportedly containing your [Clemens'] DNA," Clemens stated: "Impossible because he's never given me any. It's as simple as that. He's never given me HGH or any kind of performance enhancing drug, so it's impossible." He also stated, in response to a question about Brian McNamee injecting him, that "He's never injected me with HGH or steroids." (Transcript attached as Exhibit N).

B. Statements Charging that McNamee Manufactured Evidence

56. In a February 8, 2008 article in the *New York Times* entitled "Clemens and McNamee Take Stories to the Hill," Clemens agents, Rusty Harding and Lanny Breuer referred to the steroid paraphernalia that McNamee produced to the federal investigators as "so-called evidence." Mr. Breuer also stated that "In the cheapest, most mean-spirited stunt, he has made up a bunch of evidence." (Attached as Exhibit K.)

57. In a February 8, 2008 article in the *Houston Chronicle* entitled "McNamee team presents photos / Clemens lawyer calls pictures of needles, vials, gauze 'ludicrous,'" Clemens' agent, Mr. Hardin referred to the steroid paraphernalia as "fabricated waste." He also stated that what "it shows is what a desperate person he was to try to ruin Roger." (Attached as Exhibit O.)

C. Statements Charging that McNamee Has a Mental Disorder

58. A December 14, 2007 New York Times article entitled "Former Trainer

Puts Yankees Stars Under Microscope" reported that Clemens' agent, Rusty Hardin, speaking on his behalf, described McNamee as "troubled and unreliable." (Attached as Exhibit A.)

59. In a February 7, 2008 article in the New York Times entitled "Clemens and McNamee Take Their Stories to Capitol Hill," Clemens' agent, Lanny Breuer, stated that McNamee was "a troubled man who is obsessed with doing everything possible to destroy Roger Clemens." He stated that no one in "their right mind" would save Clemens' steroid paraphernalia. He described McNamee as someone "who's crazy enough to say he kept syringes for nine years." (Attached as Exhibit P.)

60. In a February 8, 2008 article in the *New York Times* entitled "Clemens and McNamee Take Stories to the Hill," Clemens' agents, Rusty Hardin and Lanny Breuer, stated that the steroid paraphernalia "was manufactured by an unstable accuser with a vendetta against Clemens, who once treated him like a member of the family" and that saving the paraphernalia was "a psycho thing" to do. It is clear that the alleged "unstable accuser" is McNamee. (Attached as Exhibit K.)

61. In a February 8, 2008 article in the *Houston Chronicle* entitled "McNamee team presents photos / Clemens lawyer calls pictures of needles, vials, gauze 'ludicrous,'" Clemens' agent, Rusty Hardin stated that McNamee is "off the deep end," and said that what "it shows is what a desperate person he was to try to ruin Roger." (Attached as Exhibit O.)

D.   Statements Charging that McNamee is Extorting Clemens

62. In a February 8, 2008 article in the New York Times entitled "Clemens and McNamee Take Stories to the Hill," Clemens' agent, Rusty Hardin, stated that McNamee "wanted to shake Roger down" and stated that "He is constantly lying." (Attached as Exhibit K.)

63. On May 12, 2009, Clemens was interviewed for ESPN's "Mike & Mike in the Morning" show, which is broadcast nationally on the radio. As part of that interview Clemens stated, regarding McNamee's allegations, "But again, I can't defend a negative. When you've got somebody out there that is really just crawling up your back to make a buck, which is what this is." (Attached as Exhibit F.)

***Clemens' Statements, Lawsuit, and Release of Personal Information Ruin McNamee's Livelihood and Reputation and Cause him Severe Emotional Distress***

64. As a result of Clemens' defamatory statements, McNamee's financial status rapidly deteriorated and his career was destroyed. Plaintiff has suffered cataclysmic economic damage as a result of defendant's actions and lost virtually all of his prospects for employment.

65. Clemens' statements have also humiliated McNamee, destroyed his reputation, both personally and professionally, and caused him severe emotional distress.

66. Clemens' maliciously-filed lawsuit, which lacked any basis in fact, decimated McNamee's business, career, and livelihood.

67. Clemens public release of private medical information concerning McNamee's son disrupted McNamee's family and caused McNamee severe emotional distress.

## FIRST CLAIM FOR RELIEF
(Defamation)

68. Plaintiff repeats and realleges the foregoing paragraphs as if the same were fully set forth at length herein.

69. Clemens, personally and through his agents, intentionally and maliciously made false statements of fact, of and concerning McNamee, as detailed above and specifically in

paragraphs 42-63. Those statements made by Clemens' agents were made with actual authority from Clemens, the principal.

70. These statements exposed plaintiff to public hatred, contempt, ridicule, and/or disgrace.

71. These false statements constitute libel as they were made in writing, broadcast on television and/or radio, widely disseminated on the internet and/or told to reporters with the knowledge that the statements would be reduced to writing and published in newspapers and other media outlets.

72. These statements constituted libel per se as they exposed plaintiff to public contempt, ridicule, aversion, disgrace, and/or induced an evil opinion of him in the minds of right-thinking persons, and deprived him of their friendly intercourse in society.

73. These statements imputed that plaintiff acted with fraud, dishonesty, misconduct and/or unfitness in his profession, in that they indicate that plaintiff lied about his client, lied about his client's use of steroids, lied about his client's use of HGH, was untrustworthy, and/or extorted money from Clemens.

74. These statements imputed that plaintiff had committed the serious crimes of lying to federal investigators, lying to Congress, manufacturing evidence, and/or extortion.

75. These statements imputed that plaintiff was mentally imbalanced and/or had a mental disease.

76. The statements referred to plaintiff by name and anyone reading, watching, or hearing the statements would reasonably understand that the statements referred to and were of and concerning McNamee.

77.     The statements were widely published and disseminated on national newspapers, national television and radio programs, and on the internet.

78.     The statements were false.

79.     Defendant and/or Clemens' agents with Clemens' general and/or specific authorization and adoption published the statements and knew that the statements were false and such statements were wanton in nature, and made with specific intent to damage plaintiff's good name.

80.     As a result of defendants' statements, McNamee has been defamed *per se* and has been damaged. The statements also have caused and continue to cause plaintiff economic damage, psychological pain, suffering, and mental anguish, and other losses.

81.     As a result of Clemens' malicious, intentional and knowing misconduct, McNamee suffered damages in an amount to be determined at trial.

## SECOND CLAIM FOR RELIEF
(Malicious Prosecution)

82.     Plaintiff repeats and realleges the foregoing paragraphs as if the same were fully set forth at length herein.

83.     Clemens maliciously instituted a civil proceeding against McNamee without probable cause, by filing a lawsuit against McNamee on or about January 6, 2008 in Texas.

84.     Clemens knew that there was no probable cause for his lawsuit, as he knew that McNamee's statements concerning Clemens' use of HGH and steroids were wholly true and therefore not defamatory.

85.     By commencing and continuing a civil lawsuit where he knew that the

lawsuit was frivolous and baseless, and where the purpose of such lawsuit was solely to destroy McNamee's career and reputation, Clemens acted with actual malice.

86. On February 12, 2009, United States District Judge Keith Ellison dismissed Clemens' claim that McNamee defamed Clemens in his statements to Senator Mitchell and his staff (attached as Exhibit Q). The Court also dismissed Clemens' claim that McNamee defamed Clemens in his statements to a SI.com reporter named Jon Heyman. This dismissal constitutes a favorable termination for plaintiff. The Court denied Clemens' motion to reconsider in a decision dated June 30, 2009 (attached as Exhibit R).

87. Plaintiff was injured by Clemens' malicious prosecution in that his business, career, and livelihood were decimated, such that Clemens' actions interfered with McNamee's property.

88. As a result of Clemens' malicious, intentional and knowing misconduct, McNamee suffered damages in an amount to be determined at trial.

### THIRD CLAIM FOR RELIEF
(Intentional Infliction of Emotional Distress)

89. Plaintiff repeats and realleges the foregoing paragraphs as if the same were fully set forth at length herein.

90. Clemens' actions in filing a lawsuit that he knew was based on wholly false allegations were extreme and outrageous.

91. Clemens' actions in publicly disclosing private medical information about a child were extreme and outrageous.

92. Clemens' actions in launching a repeated, consisted, and vociferous campaign to discredit McNamee, despite knowing that McNamee's statements were true, were

extreme and outrageous.

93. These actions were done with an intent to cause McNamee severe emotional distress and/or were done in disregard of a substantial probability of causing severe emotional distress.

94. As a result of Clemens' actions as alleged in paragraphs 90-92 and described further above, McNamee suffered extreme and severe emotional distress.

95. As a result of Clemens' malicious and intentional infliction of emotional distress, McNamee suffered damages in an amount to be determined at trial.

WHEREFORE, plaintiff respectfully requests judgment against defendant:

(A) awarding compensatory, consequential, and punitive damages in an amount to be determined at trial but certainly in excess of the $75,000 jurisdictional requirement; costs of suit; and attorneys' fees; and

(B) awarding such other and further relief as the Court may deem proper.

Dated: July 31, 2009
New York, New York

EMERY CELLI BRINCKERHOFF
& ABADY LLP

BY: _____/s/_____
Richard D. Emery (RE 5181)
Debra L. Greenberger (DG 5159)
75 Rockefeller Plaza, 20th Floor
New York, New York 10019

Earl Ward (EW 2875)
75 Rockefeller Plaza, 20th Floor
New York, NY 10019