IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

_____

BRIAN G. McNAMEE

          Plaintiff,

v.                                     Case No. 09-CV-1647 (EDNY)(SJ)(CLP)

WILLIAM ROGER CLEMENS,

          Defendant.

_____

## DEFENDANT ROGER CLEMENS'S
## REPLY IN SUPPORT OF HIS MOTION TO DISMISS

STEPTOE & JOHNSON, L.L.P.
Evan Glassman
Michael C. Miller
750 Seventh Avenue, Suite 1800
New York, New York  10019
Telephone:  (212) 506-3900
Facsimile:  (212) 506-3950

RUSTY HARDIN & ASSOCIATES, P.C.
Rusty Hardin
*Admitted Pro Hac Vice*
Joe Roden
*Admitted Pro Hac Vice*
1401 McKinney Street, Suite 2250
Houston, Texas  77010
Telephone:  (713) 652-9000
Facsimile:  (713) 652-9800

ATTORNEYS FOR
WILLIAM ROGER CLEMENS

# TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................................................... ii

INDEX OF AUTHORITIES ................................................................................... iv

ARGUMENTS & AUTHORITIES ............................................................................ 1

I.     This Court Lacks Personal Jurisdiction Over Clemens. ............................ 1

       A.     McNamee has not satisfied N.Y. C.P.L.R. § 301. ...................... 1

       B.     McNamee has not satisfied N.Y. C.P.L.R. § 302. ...................... 2

       C.     Pendent personal jurisdiction is unavailable. ............................ 4

II.    McNamee's Complaint Fails To State A Claim Upon Which Relief Can
       Be Granted. .......................................................................................... 5

       A.     As a matter of law, Clemens's statements are not defamatory. .......... 5

              1.     Statements denying McNamee's accusations are not
                     defamatory. ............................................................... 5

              2.     Statements that McNamee made up evidence are not
                     defamatory. ............................................................... 7

              3.     Clemens did not accuse McNamee of having a mental
                     disorder. .................................................................. 8

       B.     Clemens's statements that allegedly labeled McNamee a liar are true. ......... 9

       C.     McNamee consented to Clemens's statements. ............................ 10

       D.     McNamee's claims are barred by the judicial proceeding privilege. ......... 10

              1.     McNamee incorrectly interprets the Texas judicial
                     proceeding privilege. .................................................. 11

              2.     Clemens is entitled to assert the judicial proceeding privilege. ......... 12

              3.     This court can decide as a matter of law that the statements
                     McNamee complains about are privileged. ........................ 13

       E.     McNamee's claim for malicious prosecution should be dismissed. ......... 14

CERTIFICATE OF SERVICE ............................................................................................ 17

# INDEX OF AUTHORITIES

## Cases:

*50-Off Stores, Inc. v. Paribas*,
    No. SA-95-Ca-159, 1997 WL 790739 (W.D. Tex. May 20, 1997) ............................. 12, 13

*ABKCO Indus., Inc. v. Lennon*,
    377 N.Y.S.2d 362 (N.Y. Sup. 1975), *aff'd*, 384 N.Y.S.2d 784
    (N.Y. App. Div. 1976) ................................................................................................. 1, 2

*Anderson v. Docuport, Inc.*,
    No. 06 Civ. 3069(GEL), 2007 WL 485342 (S.D.N.Y. Feb. 13, 2007) ............................... 5

*Aro-Chem v. Buirkle*,
    968 F.2d 266 (2d Cir. 1992) ............................................................................................ 11

*Arrowsmith v. United Press Int'l*,
    320 F.2d 219 (2d Cir. 1963) (en banc) ............................................................................. 4

*Bell v. Lee*,
    49 S.W.3d 8 (Tex. App.—San Antonio 2001, no pet.) ...................................................... 14

*Best Van Lines v. Walker*,
    490 F.3d 239 (2d Cir. 2007) ............................................................................................. 4

*Brinkmann v. Adrian Carriers, Inc.*,
    815 N.Y.S.2d 196 (N.Y. App. Div. 2006) .......................................................................... 1

*Cameron Compress Co. v. Kubecka*,
    283 S.W. 285 (Tex. Civ. App.—Austin 1926, writ ref'd) ................................................. 13

*Castro v. East End Plastic Reconstructive and Hand Surgery, P.C.*,
    13 Misc.3d 1233(a), 2006 WL 3228412 (N.Y. Sup. Ct. 2006) ....................................... 15

*Celle v. Filipino Reporter Enterprises Inc.*,
    209 F.3d 163 (2d Cir. 2000) ............................................................................................. 6

*Chambers v. Time Warner, Inc.*,
    282 F.3d 147 (2d Cir. 2002) ....................................................................................... 9, 10

*Clemens v. McNamee*,
    638 F. Supp.2d 742 (S.D. Tex. 2009) ............................................................................... 5

*Colonomos v. The Ritz-Carlton Hotel Company, LLC*,
    No. 98CV2633(RCC), 2002 WL 732113 (S.D.N.Y. April 25, 2002) ................................ 5

*Dallas Ind. Sch. Dist. v. Finlan,*
    27 S.W.3d 220 (Tex. App.—Dallas 2000, pet. denied) ............................................... 11, 12

*Daystar v. Collmer,*
    176 S.W.3d 24 (Tex. App.—Houston [1st Dist.] 2004, pet. denied) .......................... 11, 12

*DeWitt v. Harris County,*
    904 S.W.2d 650 (Tex. 1995) ............................................................................................. 13

*Dudick v. Gulyas,*
    277 A.D.2d 686 (N.Y. App. Div. 2000) ........................................................................... 15

*Erving v. The Virginia Squires Basketball Club,*
    349 F. Supp. 709 (E.D.N.Y. 1972) ............................................................................... 1, 2

*Gasser Chair Co., Infanti Chair Mfg. Corp.,*
    No. 88 CV 3931 (ILG), 03 CV 6413 (ILG), 2006 WL 616267
    (E.D.N.Y. Mar. 6, 2006) ...................................................................................................... 3

*GTP Leisure Prods., Inc. v. B-W Footwear Co.,*
    391 N.Y.S.2d 489 (N.Y. App. Div. 1977) ......................................................................... 2

*Guccione v. Hustler Magazine, Inc.,*
    800 F.2d 298 (2d Cir. 1986) ............................................................................................... 9

*Hargrave v. Oki Nursery, Inc.,*
    646 F.2d 716 (2d Cir. 1980) ............................................................................................... 5

*Hartman v. Harris,*
    810 F. Supp. 82 (S.D.N.Y. 1992) ....................................................................................... 3

*Hill v. Herald-Post Publ'g Co.,*
    877 S.W.2d 774 (Tex. App.—El Paso 1994), *rev'd in part on other grounds,*
    891 S.W.2d 638 (Tex. 1994), 877 S.W.2d 783 ......................................................... 11, 12

*Heaney v. Purdy,*
    29 N.Y. 157 (N.Y. 1971) ................................................................................................. 15

*Independent Living Aids, Inc. v. Maxi-Aids, Inc.,*
    981 F. Supp. 124 (E.D.N.Y. 1997) ................................................................................ 6, 7

*James v. Brown,*
    637 S.W.2d 914 (Tex. 1982) ............................................................................................. 12

*Jones v. Clinton*,
  974 F. Supp. 712 (E.D. Ark. 1997) ............................................................... 13

*Kidder, Peabody & Co. v. IAG Intern. Acceptance, Group N.V.*,
  1997 WL 539772 (S.D.N.Y. 1997) ................................................................ 15

*Lancaster v. Colonial Motor Freight Line, Inc.*,
  581 N.Y.S.2d 283 (N.Y. App. Div. 1992) ........................................................ 1

*Landoil Res. Corp. v. Alexander & Alexander Servs., Inc.*,
  918 F.2d 1039 (2d Cir. 1990) ....................................................................... 1

*Mason v. Reiter*,
  No. 87 CIV. 4792 (JFK), 1988 WL 130947 (S.D.N.Y.
  Nov. 28, 1988) ............................................................................................ 4

*Milkovich v. Lorain Journal Co.*,
  497 U.S. 1 (1990) ........................................................................................ 6

*Muller-Paisner v. TIAA*,
  289 Fed. Appx. 461, 2008 WL 3842899 (2d Cir. Aug. 15, 2008) .................. 10

*Odeneal v. Wofford,*
  668 S.W.2d 819 (Tex. App.—Dallas 1984, writ ref'd n.r.e.) ......................... 14

*Price v. Viking Penguin, Inc.*,
  881 F.2d 1426 (8th Cir. 1989) ....................................................................... 8

*Reagan v. Guardian Life Ins. Co*,
  166 S.W.2d 909 (Tex. 1942) ......................................................................... 12

*Riley v. Ferguson*,
  1999 WL 191654 (Tex. App.—Houston [1st Dist.] April 18, 1999,
  pet. denied) ................................................................................................. 12

*Roth v. Jennings*,
  489 F.3d 499 (2d Cir. 2007) ........................................................................... 9

*Russell v. Clark*,
  620 S.W.2d 865 (Tex. Civ. App.—Dallas 1981, writ ref'd n.r.e.) .................. 13

*Sang Moo Cho v. North Shore Flushing, Inc.*,
  107 Misc.2d 1098, 436 N.Y.S.2d 843 (N.Y. Civ. Ct. 1981) ....................... 3, 4

*Seiferth v. Herlicopteros Atuneros, Inc.*,
  472 F.3d 266 (5th Cir. 2006) ......................................................................... 5

*Seven Seas Merger Corp. v. Ford,*
   No. 93 Civ. 6500(LMM), 1994 WL 9778 (S.D.N.Y. Jan. 11, 1994) ................................. 2

*Silsdorf v. Levine,*
   462 N.Y.S.2d 822 (1983) ........................................................................................................ 7

*Texas Beef Cattle Co. v. Green,*
   921 S.W.2d 203 (Tex. 1996) ................................................................................................. 15

*Tripodi v. Local Union No. 38, Sheet Metal Workers' International Ass'n, AFL–CIO,*
   120 F. Supp.2d 318 (S.D.N.Y. 2000) ................................................................................. 15

## Restatements:

RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 155 cmt. b .............................................. 15

RESTATEMENT (SECOND) OF TORTS § 586 ............................................................................. 12

RESTATEMENT (SECOND) OF TORTS § 587 ............................................................................. 12

## Statutes:

21 C.F.R. § 1308.13(f) ............................................................................................................ 3

21 U.S.C. § 333(e)(1) ............................................................................................................. 3

21 U.S.C. § 812(b), Schedule III(e) ....................................................................................... 3

21 U.S.C. § 841(a)(1) ............................................................................................................. 3

N.Y. C.P.L.R. § 301 ............................................................................................................... 1

N.Y. C.P.L.R. § 302 ............................................................................................................... 2

N.Y. C.P.L.R. § 302(a) ....................................................................................................... 4, 5

N.Y. C.P.L.R. § 302(a)(1) ...................................................................................................... 2

N.Y. PENAL LAW § 220.00 (McKinney 2009) ........................................................................ 3

N.Y. PENAL LAW § 220.03 (McKinney 2009) ........................................................................ 3

N.Y. PUBLIC HEALTH LAW § 3306 (McKinney 2009) ........................................................... 3

## ARGUMENTS & AUTHORITIES

I.     **This Court Lacks Personal Jurisdiction Over Clemens.**

    A.     **McNamee has not satisfied N.Y. C.P.L.R. § 301.**

McNamee's attempt to invoke general jurisdiction over Clemens in New York under N.Y. C.P.L.R. § 301 fails for at least two reasons. First, McNamee ignores the critical inquiry: whether Clemens was "doing business" in New York on December 12, 2008, the date McNamee commenced this action. *See* Opposition at 5, 7.[1] Whether Clemens was "doing business" in New York before December 12, 2008 is irrelevant under section 301. *See Lancaster v. Colonial Motor Freight Line, Inc.*, 581 N.Y.S.2d 283, 286 (N.Y. App. Div. 1992) (holding that whether a defendant was "doing business" prior to the lawsuit being filed was irrelevant under section 301).

Second, by accepting annual payments from the New York Yankees, none of which are for services rendered or to be rendered between 2007-2014 in New York or anywhere else, Clemens was not "doing business" in New York on December 12, 2008. *See* Motion, Ex. A at 3 ¶ 23; *Landoil Res. Corp. v. Alexander & Alexander Servs., Inc.*, 918 F.2d 1039, 1043 (2d Cir. 1990) (the defendant's New York connections must show "continuous, permanent and substantial activity in New York"). Neither *ABKCO Indus., Inc. v. Lennon*, 377 N.Y.S.2d 362, 367 (N.Y. Sup. 1975), *aff'd*, 384 N.Y.S.2d 784 (N.Y. App. Div. 1976) nor *Erving v. The Virginia Squires Basketball Club*, 349 F. Supp. 709, 714-15 (E.D.N.Y. 1972), hold that the mere receipt of an annual payment from an entity that conducts business in New York constitutes "doing business" in New York. In *Lennon*, unlike Clemens in this case, the defendant was "doing

---

[1] Contrary to McNamee's assertion, Clemens's past status as an employee of the New York Yankees cannot subject him to general jurisdiction because "[a]n individual cannot be subject to jurisdiction under CPLR 301 unless he is doing business in New York as an individual rather than on behalf of a corporation." *Brinkmann v. Adrian Carriers, Inc.*, 815 N.Y.S.2d 196, 199 (N.Y. App. Div. 2006).

business" in New York because he "admittedly" did business in New York and was present in New York "pervasively, unmistakably, undeniably, continuously, and substantially." *Lennon*, 377 N.Y.S.2d at 367. And in *Erving*, unlike Clemens in this case, the corporate defendant was "doing business" in New York because, among other reasons, it participated in the management of a joint business enterprise headquartered in New York. *Erving*, 349 F. Supp. at 715.

**B.     McNamee has not satisfied N.Y. C.P.L.R. § 302.**

McNamee's arguments under N.Y. C.P.L.R. § 302(a)(1) regarding an alleged training contract with Clemens are a moving target. Complaint ¶ 3. Clemens attacked McNamee's contract allegation because the connection between the alleged contract for personal training services with McNamee in New York in 2000 and 2001, and Clemens's alleged tortious conduct in Texas between December 2007 and May 2009, is too attenuated to satisfy the "arises from" requirement in the New York long-arm statute.[2] *See* Motion at 8-10. In response, McNamee has changed the description of the alleged contract.[3] McNamee now asserts that the terms of his

---

[2] McNamee's authorities are distinguishable. In *Seven Seas Merger Corp. v. Ford*, No. 93 Civ. 6500(LMM), 1994 WL 9778, at *5 (S.D.N.Y. Jan. 11, 1994) and *GTP Leisure Prods., Inc. v. B-W Footwear Co.*, 391 N.Y.S.2d 489, 490 (N.Y. App. Div. 1977), the courts found personal jurisdiction over the defendants under section 302(a)(1) because the defendants made defamatory statements about "specific" New York business transactions. But in this case, unlike *Seven Seas* and *GTP Leisure*, Clemens's alleged defamatory statements did not concern any specific New York business transaction or reference the alleged contract for personal training services. Instead, Clemens's general denials that McNamee injected him with steroids or HGH form the basis of McNamee's defamation claims. *See* Complaint ¶¶ 39-63. Moreover, the connections between the defamatory statements in *Seven Seas* and *GTP Leisure* and the specific New York business transactions were not attenuated because the defamatory statements were made virtually contemporaneously with the business transactions. *See Seven Seas*, 1994 WL 9778, at *3; *GTP Leisure*, 391 N.Y.S.2d at 490. Here, however, at least four years separated the alleged contract for personal training services and Clemens's alleged defamatory statements.

[3] McNamee attempts to connect the alleged contract for personal training services to Clemens's statements that allegedly branded him a liar. *See* Opposition at 9 ("And Clemens made defamatory statements denying what he instructed McNamee to do during these training sessions."); Complaint ¶¶ 42-55. McNamee has made no attempt to connect the alleged contract to Clemens's statements allegedly charging that McNamee has manufactured evidence, has a mental disorder, and is extorting Clemens. *See* Complaint ¶¶ 56-63. Thus, whether or not the alleged contract constitutes the transaction of business in

2

alleged contract with Clemens also required him both to inject Clemens with steroids and HGH and to purchase steroids and HGH for delivery to Clemens. *See* Opposition at 10; McNamee Decl. ¶¶ 12-15.

McNamee alleges he contracted to perform the illegal acts of possessing, distributing, dispensing, and possessing with intent to distribute and dispense, anabolic steroids and HGH. *See* 21 U.S.C. § 841(a)(1) ("[I]t shall be unlawful for any person knowingly or intentionally . . . to . . . distribute, or dispense or possess with intent to . . . distribute, or dispense, a controlled substance . . . ."); 21 U.S.C. § 812(b), Schedule III(e) & 21 C.F.R. § 1308.13(f) (listing anabolic steroids as a Schedule III controlled substance); 21 U.S.C. 333(e)(1) ("[W]hoever knowingly distributes, or possesses with intent to distribute, human growth hormone for any use in humans other than the treatment of a disease or other recognized medical condition . . . is guilty of an offense punishable by not more than 5 years in prison . . . ."); *see also* N.Y. PENAL LAW § 220.03 (McKinney 2009); N.Y. PENAL LAW § 220.00 (McKinney 2009); N.Y. PUBLIC HEALTH LAW § 3306 (McKinney 2009).

"It is well settled under New York law that a contract to perform illegal acts is void and unenforceable." *Hartman v. Harris*, 810 F. Supp. 82, 84 (S.D.N.Y. 1992) (holding an oral agreement to be void because its performance violated criminal statutes). A void contract has no legal effect and is treated as if it had never been entered into. *See Gasser Chair Co., Infanti Chair Mfg. Corp.*, No. 88 CV 3931 (ILG), 03 CV 6413 (ILG), 2006 WL 616267, at *3 n.6 (E.D.N.Y. Mar. 6, 2006) ("A void contract is an agreement with no legal effect."); *Sang Moo Cho v. North Shore Flushing, Inc.*, 107 Misc.2d 1098, 1100, 436 N.Y.S.2d 843, 845 (N.Y. Civ.

New York, the statements complained of in paragraphs 56-63 of McNamee's complaint do not arise from the contract and must be dismissed.

3

Ct. 1981) ("A void contract is one which cannot have any legal effect. . . . Such void contracts are treated as if the agreement had never been entered into . . . .").

Because the alleged contract McNamee describes required him to perform illegal acts, it is void, of no legal effect, and treated as if it had never been entered into. Consequently, the alleged contract cannot serve as the basis for personal jurisdiction over Clemens under section 302(a)(1).[4]

### C.    Pendent personal jurisdiction is unavailable.

For at least three reasons, this Court should reject McNamee's invitation to assert pendent personal jurisdiction over all of his claims even if it finds that it lacks personal jurisdiction over some of them. *See* Opposition at 16. First, pendent personal jurisdiction violates New York law. New York law governs the Court's exercise of personal jurisdiction. *Arrowsmith v. United Press Int'l*, 320 F.2d 219, 223 (2d Cir. 1963) (en banc). A New York court may not exercise specific personal jurisdiction over a cause of action unless it arises from one of four acts enumerated in the long-arm statute. *See* N.Y. C.P.L.R. § 302(a) ("As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction . . . ."). Unless each of McNamee's numerous defamation, malicious prosecution, and intentional infliction of emotional distress claims independently satisfies a provision of the New York long-arm statute, personal jurisdiction over Clemens cannot be exercised with respect to all claims. *See* N.Y.

---

[4] McNamee implicitly concedes that his allegations regarding the *60 Minutes* interview and Hendricks Sports Management, LP are insufficient to establish that Clemens "transact[ed] any business" in New York as required by section 302(a)(1). *See* Opposition at 12-14; *Mason v. Reiter*, No. 87 CIV. 4792 (JFK), 1988 WL 130947 (S.D.N.Y. Nov. 28, 1988) (section 302(a)(1) was not satisfied by a New York television broadcast which contained an interview with defendant which had been conducted in Florida). Nevertheless, McNamee seeks jurisdictional discovery on these issues. McNamee's request should be denied because he has not even alleged facts that satisfy section 302(a)(1). *See Best Van Lines v. Walker*, 490 F.3d 239, 255 (2d Cir. 2007) (holding the trial court did not abuse its discretion by refusing jurisdictional discovery because the plaintiff had not made out a *prima facie* showing of personal jurisdiction).

C.P.L.R. § 302(a); *Anderson v. Docuport, Inc.*, No. 06 Civ. 3069(GEL), 2007 WL 485342, at *4 n.2 (S.D.N.Y. Feb. 13, 2007); *Colonomos v. The Ritz-Carlton Hotel Company, LLC*, No. 98CV2633(RCC), 2002 WL 732113, at *4 n.7 (S.D.N.Y. April 25, 2002).

Second, the exercise of pendent personal jurisdiction would also violate the Due Process Clause. *See Seiferth v. Herlicopteros Atuneros, Inc.*, 472 F.3d 266, 275 (5th Cir. 2006) ("Permitting the legitimate exercise of specific jurisdiction over one claim to justify the exercise of specific jurisdiction over a different claim that does not arise out of or relate to the defendant's forum contacts would violate the Due Process Clause.");[5] *but see Hargrave v. Oki Nursery, Inc.*, 646 F.2d 716, 718 (2d Cir. 1980).

Third, even if the doctrine could apply, applying it here would be inappropriate because McNamee's claims do not arise out of a common nucleus of operative fact. McNamee's defamation, malicious prosecution, and intentional infliction of emotional distress claims have distinct factual bases because the underlying events occurred at different times, in different places, for different reasons, before different audiences, and in different contexts. *See Clemens v. McNamee*, 638 F. Supp.2d 742, 748-749 (S.D. Tex. 2009) (refusing to exercise pendent personal jurisdiction because the "factual basis of the claims are quite distinct-Defendant made the statements to different audiences, at different times and in different contexts.").

## II.   McNamee's Complaint Fails To State A Claim Upon Which Relief Can Be Granted.

### A.   As a matter of law, Clemens's statements are not defamatory.

#### 1.   Statements denying McNamee's accusations are not defamatory.

---

[5] McNamee is also judicially estopped from relying on pendent personal jurisdiction in this case because in *Clemens v. McNamee*, No. 4:08-CV-00471, in the United States District Court for the Southern District of Texas, McNamee cited *Seiferth* and argued that a "plaintiff bringing multiple claims that arise out of different forum contacts of the defendant must establish specific jurisdiction *for each claim*," and prevailed on the argument. *See Clemens v. McNamee*, 638 F. Supp.2d 742, 748-749 (S.D. Tex. 2009); Ex. A

McNamee effectively concedes that Clemens's statements denying McNamee's accusations are not defamatory because they are mere denials of McNamee's allegations. Of the 13 paragraphs containing these allegations, 11 allege nothing but denials, in various forms, of McNamee's accusations. *See* Complaint ¶¶ 42-48, 50, 51, 53-55. McNamee makes no argument, and cites no law holding, that such denials can be defamatory. In fact, the law is to the contrary. *See Independent Living Aids, Inc. v. Maxi-Aids, Inc*, 981 F. Supp. 124, 128 (E.D.N.Y. 1997) (statements that the plaintiff was a "liar" could only be understood in context "as a denial of [his] accusations."). If denying accusations by expressly calling someone a liar is not actionable, denying accusations *without* expressly calling the speaker a liar cannot be actionable.

McNamee's attempt to distinguish *Independent Living Aids* also fails.[6] *See* Complaint ¶¶ 49, 52; Opposition at 19-20. It is pure sophistry to assert, as McNamee does, that calling the plaintiff "a liar," in response to a request for comment on a list of specific allegations made by the plaintiff, is not a denial of specific factual circumstances. *See Independent Living Aids*, 981 F. Supp. at 125 (defendant stated that the plaintiff was a liar when asked for comment on specific allegations made by the plaintiff). This Court nevertheless held that the epithet "liar" was a non-actionable expression of the opinion that anyone accusing the defendant of wrongdoing was not telling the truth. *Id.* at 128.

---

[6] This issue is not controlled by *Milkovich v. Lorain Journal Co*, 497 U.S. 1 (1990) or *Celle v. Filipino Reporter Enterprises Inc*, 209 F.3d 163 (2d Cir. 2000). *See* Opposition at 18. *Milkovich* held that statements, including the statement that the plaintiff "lied at [a judicial] hearing after...having given his solemn oath to tell the truth," in the specific context in which they were made, were actionable as imputing that the plaintiff committed perjury. *Milkovich*, 497 U.S. at 5, 21. Those statements, all made at the same time and in the same publication, are a far cry from those alleged by McNamee in his complaint. *See* Complaint ¶ 49 (McNamee expected to "admit he was lying" and say "I'm sorry about the lies"), ¶ 52 (McNamee "is constantly lying"). *Celle* is even further afield, as it involved a defendant who took an allegation made in a judicial pleading and quoted it in a way that made it look like a judicial finding rather than an allegation. *Celle*, 209 F.3d at 185-86.

That is the case here.  In response to McNamee's false allegations, Clemens and his agents said, at different times, in different places, and in different contexts, that they expected McNamee to "admit he was lying," say he was "sorry about the lies," and that McNamee "is constantly lying."  Complaint ¶¶ 49, 52.  Like the defendant in *Independent Living*, Clemens "considered himself unfairly treated and sought [by these statements] to bring the true facts to the readers." *Independent Living*, 981 F. Supp. at 128.  Under this Court's precedent, Clemens's statements are not defamatory.

### 2.    Statements that McNamee made up evidence are not defamatory.

Contrary to McNamee's assertion, Clemens does not concede that the statements that McNamee's "so-called [physical] evidence" was "fabricated waste" and that McNamee "made up a bunch of evidence" are accusations that McNamee committed a crime. *See* Complaint ¶¶ 56-57; Opposition at 21.  Their context shows that they are not.

McNamee cites *Silsdorf v. Levine*, 462 N.Y.S.2d 822 (1983), where a statement about the "corruptness" of the administration of a public official was accompanied by

> a detailed recital of plaintiff's conduct while in public office, pointing out that business promoters had found that 'it pays to do business with the mayor' and that plaintiff had attempted to issue a building permit improperly to a private client.

*Id.* at 826-27.  The court held that "[t]he unmistakable import of such statements is that plaintiff misused his public office and acted illegally to promote the interests of his clients and thus himself," and therefore constituted an accusation of criminal or illegal activity. *Id.*

This case is inapposite.  In the midst of heated public debate on McNamee's accusations, Clemens denied all of the supposed "evidence" propounded by McNamee, both verbal and physical.  Clemens and his agents never accused McNamee of committing a crime, identified a

crime he might have committed,[7] used the words "crime" or "criminal," or any other word that in context implicates criminal conduct, as does the term "corruption" when applied to a public servant. The import of Clemens's statements, at the time and in the context in which they were made, is that the physical evidence was not true or accurate, not that McNamee was guilty of any crime. Because the statements cannot reasonably be interpreted by the average reader (as opposed to McNamee's attorneys in a defamation lawsuit) as charging McNamee with illegal conduct, paragraphs 56 and 57 of McNamee's complaint should be dismissed.

For these same reasons, as well as the additional reasons set out in Clemens's motion and not disputed by McNamee, McNamee's allegation that Clemens has accused him of the crime of "extortion" should be dismissed. *See* Motion at 22-23; Opposition at 23. Clemens has not expressly or implicitly accused McNamee of the crime of extortion. Rather, Clemens has questioned McNamee's motivations for his actions. *See* Complaint ¶¶ 62-63. Statements regarding motive are particularly unsuited to form the basis for a defamation action. *Price v. Viking Penguin, Inc.*, 881 F.2d 1426, 1432 (8th Cir. 1989).

### 3.    Clemens did not accuse McNamee of having a mental disorder.

Whether statements accusing someone of having a mental disorder are actionable in defamation or not, McNamee's complaint on this point must be dismissed because Clemens never accused McNamee of having a mental disorder. *See* Opposition at 22-23. The context of the statements relied upon by McNamee show that they are rhetoric and hyperbole, not diagnoses. "That guy must be crazy," directed toward the driver who cuts you off on the freeway at 90 miles per hour, is no more a statement that he has a mental disorder than saying that McNamee has done a "psycho thing" is a statement that he is, in fact, psychotic. *See* Motion

---

[7] Nor does McNamee's Opposition identify any penal statute that he is supposedly accused of violating.

at 21; Complaint ¶ 60. Accordingly, paragraphs 58-61 of McNamee's complaint should be dismissed.

### B.   Clemens's statements that allegedly labeled McNamee a liar are true.

McNamee does not contend that he is not a liar on the subject of whether Clemens used steroids and HGH. *See* Opposition 24-25. Indeed, McNamee has offered no explanation whatsoever of how his conflicting statements on the same subject can both be true. They cannot. Because McNamee is a liar on the subject of whether Clemens used steroids, Clemens's statements that allegedly called him a liar are true as a matter of law.[8]

Contrary to McNamee's assertion, matters outside the complaint need not be referenced to support this argument. Indeed, Exhibit C to McNamee's complaint proves that McNamee lied:[9]

> 'In fact, there was a point reporters asked him [McNamee] about steroid use and he said no, but he did that because he was protecting his players and his reputation,' Ward said of McNamee in a telephone interview. 'But when he was asked and had a legal obligation to tell the truth, he told the truth.'

Complaint, Ex. C. The Mitchell Report also proves that McNamee lied. Ex. F at 173.[10]

---

[8] Whether McNamee lied when he said he provided Clemens with steroids and HGH or when he said he did not provide Clemens with steroids and HGH is irrelevant to the disposition of McNamee's defamation claims that are based on the statements allegedly branding him a liar. Indeed, Clemens's position that McNamee lied when he said he provided Clemens with steroids and HGH is actually more favorable to McNamee's reputation than McNamee's position—McNamee lied when he said he did not provide Clemens with steroids and HGH. McNamee's position implicates himself in criminal conduct—illegal possession and distribution of steroids and HGH. Clemens's position denies that McNamee engaged in such criminal conduct. *Cf. Guccione v. Hustler Magazine, Inc.*, 800 F.2d 298, 302 (2d Cir. 1986) (stating that "New York law recognizes that an alleged libel is not actionable if the published statement could have produced no worse an effect on the mind of a reader than the truth pertinent to the allegation," and noting that the defendant's "false" statement was more favorable to the plaintiff's reputation than the plaintiff's "true" statement would have been).

[9] Documents that are attached to the complaint are deemed part of the pleading and may be considered in the context of a Rule 12(b)(6) motion to dismiss. *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007).

[10] The Court may consider the Mitchell Report because it is integral to McNamee's complaint. *See* Complaint ¶¶ 6, 19, 20, 21, 22, 24, 29, 30, 36, 42, 43, 44, 46, 47, 48, 86; *Chambers v. Time Warner, Inc.*,

C.      **McNamee consented to Clemens's statements.**

McNamee argues that he did not consent to Clemens's alleged defamatory statements because his statements "are wholly lacking in specificity as to what types of conduct he would be consenting to." Opposition at 26. McNamee's own words contradict his argument. *See* Ex. H at 118, 121, 123.[11]  "You can call me a liar" very specifically consents to the publication of statements attacking McNamee's credibility and calling him a liar. It would be difficult to more clearly or specifically consent to being called a liar. And McNamee cites no authority for the absurd position that he advocates: a plaintiff who expressly tells a defendant that he can call him a liar may maintain a defamation lawsuit against the defendant who accepts the plaintiff's invitation and calls him a liar. No such authority exists.

D.      **McNamee's claims are barred by the judicial proceeding privilege.**

McNamee claims that he is not basing his defamation claims on the statements made in Clemens's Texas complaint. He admits that he cannot do so. *See* Opposition at 29. Clemens, of course, agrees with this. Contrary to this admission though, in no uncertain terms McNamee specifically claims that the statements made in Clemens's civil complaint filed on January 6,

---

282 F.3d 147, 153 (2d Cir. 2002) ("Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint 'relies heavily upon its terms and effect,' which renders the document 'integral' to the complaint.").

[11] The Court is permitted to consider McNamee's own statements in deciding Clemens's Rule 12(b)(6) motion because those statements are part of the public record created by the United States House of Representatives Committee on Oversight and Government Reform. *See* http://oversight.house.gov/images/stories/documents/20080213145824.pdf. And McNamee himself relied on the transcript containing his statements in *Clemens v. McNamee*. *See* Ex. B at 2 & Dec. of Richard Emery at ¶ 12 and its attached Exhibit F. The Court may take judicial notice of the Congressional public record for the fact that McNamee made the statements. *See Muller-Paisner v. TIAA*, 289 Fed. Appx. 461, 466, 2008 WL 3842899, at **4 n.5 (2d Cir. Aug. 15, 2008).

2008 were defamatory.  *See* Complaint ¶ 48.[12]  All of McNamee's claims based on statements made in Clemens's amended complaint in the Texas lawsuit should be dismissed.

### 1.   McNamee incorrectly interprets the Texas judicial proceeding privilege.

The remaining statements McNamee alleges to be defamatory are also protected by an absolute privilege.  McNamee argues that Texas and New York law are the same and that under both the judicial proceeding privilege does not protect statements made by a person who files a lawsuit "in order to make defamatory statements."  Opposition at 27.  McNamee's argument in a nutshell is that because Clemens's alleged purpose for filing the lawsuit was to either defame McNamee or lodge a public relations campaign against him that this somehow eviscerates the absolute nature of the privilege.  Regardless of whether this is New York law, it is not Texas law.[13]  In Texas, in and out-of-court statements (in particular statements to the press) that bear some relation to a proposed or existing judicial proceeding and are made in furtherance of the representation are absolutely privileged.  *See Daystar v. Collmer*, 176 S.W.3d 24, 28 (Tex. App.—Houston [1st Dist.] 2004, pet. denied); *Dallas Ind. Sch. Dist. v. Finlan*, 27 S.W.3d 220,

---

[12] There is also no claim in Texas for "republication" or dissemination of pleadings to the press.  *See Hill v. Herald-Post Publ'g Co.*, 877 S.W.2d 774, 782-84 (Tex. App.—El Paso 1994), *rev'd in part on other grounds*, 891 S.W.2d 638, 639 (Tex. 1994).

[13] McNamee claims that under an "interest analysis," New York's privilege laws apply in this case. Opposition at 27 n.13.  However, the Second Circuit in *Aro-Chem v. Buirkle* applied the New York choice of law interest analysis and unequivocally held that the judicial proceeding privilege law from the state where the litigation is filed applies in deciding whether alleged defamatory statements are entitled to the protections of the privilege.  968 F.2d 266, 271 (2d Cir. 1992).  The court found that:

> the judicial-proceeding privilege would lose its force if weight were given to the domicile of the parties or the place of injury in determining choice of law.  Were the law of some other state to be applied in the case of California's judicial proceeding privilege, for example, the incentive of parties to California litigation to rely upon that privilege would be gravely undermined because they cannot ensure that the ensuing tort litigation will occur in California.

McNamee does not address why this case does not control and dictate that Texas privilege law applies.

238-40 (Tex. App.—Dallas 2000, pet. denied); *Hill*, 877 S.W.2d at 783-84. This privilege applies regardless of the motive, malice, or careless disregard with which the statements may have been made. *See, e.g., Dallas Ind. Sch. Dist.*, 27 S.W.3d at 238 (citing *Reagan v. Guardian Life Ins. Co.*, 166 S.W.2d 909 (Tex. 1942)).

McNamee does not address any of these cases. Rather, he cites a single Texas case, *Livingston Shipbuilding Company v. Inland West Corporation*, to support his position. However, other Texas courts have criticized *Levingston*'s finding that delivering pleadings to the media somehow "stepped outside of the umbrella of the privilege." *Hill*, 877 S.W.2d at 783; *Riley v. Ferguson*, 1999 WL 191654, at *4 (Tex. App.—Houston [1st Dist.] April 18, 1999, pet. denied). *Hill* found that such a holding had "no support in the case law and is a deviation from the general rule of absolute privilege." *Id.* Texas courts have overwhelmingly followed *Hill* and treated the privilege as absolute. *See Daystar*, 176 S.W.3d at 28; *Dallas Ind. Sch. Dist.*, 27 S.W.3d at 239; *Riley,* 1999 WL 191654, at *4; *50-Off Stores, Inc. v. Paribas*, No. SA-95-Ca-159, 1997 WL 790739 (W.D. Tex. May 20, 1997). Thus, applying *Erie* here, this court should follow *Hill* and the bulk of Texas authorities treating statements made in the context of litigation as absolutely privileged regardless of the motivation for filing.

### 2. Clemens is entitled to assert the judicial proceeding privilege.

Texas law clearly applies the judicial proceedings privilege to parties to litigation. *Reagan v. Guardian Life Ins. Co.,*166 S.W.2d 909, 912 (Tex. 1942); *James v. Brown*, 637 S.W.2d 914 (Tex. 1982). The judicial proceeding privilege set forth in the Restatement (Second) of Torts is virtually identical for both parties and attorneys. *Compare* RESTATEMENT (SECOND) OF TORTS §§ 586 and 587. Moreover, especially in highly publicized cases involving public allegations of wrongdoing, the same policy rationale for giving the privilege to attorneys for out-

of-court statements, applies equally to a party's out-of-court statement—providing the utmost

freedom to use their best efforts to defend themselves. *See Jones v. Clinton*, 974 F. Supp. 712,

731 (E.D. Ark. 1997) (granting the President's Rule 12(b)(6) motion after applying the judicial

proceedings privilege to his out-of-court statements because §§ 586 and 587 are the same and

"attorneys are generally nothing more than agents of the parties."); *see also Russell v. Clark*, 620

S.W.2d 865, 868 (Tex. Civ. App.—Dallas 1981, writ ref'd n.r.e.).[14]

### 3.     This court can decide as a matter of law that the statements McNamee complains about are privileged.

McNamee argues that "the relationship of Clemens's out-of-court statements to his Texas

lawsuit cannot be resolved on a motion to dismiss." Opposition at 31. This, however, not only

ignores the facts of this case, but also ignores the law:

> Under Texas law, the question of the relationship of the defamatory matter to a
> proposed or existing judicial proceeding is a question of law. In making its
> determination, the Court must consider the entire communication in it [sic]
> context, and must extend the privilege to any statement that bears some relation to
> an existing or proposed judicial proceeding. The court must resolve all doubts as
> to relevance in favor of the party claiming the privilege.

*50-Off Stores, Inc.*, 1997 WL 790739, at *7, 8 (granting a motion to dismiss under 12(b)(6) for

statements made by a lawyer in a newspaper article because the court could tell "from a review

of the entire article" that the statements bore a relationship to the litigation and were made in

furtherance of the lawyer's representation).[15] From a review of McNamee's complaint and the

---

[14] Black letter agency law holds that a principal cannot be vicariously liable for his agent's conduct if the
agent himself is not liable. *DeWitt v. Harris County*, 904 S.W.2d 650, 654 (Tex. 1995); *Cameron
Compress Co. v. Kubecka*, 283 S.W. 285, 287 (Tex. Civ. App.—Austin 1926, writ ref'd). Thus, if
Clemens's attorneys' statements are privileged, Clemens cannot be held liable for the same statements.

[15] In the *Hefland v. Coane* case cited by McNamee, discovery was allowed to determine who made the
alleged statements, what specifically was said, and the context in which the statements were made. This
is not necessary here. The Court can determine all of this by reviewing McNamee's complaint and the
attached exhibits.

attached exhibits, this Court can find as a matter of law that the statements at issue in this case bore some relation[16] to the contemplated and existing judicial proceeding and were made in furtherance of the representation.  *See* Clemens's Memorandum In Support of His Motion To Dismiss at 33-34.

Finally, McNamee seeks discovery to look at Clemens's attorneys' thought processes to determine whether the Texas litigation was contemplated "in good faith."  This misstates the law. McNamee relies on a comment in Restatement on Torts § 586 regarding whether a proceeding is "contemplated in good faith and under serious consideration."  McNamee omits the next sentence:  "[t]he bare possibility that the proceeding might be instituted is not to be used as a cloak to provide immunity for defamation when the possibility is not seriously considered."  The "good faith" applies not to the motivations for filing suit, but to whether **the filing** of the lawsuit was actually ever really contemplated.  In other words, the inquiry is whether the attorneys in good faith actually contemplated filing suit, not whether the attorneys had a good faith belief in the lawsuit they were filing.  This is a huge distinction with a difference.  In this case, from the pleadings and the exhibits attached, and the fact that lawsuit was in fact filed, there really is no question that the litigation was "contemplated in good faith and under serious consideration" at the time the statements were made.  *See Bell v. Lee*, 49 S.W.3d 8 (Tex. App.—San Antonio 2001, no pet.).

### E.      McNamee's claim for malicious prosecution should be dismissed.

Texas has the "paramount interest" in McNamee's malicious prosecution claim since the underlying lawsuit occurred in Texas, where Clemens lives and McNamee defamed him.

---

[16] "The standard is not 'relevance' but a lesser standard:  the statement must only bear 'some relation to the proceeding' . . . . [T]he standard is necessarily minimal so as to occasion no fear, ... of retaliatory damage suits for defamation and thereby hamper the original purpose of the privilege . . . ."  *Odeneal v. Wofford,* 668 S.W.2d 819, 820 (Tex. App.—Dallas 1984, writ ref'd n.r.e.)(citations omitted).

Therefore, Texas law should be applied to the claim. *See Tripodi v. Local Union No. 38, Sheet Metal Workers' International Ass'n, AFL-CIO*, 120 F.Supp.2d 318, 321 (S.D.N.Y. 2000); *Heaney v. Purdy*, 29 N.Y.2d 157, 159 (N.Y. 1971). Under Texas law, the termination element of a malicious prosecution claim cannot be met until the appeals process has been exhausted. *Texas Beef Cattle Co. v. Green*, 921 S.W.2d 203, 207 (Tex. 1996).[17]

Moreover, the two cases cited by McNamee in support of the special injury element of his malicious prosecution claim do not support his assertion that he has sufficiently pleaded special injury. In the first case, the underlying action included an allegation that the malicious prosecution plaintiff had improperly or incompetently conducted his business. *See Dudick v. Gulyas*, 277 A.D.2d 686, 688 (N.Y. App. Div. 2000). Clemens's claims against McNamee did not disparage McNamee's skill as a trainer; on the contrary, Clemens asserted that McNamee was entirely competent as a trainer and never improperly injected Clemens with steroids or HGH. The other case cited by McNamee dealt with the provisional remedy of attachment, which is not present here. *See Kidder, Peabody & Co. v. IAG Intern. Acceptance, Group N.V.*, 1997 WL 539772 at *5 (S.D.N.Y. 1997).

---

[17] Although "from time to time" a New York court will apply the law of a state other than the state in which the underlying proceeding occurred, McNamee's claim does not warrant an exception to the general rule since New York does not have any significant public policy or other interest in the determination of this claim. *See Tripodi*, 120 F.Supp.2d at 321-22; RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 155 cmt. b. Even if New York law applies, McNamee's malicious prosecution claim should be dismissed. Under New York law, a dismissal for lack of personal jurisdiction is not a termination in favor of a malicious prosecution plaintiff, and two of the three claims in the underlying lawsuit were dismissed for lack of personal jurisdiction. *See* Complaint, Ex. Q at 4-9; *Heaney v. Purdy*, 29 N.Y.2d 157, 159 (N.Y. 1971) (noting that rules and policies underlying malicious prosecution element in New York law requiring termination in plaintiff's favor lead to conclusion that dismissal for lack of jurisdiction is not a termination in the plaintiff's favor); *Castro v. East End Plastic Reconstructive and Hand Surgery, P.C.*, 13 Misc.3d 1233(a), 2006 WL 3228412, at *2 (N.Y. Sup. Ct. 2006) (dismissing a malicious prosecution claim for failure to state a claim because the plaintiffs' allegations were insufficient to demonstrate the prior action terminated in their favor since it was dismissed for lack of personal jurisdiction).

Respectfully submitted,

Joe Roden
*Admitted Pro Hac Vice*
1401 McKinney Street, Suite 2250
Houston, Texas 77010
Telephone: (713) 652-9000
Facsimile: (713) 652-9800

OF COUNSEL:
RUSTY HARDIN & ASSOCIATES, P.C.
Rusty Hardin
*Admitted Pro Hac Vice*
1401 McKinney Street, Suite 2250
Houston, Texas 77010
Telephone: (713) 652-9000
Facsimile: (713) 652-9800

STEPTOE & JOHNSON, L.L.P.
Evan Glassman
Michael C. Miller
750 Seventh Avenue, Suite 1800
New York, New York 10019
Telephone: (212) 506-3900
Facsimile: (212) 506-3950

ATTORNEYS FOR
WILLIAM ROGER CLEMENS

## CERTIFICATE OF SERVICE

I hereby certify that on this 11th day of November, 2009, a true and correct copy of the foregoing instrument was served upon all counsel of record via electronic mail, certified mail, return receipt requested, in accordance with the Federal Rules of Civil Procedure as follows:

Richard D. Emery
Debra Greenberger
Emery Celli Brinckerhoff & Abady, LLP
75 Rockefeller Plaza, 20th Floor
New York, New York  10019
Admitted *Pro Hac Vice*

Earl Ward
75 Rockefeller Plaza, 20th Floor
New York, New York  10019
Admitted *Pro Hac Vice*

Joe Roden