

5 Houston Center
1401 McKinney Street, Suite 2250
Houston, TX 77010-4035
p: 713.652.9000
www.rustyhardin.com

July 16, 2013

The Honorable Cheryl L. Pollack                    *By ECF and Facsimile*
United States Magistrate Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re:    *McNamee v. Clemens*; No. 09-CV-1647 (EDNY) (SJ) (CLP)

Dear Judge Pollack:

This letter responds to the July 9, 2013 submission by plaintiff Brian McNamee regarding three categories of documents sought by McNamee in discovery and objected to on privilege, work product, and relevance grounds. The parties have conferred in good faith, but defendant Roger Clemens agrees that Court intervention is required at this time. As set forth below, Clemens's objections to production are valid and should be sustained.

<u>McNamee Is Not Entitled To Internal Emails To And From Joe Householder.</u>

The parties' first discovery dispute concerns emails between and among Clemens, his counsel, and a non-lawyer agent of the legal team generated at or around the time Clemens prepared for and initiated his own affirmative defamation action against McNamee in January 2008. Request No. 57 of Plaintiff's Second Request for Production of Documents specifically seeks "All communications with Joe Householder and/or Public Strategies Inc., concerning the Criminal Action, Mitchell, the Mitchell Report, the Congressional Hearings, the Complaint, steroids, HGH, performance enhancing substances, and/or McNamee." Clemens has produced any non-protected communications with Mr. Householder in Clemens's possession, custody, or control, but McNamee has not been satisfied with that production to date. Plaintiff seeks to compel additional communications under the baseless premise that they will reveal a "press campaign to disseminate false information." No such "campaign" existed, but even if it did, Plaintiff would not be entitled to rely on the communications sought here because they are protected by the attorney-client and work product privileges.

Communications between a client and his counsel are protected from discovery, even if non-lawyer agents of that representation are included in the communication. *See In re Grand Jury Subpoenas Dated March 24, 2003*, 265 F. Supp.2d 321, 332

Honorable Cheryl L. Pollack
July 16, 2013
Page 2

(S.D.N.Y. 2003) (holding confidential communications between lawyers and public relations consultants were protected by attorney-client privilege); *In re Copper Market Antitrust Litigation*, 200 F.R.D. 213, 219 (S.D.N.Y.2001) (same); *see also United States v. Schwimmer,* 892 F.2d 237, 243 (2d Cir. 1989) (same with accountants).   This privilege furthers the well-settled policy of "encourag[ing] clients to make full disclosure to their attorneys," *see Fisher v. United States,* 425 U.S. 391, 403 (1976), and it also inures to the benefit of the public and its interest in compliance with an ever growing and increasingly complex body of public law.  *See id.*; *Upjohn Co. v. United States,* 449 U.S. 383, 389, 392 (1981).   In addition, contrary to Plaintiffs' broad contention, documents, opinions, and legal theories prepared by counsel and sent to a public relations consultant are frequently subject to work product protection.  *See, e.g., Haugh v. Schroder Inv. Mgmt. N. Am. Inc.*, No. 02 Civ. 7955 (DLC), 2003 WL 21998674, at *5 (S.D.N.Y. Aug. 25, 2003); *Egiazaryan v. Zalmayev*, No. 11 Civ. 2670 (PKC) (GWW), 2013 WL 945462, at *13–14 (S.D.N.Y. Mar. 8, 2013); *see also generally United States v. Nobles*, 422 U.S. 225, 238–39 (1975) (recognizing that communications between attorneys and agents retained in anticipation of litigation are covered by the work-product doctrine).   The work product protection is broader than the attorney-client privilege.  *See In re Grand Jury Proceedings,* 219 F.3d 175, 190 (2d Cir. 2000).  Indeed, McNamee concedes that the work product doctrine may protect Clemens's documents here.  *See* D.E. 79 at 2 n.2.

Undersigned counsel retained Joe Householder on or about December 18, 2007 in anticipation of filing a lawsuit against McNamee.[1]   Accordingly, to the extent that Clemens himself communicated with counsel and/or Mr. Householder in the course of obtaining legal advice, those communications are protected under the attorney-client privilege.   Likewise, communications of legal strategy to Mr. Householder are work product, and communications regarding legal strategy on which Mr. Householder was copied do not waive any work product protections.   Mr. Householder and his firm needed to know the attorneys' strategy in order to advise as to public relations, and Mr. Householder's public relations advice, in turn, played an important role on the attorneys' strategizing as to whether or not to take a contemplated step in the litigation and, if so, in what form.   Courts have sustained objections to production (and have rejected Plaintiff's argument that such communications were discoverable to document "a press war") in similar circumstances.  *See Calvin Klein Trademark Trust v. Wachner,* 198 F.R.D. 53, 55–56 (S.D.N.Y. 2000).

Apparently sensing the weakness of his position, Plaintiff half-heartedly argues that he might be able to overcome protection by the work product doctrine here with a "showing of necessity."  *See* D.E. 79 at 2.  No such showing, however, could be made here.  If any hypothetical documents pertaining to Mr. Householder would have existed

---

[1]      Plaintiff emphasizes that Mr. Householder's engagement took place "over two-and-a-half years before the Complaint in this case was filed," *see* D.E. 79 at 2, but there is no requirement that the litigation anticipated to trigger the work product protection be the same litigation in which the discovery objection is made.

Honorable Cheryl L. Pollack
July 16, 2013
Page 3

exhibiting a defamatory "press campaign," Clemens would have already produced them. In addition to Request No. 57, which broadly sought "all communications" with Mr. Householder and his firm, McNamee also asked Clemens to produce all contracts with Mr. Householder and his firm (Request No. 53), all records of payments to Mr. Householder and his firm (Request No. 54), and all communications by Mr. Householder or his firm with "the Media" "from December 1, 2007 to the present" (Request No. 58). The discovery request in dispute now, however, goes much further. Despite their dubious relevance, Clemens produced all documents in his possession in response to each of these requests. McNamee's wild goose chase must come to an end now that it invades privileges.[2]

### McNamee Is Not Entitled To Internal Emails With Randy Hendricks.

Request No. 55 of Plaintiff's Second Request for Production of Documents seeks "All communications with . . . Randal Hendricks . . . concerning the Criminal Action, Mitchell, the Mitchell Report, the Congressional Hearings, the Complaint, steroids, HGH, performance enhancing substances, and/or McNamee." Clemens objected to this request, but McNamee's framing of that objection is backward. *See* D.E. 79 at 3. Clemens has withheld communications with one of his attorneys, Randy Hendricks, even though Mr. Hendricks happens to also be a sports agent. Accordingly, although Clemens has produced any non-protected communications with Mr. Hendricks in his possession, custody, or control, he has withheld email communications with Clemens, Mr. Hendricks, and other members of the legal team on the basis of attorney-client privilege and the work product doctrine.

Mr. Hendricks served, and continues to serve, as the equivalent of in-house counsel and active attorney member of the Clemens defense team. Mr. Hendricks received a law degree, with honors, and the designation of Chancellor of the Order of Barons in 1970, and he practiced law at Baker Botts LLP before joining his brother in the sports representation business. His legal preparation and advocacy in arbitration and collusion cases on behalf of athletes is widely acclaimed. It is well-settled that the attorney-client privilege protects communications with in-house counsel as well as outside attorneys, *see Upjohn*, 449 U.S. at 395, and documents, opinions, mental

---

[2]     Clemens disputes that the discovery responses to date have failed to comply with Rule 26(b)(5)(A) or Local Civil Rule 26.2. As Local Rule 26.2(c) explains, asserting privilege over multiple documents by group or category is efficient and "presumptively proper" unless descriptive information for those documents is incomprehensible. This rule is particularly applicable to "e-mails and e-mail chains," like the communications sought by McNamee here. *See* Committee Note to Local Civil Rule 26.2. In instances such as these, the Advisory Committee encourages the parties to explore categorization of withheld materials "without the need for a traditional privilege log." *Id.* Until the arrival of Plaintiff's July 9, 2013 letter, Clemens understood the parties to be doing precisely that in the course of their meet-and-confer discussions. Nonetheless, Defendant will of course supplement his responses with an item-by-item log if the Court deems such a document necessary and appropriate.

Honorable Cheryl L. Pollack
July 16, 2013
Page 4

impressions, and legal theories shared between in-house counsel and outside attorneys are similarly covered by the work product doctrine. *See, e.g., Mallatier v. Dooney & Bourke, Inc.*, No. 04 Civ. 5316 (RMB) (MHD), 2007 WL 54588, at *1 n.1 (S.D.N.Y. Jan. 4, 2007) ("[I]ndeed under the explicit terms of the rule even non-lawyers may create protected work-product materials."). Indeed, as counsel has explained during the meet-and-confer process, given the frequency with which Mr. Hendricks has communicated legal theories and analysis at times, it would be impractical to itemize each such communication for purposes of resolving this dispute.

In his letter, Plaintiff broadly, and without any stated basis, argues that any communications with Mr. Hendricks are not worthy of protection because they constitute "business advice." As counsel has explained in discovery conferences, this is inaccurate. Moreover, even if Mr. Hendricks's communications were designed to impart mixed advice to Clemens and his counsel, the work-product doctrine should still apply. *See United States v. Adlman*, 134 F.3d 1194, 1198–99 (2d Cir. 1998) ("Nothing in [Rule 26(b)(3) ] states or suggests that documents prepared 'in anticipation of litigation' with the purpose of assisting in the making of a business decision do not fall within its scope."); *id.* at 1202 ("The fact that the materials serve other functions apart from litigation does not mean that they should not be protected by work-product immunity if they reveal directly or indirectly the mental impressions or opinions of the attorney who prepared them.") (citation omitted); *see also In re Veeco Instruments, Inc. Securities Litig.*, No. 05-MD-01695 (CM) (GAY), 2007 WL 724555, at *5 (S.D.N.Y. Mar. 9, 2007) ("[A] document created for two purposes[,] a business purpose as well as a litigation purpose[,] is protected under the work product doctrine as long as the document would not have been prepared in substantially similar form if not for the prospect of litigation."). Under *Adlman* and its progeny, even Mr. Hendricks's communications served a dual business and litigation purpose, that is not sufficient to defeat Clemens's invocation of the work-product doctrine.

<u>Discovery Of Invasive Net Worth Evidence Is Premature.</u>

Request No. 62 of Plaintiff's Second Request for Production of Documents seeks "Documents sufficient to show Clemens's net worth, including but not limited to, financial statements, balance statements, documents demonstrating the value of all properties and other assets owned in whole or in part by Clemens." Although Clemens reserves his right to object to the breadth of this request and the relevance of requested materials, the parties' present dispute is focused on whether the time is right for the discovery McNamee seeks. The Court should rule consistent with recent authority that the intrusive discovery Plaintiff seeks is, at best, premature in light of the very real possibility that McNamee's boilerplate punitive damages claim, if not all of Plaintiff's claims, will be dismissed at summary judgment.

McNamee argues that courts "frequently" require pretrial disclosure of financial information relevant to a determination of a punitive damage claim, *see* D.E. 79 at 3, but

Honorable Cheryl L. Pollack
July 16, 2013
Page 5

more recent decisions have gone the other way. *See, e.g., Pasternak v. Dow Kim*, 275 F.R.D. 461, 462 (S.D.N.Y. 2011) (denying motion to compel financial information during discovery phase "given that the need for its disclosure may be abrogated by motion"); *Copantitla v. Fiskarkdo Estiatorio, Inc.*, No. 09 Civ. 1608 (RJH)(JCF), 2010 WL 1327921, at *16 (S.D.N.Y. Apr. 5, 2010) (denying motion to compel financial information because "[i]t is conceivable that upon a summary judgment motion, some of . . . plaintiffs' claims will be dismissed").  This is especially true where, as here, net worth discovery would garner unfair attention and violate the defendant's "right to privacy and general desire not to divulge his or her financial status." *See Davis v. Ross*, 107 F.R.D. 326, 327 (S.D.N.Y. 1985); *Agudas Chasidei Chabad of United States v. Gourary*, No. 85 CV 2909, 1989 WL 38341, at *1–2 (E.D.N.Y. April 12, 1989). Moreover, the cases cited by Plaintiff on this point are either inapplicable or helpful to Clemens's side of this dispute. *See Vasbinder v. Scott*, 976 F.2d 118, 121–22 (2d Cir. 1992) (deciding whether amount of punitive damage award was appropriate, not whether pretrial discovery was warranted); *Tillery v. Lynn*, 607 F. Supp. 399, 402–03 (S.D.N.Y. 1985) (permitting discovery of personal assets *after* denial of summary judgment motion on punitive damages); *Hazeldine v. Beverage Media, Ltd.*, No. 94 Civ. 3466, 1997 WL 362229, at *3–4 (S.D.N.Y. June 27, 1997) (permitting pretrial net worth discovery in the form of a financial affidavit, but only in the context of a bifurcated damages trial and after a finding that plaintiff's discovery requests were overbroad). Accordingly, the Court should sustain Clemens's objection at this time.

For the foregoing reasons, Defendant's discovery objections should be sustained.  We are happy to participate in further discussion or oral argument on these matters to the extent the Court seeks more information regarding Plaintiff's July 9, 2013 letter.

Respectfully submitted,

Rusty Hardin
*Admitted Pro Hac Vice*

cc:     Mr. Richard Emery
        Ms. Debra Greenberger