UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
BRIAN G. McNAMEE,

               Plaintiff,                                   09 Civ. 1647(SJ)(CLP)

      -against-

WILLIAM ROGER CLEMENS,

               Defendant.
-----------------------------------------------------------------x


**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF
MOTION TO COMPEL DISCOVERY**


Richard D. Emery
Earl Ward
Debra L. Greenberger
Emery Celli Brinckerhoff & Abady LLP
75 Rockefeller Plaza, 20th Floor
New York, NY 10019

*Counsel for Plaintiff*

**TABLE OF CONTENTS**

**PAGE NO(s)**

TABLE OF AUTHORITIES ................................................................................... i - iv

PRELIMINARY STATEMENT ...................................................................................... 1

FACTS .............................................................................................................................2

A.    Clemens' Defamatory Press Campaign and His Texas Lawsuit .........................2

B.    Public Strategies' and Householder's Public Relations Advice ...........................3

C.    Randy Hendricks Provided Clemens Sports Agent and Management
        Services, Not Legal Services ................................................................................4

D.    Procedural History ...............................................................................................6

ARGUMENT ....................................................................................................................7

I.      STANDARD OF REVIEW ..................................................................................7

II.     COMMUNICATIONS WITH A PUBLIC RELATIONS STRATEGIST
       ARE NOT PRIVILEGED....................................................................................10

       A.    Attorney-Client Privilege Is Inapplicable Because Householder Did
            Not Facilitate Communications Between Clemens And His Counsel...................10

       B.    Work Product Does Not Apply To Documents That
            Were Not Prepared In Anticipation Of Litigation ................................................11

III.    COMMUNICATIONS WITH A SPORTS AGENT ARE NOT PRIVILEGED..............15

       A.    Attorney-Client Privilege Does Not Apply ..........................................................15

       B.    Work Product Protection Does Not Apply ...........................................................17

IV.   CLEMENS' FINANCIAL RECORDS ARE RELEVANT TO PUNITIVE
       DAMAGES............................................................................................................18

CONCLUSION.................................................................................................................19

## <u>TABLE OF AUTHORITIES</u>

<u>PAGE NO(s)</u>

### <u>FEDERAL CASES</u>

*Allied Irish Banks v. Bank of Am., N.A.*,
   240 F.R.D. 96 (S.D.N.Y. 2007) ................................................................ 8, 10, 13

*Bank Brussels Lambert v. Credit Lyonnais (Suisse),S.A.*,
   210 F.R.D. 506 (S.D.N.Y. 2002) ........................................................................... 8

*Calvin Klein Trademark Trust v. Wachner*,
   198 F.R.D. 53 (S.D.N.Y. 2000) ............................................................... 7, 10, 11

*Chevron Corp. v. Salazar*,
   No. 11 Civ. 3718(LAK)(JCF), 2011 WL 3880896 (S.D.N.Y. Sept. 1, 2011) ................. 13

*Copantitla v. Fiskardo Estiatorio, Inc.*,
   09 CIV. 1608 RJH JCF, 2010 WL 1327921 (S.D.N.Y. Apr. 5, 2010) ........................... 19

*De Espana v. Am. Bureau of Shipping*,
   03 CIV. 3573 LTSRLE, 2005 WL 3455782 (S.D.N.Y. Dec. 14, 2005).................... 13, 17

*Egiazaryan v. Zalmayev*,
   11 CIV. 2670 PKC GWG, 2013 WL 945462 (S.D.N.Y. Mar. 8, 2013)................... *passim*

*Gucci Am., Inc., v. Guess?, Inc.*,
   271 F.R.D. 58 (S.D.N.Y. 2010) ......................................................................... 13

*Gulf Islands Leasing, Inc. v. Bombardier Capital, Inc.*,
   215 F.R.D. 466 (S.D.N.Y. 2003) ....................................................................... 17

*Haugh v. Schroder Inv. Mgmt.*,
   02 CIV.7955 DLC, 2003 WL 21998674 (S.D.N.Y. Aug. 25, 2003) ........................ 10, 11

*Hazeldine v. Beverage Media, Ltd.*,
   No. 94 CIV. 3466, 1997 WL 362229 (S.D.N.Y. June 27, 1997).....................................18

*In re Application of Chevron Corp.*,
   749 F. Supp. 2d 135 (S.D.N.Y. 2010)................................................................ 9, 12, 15

*In re Grand Jury Subpoenas Dated March 19, 2002 & August 2, 2002*,
   318 F.3d 379 (2d Cir. 2003)............................................................................ 8, 11, 17

*In re Kidder Peabody Sec. Litig.*,
   168 F.R.D. 459 (S.D.N.Y.1996) ....................................................................... 13

*Kingsway Fin. Servs., Inc. v.Pricewaterhouse-Coopers LLP*,
   No. 03 Civ. 5560(RMB)(HBP), 2008 WL 4452134 (S.D.N.Y. Oct. 2, 2008) .................. 7

*McNamee v. Clemens*,
   762 F. Supp. 2d 584 (E.D.N.Y. 2011) ............................................................................. 14

*N.Y. Times Co. v. U.S. Dep't of Defense*,
   499 F.Supp.2d 501 (S.D.N.Y. 2007)................................................................................ 13

*Nat'l Educ. Training Grp., Inc. v. Skillsoft Corp.*,
   M8-85 (WHP), 1999 WL 378337 (S.D.N.Y. June 10, 1999) .......................................... 10

*OneBeacon Ins. Co. v. Forman Int'l, Ltd.*,
   04 CIV. 2271 (RWS), 2006 WL 3771010 (S.D.N.Y. Dec. 15, 2006) ................... 9, 11, 15

*Open Housing Center Inc. v. Kings Highway Realty*,
   1993 U.S. Dist. LEXIS 15927 (E.D.N.Y. 1993)............................................................. 18

*Oppenheimer Fund, Inc. v. Sanders*,
   437 U.S. 340 (1978)......................................................................................................... 7

*Tillery v. Lynn*,
   607 F. Supp. 399 (S.D.N.Y. 1985) ................................................................................. 18

*U.S. Postal Serv. v. Phelps Dodge Ref. Corp.*,
   852 F. Supp. 156 (E.D.N.Y. 1994) ................................................................................. 16

*United States v. Adlman*,
   134 F.3d 1194 (2d Cir. 1998)..................................................................................... 12, 14

*Vasbinder v. Scott*,
   976 F. 2d 118 (2d Cir. 1992)........................................................................................... 18

*Wade v. Sharinn & Lipshie*,
   *P.C.*, CV 07-2838, 2009 WL 37521 (E.D.N.Y. Jan. 7, 2009) ........................................ 18

## **<u>STATE CASES</u>**

*People v. O'Connor*,
   447 N.Y.S.2d 553 (N.Y. App. Div. 1982) ..................................................................... 15

*People v. Osorio*,
   549 N.E.2d 1183 (N.Y. 1989) ........................................................................................ 10

*Priest v. Hennessy*,
   409 N.E.2d 983 (N.Y. 1980).................................................................................... 15, 16

*Matter of Bekins Record Storage Co., Inc.*,
    465 N.E.2d 345 (N.Y. 1984) ........................................................................... 16

*Spectrum Systems Intern. Corp. v. Chemical Bank,*
    581 N.E.2d 1055 (N.Y. 1991) ......................................................................... 16

## **RULES**

Fed. R. Civ. P. 26 ........................................................................................ *passim*

Fed. R. Civ. P. 37(a) ........................................................................................ 1

Fed. R. Evid. 501 ............................................................................................. 7

Local Civ. R. 26.2 ........................................................................................ 8, 9

N.Y. CPLR § 4503(a) ...................................................................................... 8

Plaintiff Brian McNamee ("Plaintiff" or "McNamee") submits this memorandum of law in support of his motion to compel the production of documents from defendant Roger Clemens' ("defendant" or "Clemens") pursuant to Fed. R. Civ. P. 26(b) and 37(a).

## PRELIMINARY STATEMENT

This case and the motion to compel focus on Clemens' public relations campaign to defame Brian McNamee, Clemens' trainer, by casting McNamee as a liar and denying his truthful revelations about Clemens' steroid use over the course of four years. Clemens' campaign was intensive and coordinated, involving a press strategist who was paid over $50,000, numerous press releases and conferences, appearances on national television, and the filing of a frivolous lawsuit to further defame McNamee.

Plaintiff moves to compel because Clemens' public relations campaign to defame McNamee is central to the issues to be resolved by the jury in this case, but has been the assiduous focus of Clemens' efforts to resist legitimate discovery of the facts relating to the defamatory campaign. Clemens has withheld production of relevant documents, seeking refuge in purported evidentiary privileges.

But these privileges are inapplicable: Communications with public relations strategists and sports agents are not privileged. And just as the filing of a (frivolous) lawsuit does not shield all documents as work product, hiring a sports agent who happens to be an attorney does not shield all communications as attorney-client privileged. Plaintiff respectfully requests that Clemens be ordered to produce the requested documents.

1

## FACTS

**A.  Clemens' Defamatory Press Campaign and His Texas Lawsuit**

On December 13, 2007, Senator Mitchell released the "Mitchell Report," which included McNamee's revelations that he had injected Clemens with steroids and HGH.  Rather than acknowledging the truth of McNamee's allegations, as did numerous other players named, Clemens immediately launched a coordinated public relations offensive against McNamee to brand him a liar; he publicly "vowed to play hardball in attacking Brian McNamee."  *See, e.g.*, Complaint ¶¶ 21, 24-30.

As part of that press campaign Clemens issued press releases, held press conferences, posted a video on youtube.com, and appeared on 60 Minutes.  *See, e.g.*, Complaint ¶¶ 21, 24-30, 46.  The day after the 60 Minutes interview was aired, Clemens held a nationally-televised press conference.  *Id.* ¶ 33.  At that press conference he informed the world—and, for the first time, plaintiff—that the day before, on a Sunday evening, he had filed a defamation suit against McNamee in Texas state court.  *Id.*

Clemens knew that McNamee's statements about Clemens' use of HGH and steroids were true and not defamatory.  He knew that his lawsuit was frivolous and a perversion of judicial proceedings.  *Id.* ¶¶ 35, 48.  The Texas lawsuit was instituted for the sole purpose of publishing defamatory statements about McNamee under the guise of a legal claim and bolstering Clemens' public relations strategy.  *Id.*

Clemens continued his public relations campaign in the halls of Congress in February 2008.  Clemens sought and obtained from Congress a public hearing to further brand McNamee as a liar.  *Id.* ¶ 36.

**B.  Public Strategies' and Householder's Public Relations Advice**

Five days after the Mitchell Report was released, on December 18, Clemens' counsel hired a public relations firm, "Public Strategies Inc.," whose managing director was Joe Householder, for the press campaign described above, called "Project Clemens."  *See* Ex. A; Ex. B.[1]  Public Strategies, per their contract, provided consulting services "with respect to media relations advice and counsel."  Ex. A at 1.  The cost for Project Clemens was $25,000 a month plus expenses.  *Id.*

Clemens paid Public Strategies more than $58,000 over several months in late 2007 and early 2008.  Ex. B.  In return, Public Strategies coordinated Clemens' appearance on 60 Minutes, in which Clemens defamed McNamee.  Complaint ¶¶ 32, 47; Ex. C.  It issued press releases to a press list, termed "RClemens Media," and responded to media inquiries.  Ex. D.

But this is likely the tip of the iceberg of the consulting services Strategies ultimately provided.  Clemens has not produced the lion's share of Public Strategies' communications.  We sought, and ask this Court to compel:

> Request 57:  All communications with Joe Householder and/or Public Strategies Inc., concerning the Criminal Action, Mitchell, the Mitchell Report, the Congressional Hearings, the Complaint, steroids, HGH, performance enhancing substances, and/or McNamee.

*See* Ex. L.  Claiming privilege, Clemens has withheld all communications that he or his counsel had with Public Strategies or Joe Householder concerning the specified topics. Greenberger Aff. ¶ 3; Ex. M.  Clemens has failed to produce a privilege log.

Clemens does admit that communications between Public Strategies and the media (Req. 58) are not privileged, are in Clemens' control, and must be produced.  Greenberger

---

[1] Unless otherwise specified, all exhibits are attached to the Affirmation of Debra L. Greenberger, dated August 2, 2013.

Aff. ¶ 6.[2]  But he has only produced a few redacted e-mails claiming that his search for responsive documents was largely fruitless, because Public Strategies and Mr. Householder had deleted their files.  *Id.*  Allegedly, even their press list (RClemens Media) cannot be located.  *Id.*  Only redacted versions of those few emails between Householder and the media that Clemens' counsel retained were produced.  *Id.*[3]

### C.  Randy Hendricks Provided Clemens Sports Agent and Management Services, Not Legal Services

Clemens' sports agents are Randal ("Randy") and Alan Hendricks, two brothers who run Hendricks Sports Management.  According to their website, they are "perhaps the most respected agents ever."  Ex. E.  Earlier in their career the brothers represented 16% of all major league baseball players.  They founded Hendricks Sports Management as a "boutique baseball agency designed to serve a select number of clients"—most famously Roger Clemens.  *Id.*; Ex. F.  Alan Hendricks is not a lawyer.  Randy Hendricks' personal profile mentions, in passing and using the past tense, that he had "practiced law" over 30 years ago at a large law firm after he graduated law school.  But he left to co-found Hendricks Sports Management in the 1970s.  *See* Ex. G.

Clemens retained Hendricks Sports Management to assist him in contract negotiations, to provide financial planning and management, and to coordinate endorsement opportunities.  *See* Ex. H.  Clemens' only contract with Randy or Alan Hendricks, dated 1998,

---

[2] Request 58 sought "All communications with the Media made by Joe Householder and/or Public Strategies Inc. on Clemens' behalf from December 1, 2007 to the present, including but not limited to press releases."

[3] Plaintiff reserves his right to seek appropriate sanctions, including a spoliation instruction, after further discovery concerning the deletion of these documents.

contains no mention of legal services.  *Id.*  He has never signed a legal retainer with Randy Hendricks.  Greenberger Aff. ¶ 15.  Clemens publicly describes the Hendricks brothers as "my agents," not his attorney.  Ex. H (Clemens: Hendrickses are "great business competitors and contributors").

And nowhere on Hendricks Sports Management's website does the firm hold itself out as providing legal services.  The website's description of "What we do: Areas of Service," lists five categories:  Contract negotiations, salary arbitration, amateur draft, tax preparation, and marketing and endorsements services.  Ex. J.  None of the categories distinguish between services provided by Randy Hendricks (an attorney) versus Alan Hendricks (a non-attorney).

After the Mitchell Report was released, Randy Hendricks performed "marketing" services for Clemens (as advertised on his website), in an attempt to bolster Clemens' reputation by smearing McNamee's.  He released a press statement on Clemens' behalf denying McNamee's allegations.  *See* Complaint ¶ 44 & Ex. C.  He communicated with the press as part of the Clemens press strategy.  Ex. K.  But not as an attorney: Randy Hendricks told reporters that he "defer[red] to Rusty Hardin on legal matters."  *Id.*

Randy Hendricks' greatest involvement in Clemens' public relations may have been the preparation of a controversial 45-page report (with 38 charts) titled "An Analysis of the Career of Roger Clemens," designed to refute McNamee's revelations of Clemens' drug use.[4]

We sought, and ask this Court to compel:

---

[4] Hendricks Sports Management, LP, Randal A. Hendricks, *et al.*, *An Analysis of the Career of Roger Clemens*, http://www.rogerclemensreport.com/reports/ClemensReport.pdf (last visited August 1, 2013). Professors criticized the report's statistical cherry-picking.  *See* Eric Bradlow, et al., *Report Backing Clemens Chooses Its Facts*, N.Y. Times, Feb. 10, 2008, *available at* http://www.nytimes.com/2008/02/10/sports/baseball/10score.html?ex=1203310800&en=e5baae47ac6943 a1&ei=5070&emc=eta1 ("the Clemens report does not make a convincing case for his innocence").

> Request 55.  All communications with Hendricks Sports Management, Randal
> Hendricks and/or Alan Hendricks, concerning the Criminal Action, Mitchell, the
> Mitchell Report, the Congressional Hearings, the Complaint, steroids, HGH,
> performance enhancing substances, and/or McNamee.

*See* Ex. L.  Asserting privilege, Clemens objected and has withheld all communications between himself or his counsel and Randy Hendricks concerning the specified topics.  Greenberger Aff. ¶ 3; Ex. M.  Clemens has not produced a privilege log.

### D.  Procedural History

Plaintiff's counsel raised these specific deficiencies, among others, concerning defendant's response to plaintiff's second request for production of documents.  Greenberger Aff. ¶ 4.  The parties conferred multiple times in good faith and resolved many disputes.  *Id.* ¶ 5.  The parties were unable, however, to resolve the disputes concerning Document Request 55 (regarding Hendricks), 57 (regarding Householder and Public Strategies), and 62 (regarding financial documents).  *Id.* ¶ 7.  Despite plaintiff's request, defendant never produced a privilege log of the withheld documents at issue in this motion, let alone the documents themselves in any form (redacted or otherwise).  *Id.* ¶¶ 4, 7.

On July 9, 2013, Plaintiff wrote a letter seeking a pre-motion conference, pursuant to Local Rule 37.3 (Dkt 79).  Defendant responded on July 16, first submitting an oversized letter (Dkt. No. 80) and then amended that letter that same day (Dkt. No. 81).  Plaintiff replied on July 18 (Dkt. No. 82).  Defendant sought permission to file a sur-reply (Dkt. No. 83).  On July 19, the Court denied that request and instead ordered the parties to submit motions on the outstanding discovery disputes.

## ARGUMENT

We ask this Court to order the production of the following documents, which Clemens has refused to produce:

6

- All communications between Clemens and/or Clemens' counsel, on the one hand, and Joe Householder and/or Public Strategies Inc., on the other hand, concerning the Criminal Action, Mitchell, the Mitchell Report, the Congressional Hearings, the Complaint, steroids, HGH, performance enhancing substances, and/or McNamee.  Ex. L, Req. 57.

- All communications between Clemens or Clemens' counsel and Randal Hendricks, concerning the Criminal Action, Mitchell, the Mitchell Report, the Congressional Hearings, the Complaint, steroids, HGH, performance enhancing substances, and/or McNamee.  *Id.*, Req. 55.

- Documents sufficient to show Clemens's net worth, including but not limited to, financial statements, balance statements, documents demonstrating the value of all properties and other assets owned in whole or in part by Clemens.  *Id.*, Req. 62.

I.    **STANDARD OF REVIEW**

The Federal Rules of Civil Procedure provide for broad discovery and enable "parties [to] obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense."  Fed. R. Civ. P. 26.  "The key phrase in this definition—'relevant to the subject matter involved in the pending action'—has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case."  *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978).  "[T]he overriding policy is one of disclosure of relevant information in the interest of promoting the search for truth."  *Kingsway Fin. Servs., Inc. v. Pricewaterhouse-Coopers LLP*, No. 03 Civ. 5560(RMB)(HBP), 2008 WL 4452134, at *4 (S.D.N.Y. Oct. 2, 2008) (internal quotations omitted).  "[E]videntiary privileges[] stand[] in derogation of the search for truth so essential to the effective operation of any system of justice."  *Calvin Klein Trademark Trust v. Wachner*, 198 F.R.D. 53, 55 (S.D.N.Y. 2000).

In diversity cases such as this one, New York "state law provides the rule of decision concerning the claim of attorney client privilege."  *Egiazaryan v. Zalmayev*, 11 CIV. 2670 PKC GWG, 2013 WL 945462, at *4, 11 (S.D.N.Y. Mar. 8, 2013); *see also* Fed. R. Evid.

501.  "[U]nder New York law, the party invoking the privilege must demonstrate that the information at issue was a communication between client and counsel or his employee, that it was intended to be and was in fact kept confidential, and that it was made in order to assist in obtaining or providing legal advice or services to the client."  *Bank Brussels Lambert v. Credit Lyonnais (Suisse), S.A.*, 210 F.R.D. 506, 508-09 (S.D.N.Y. 2002) (internal quotations omitted); *see also* N.Y. CPLR § 4503(a) (privilege protects "confidential communications made between the attorney . . . and the client in the course of professional employment").

In contrast, a work product claim is governed by federal law, Fed. R. Civ. P. 26(b)(3).  *Egiazaryan,* 2013 WL 945462, at *11.  Rule 26(b)(3) provides a qualified privilege to documents " prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)."  Even documents that meet this test may be discovered pursuant to Rule 26(b)(4) if the plaintiff shows "substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means."

Under both state and federal law, the party asserting attorney-client or work product privilege has the burden of proving, by "competent evidence," every element of the privilege, including proving that the privilege has not been waived.  *Egiazaryan,* 2013 WL 945462, at *4 (attorney-client privilege); *Allied Irish Banks v. Bank of Am., N.A.*, 240 F.R.D. 96, 105 (S.D.N.Y. 2007) (work product privilege).  The burden of asserting a privilege "is a heavy one, because privileges are neither lightly created nor expansively construed."  *In re Grand Jury Subpoenas Dated March 19, 2002 & August 2, 2002,* 318 F.3d 379, 384 (2d Cir. 2003) (privilege must be narrowly construed).  This burden of submitting "objective proof" cannot be met by "speculative" or "conclusory" affidavits.  *Id.* at 386.  The "long-standing and routine [practice] in

8

cases involving claims of privilege," is to "submit the responsive documents for *in camera* review." *Id.*

A party asserting a privilege must provide a privilege log pursuant to Local Civ. R. 26.2 and Fed. R. Civ. P. 26(b)(5). The "unjustified failure to list privileged documents on the required log of withheld documents in a timely and proper manner *operates as a waiver of any applicable privilege*." *See OneBeacon Ins. Co. v. Forman Int'l, Ltd.*, 04 CIV. 2271 (RWS), 2006 WL 3771010, at *7-8 (S.D.N.Y. Dec. 15, 2006) (citing a litany of caselaw from within this Circuit so holding) (emphasis added); *In re Application of Chevron Corp.*, 749 F. Supp. 2d 135, 140 (S.D.N.Y. 2010) ("the failure to file a privilege log as required by Local Civ. R. 26.2 and Fed. R. Civ. P. 26(b)(5) waived the [privilege] objections"). Accordingly, this Court can grant plaintiff's motion based on defendant's failure to produce a privilege log.[5]

## II.   COMMUNICATIONS WITH A PUBLIC RELATIONS STRATEGIST ARE NOT PRIVILEGED

Clemens has withheld *all* communications with his public relations firm and strategist, Public Strategies and Joe Householder, on the alternate grounds of attorney-client and work product privilege. Because such communications are not privileged and Clemens has not produced a privilege log, Clemens cannot meet his burden of demonstrating that emails with Mr. Householder are privileged.

---

[5] Clemens has taken the position that the vague information concerning documents withheld that he provided in his objections (*see* Greenberg Aff. ¶ 3; Ex. M) supplants the need for a privilege log. This is patently insufficient. Local Civil Rule 26.2 requires identification of "the type of document, its subject matter, date, and recipient." This Court has already held that Defendant's log (in response to a prior request) which "group[ed] a broad range of documents together as one document" was "in violation of Federal Rule of Civil Procedure 26(b)(5)(A)." Order, May 21, 2013, (Dkt. No. 73) at 2. The vague information provided by Defendant is insufficient to "enable [plaintiff] to assess the claim" of privilege. Fed. R. Civ. P. 26(b)(5)(A).

A. **Attorney-Client Privilege is Inapplicable Because Householder Did Not Facilitate Communications Between Clemens and His Counsel**

Clemens' communications with Householder are not protected by the attorney-client privilege, because such communications were not "necessary so that [counsel] could provide [Clemens] with legal advice." *Haugh v. Schroder Inv. Mgmt.*, 02 CIV.7955 DLC, 2003 WL 21998674, at *3 (S.D.N.Y. Aug. 25, 2003) ("A media campaign is not a litigation strategy.").

Under New York law, "'communications made between a [client] and counsel in the known presence of a third party are not privileged.'" *Allied Irish Banks*, 240 F.R.D. at 103 (quoting *People v. Osorio,* 549 N.E.2d 1183, 1185 (N.Y. 1989)).  "An exception exists where, 'communications [are] made to counsel through a hired interpreter, or one serving as an agent of either attorney or client to facilitate communication.'" *Id.* (quoting *Osorio,* 549 N.E.2d at 1185-86).  This exception is "narrow": the "disclosure to [the] third party . . . [must be] necessary for the client to obtain informed legal advice." *Nat'l Educ. Training Grp., Inc. v. Skillsoft Corp.*, M8-85 (WHP), 1999 WL 378337, at *4 (S.D.N.Y. June 10, 1999) (citing cases).  Necessity is more than just "useful and convenient, but rather requires that the involvement of the third party be nearly indispensable or serve some specialized purpose in facilitating the attorney-client communications." *Id.*  The classic example is a foreign language interpreter.  *Id.*

Public relations strategists such as Householder and his firm fail this test.  They are not "nearly indispensible" for the attorney client communication; nor do they even "facilitate" such communication.  *Id.*  As Judge Rakoff has explained, "ordinary public relations advice . . . [does not] enable[] counsel to understand aspects of the clients own communication that could not otherwise be appreciated in the rendering of legal advice." *Calvin Klein Trademark Trust*, 198 F.R.D. at 55 (applying federal standard).  Courts have repeatedly held that

10

sharing an attorney-client communication with a public relations strategist vitiated the privilege. *See id.* at 54 ("Disclosure," of confidential communications to the public relations firm "waives the privilege); *Egiazaryan*, 2013 WL 945462, at *7 (same); *Haugh,* 2003 WL 21998674, at *3 (no attorney-client protection because no "show[ing]" that communications with public relations consultant "were necessary" for provision of legal advice).

While Clemens claims that he spoke to Householder "in the course of obtaining legal advice" and Householder's advice was "important" to the "attorneys' litigation strategy," such claims are irrelevant to an attorney-client privilege analysis. *See* R. Hardin Ltr, July 16, 2013, at 2 (Dkt. No. 81). It is "neither here nor there," the court in *Calvin Klein* concluded, that the public relations firm may have "been helpful to [Boies, Schiller in] formulating legal strategy." 198 F.R.D. at 55; *see also Egiazaryan*, 2013 WL 945462, at *7 (rejecting this argument because it "does nothing to fulfill the governing standard").

### B.   Work Product Does Not Apply to Documents that Were Not Prepared in Anticipation of Litigation

Clemens' invocation of work product protection based on the Texas lawsuit he filed against McNamee in 2008 fares no better.[6]   Clemens claims that the communications with Householder were "prepared in anticipation of litigation," by attorneys or their agents as required by Rule 26(b)(3). This claim fails.

First, work product does not protect any documents prepared by Householder or Clemens unless they were prepared at the request of counsel. *In re Grand Jury Subpoenas*, 318 F.3d at 383 (work product only applies to "materials prepared by or at the behest of counsel"). The absence of a privilege log obfuscates the inquiry, but likely a large number of the withheld

---

[6] While we have sought communications with Householder without a time limit, defense counsel has represented that the last such communication was in March 2008.

documents were not created at counsel's behest.  The absence of a timely privilege log also waives this objection.  *See OneBeacon Ins. Co.*, 2006 WL 3771010 at *7-8; *In re Application of Chevron Corp.*, 749 F. Supp. 2d at 140.

Second, it is well-established that documents that "relate solely to public relations strategy," such as "efforts to bolster [the client's] image" or the "implementation of a public relations strategy" are business documents that are not protected by work product.  *Egiazaryan*, 2013 WL 945462, at *13.  Here Public Strategies provided "media relations advice and counsel"—i.e. unprotected business advice.  Ex. A at 1.

Contrary to Clemens claim, communications concerning public relations advice and strategy are unprotected "even if they bear on the litigation strategy."  *Id.*; *cf.* R. Hardin Ltr, July 16, 2013, at 2 (Dkt. No. 81) (asserting work product because public relations advise "played an important role on [sic] the attorneys' litigation strategy").  That Clemens' team may have been contemplating suing McNamee when they were communicating with Householder about Clemens' "image" and "public relations strategy" does not shield such communications.  According to the Second Circuit, documents are not privileged if they "would have been prepared in substantially similar form regardless whether litigation was contemplated."  *United States v. Adlman,* 134 F.3d 1194, 1203 (2d Cir. 1998).  Even where the party had the "prospect of litigation in mind when it directed the preparation of the [document]," or believed "such documents might [also] help in preparation for litigation," work product is inapplicable under the *Adlman* test if the document would have been prepared absent potential litigation.  *Id.* at 1202, 1204.  Work product protection is limited to documents prepared "because of" the prospect of litigation.  *Id.* at 1204.  This approach ensures lawyers can generate legal strategy while

permitting discovery of documents that would have been created even if litigation were not anticipated.

Applying *Adlman*, courts have repeatedly rejected claims that a public relations analysis is protected as work product. *See Egiazaryan*, 2013 WL 945462, at *12 (emails exchanged with a public relations company that "relate solely to public relations strategy and contain no discussion of legal strategy or attorney opinions or impressions" are not protected by work product); *Chevron Corp. v. Salazar,* 11 CIV. 3718 LAK JCF, 2011 WL 3880896, at *1 (S.D.N.Y. Sept. 1, 2011) (public relations consultant's analysis of the public reaction to a court judgment is not protected as work product); *Gucci Am., Inc., v. Guess?, Inc.,* 271 F.R.D. 58, 78 (S.D.N.Y. 2010) (work product doctrine was inapplicable to a "publicity strategy [that] was treated as a business concern"); *N.Y. Times Co. v. U.S. Dep't of Defense,* 499 F.Supp.2d 501, 517 (S.D.N.Y. 2007) ("talking points" and "draft editorial" were not work product under an exemption pursuant to the Freedom of Information Act because it "seem[ed] to have been drafted for public relations purposes"); *de Espana v. Am. Bureau of Shipping,* 03 CIV. 3573 LTS RLE, 2005 WL 3455782, at *3 (S.D.N.Y. Dec. 14, 2005) (notes from a meeting that "concern[ed] press and public relations strategies" was not work product because it would have been prepared "in the normal course of business without the threat of litigation").

Here, Clemens would have launched a public relations campaign to rebut McNamee's allegations and generated the same (withheld) communications with Householder, even had he not decided to sue McNamee as part of that campaign.  The $58,000 Clemens paid to his public relations firm demonstrates the extent to which this was a public-relations driven campaign, not a litigation-driven one.  Ex. B.  A litigation-only strategy would arguably have been inadequate for Clemens' goals of casting McNamee as a liar.  As the court in *Allied Irish*

13

*Banks* described in similar circumstances, a concern about public perception "'could not be addressed merely by hiring a team of attorneys to litigate the complex factual and legal issues, in the hope that [the company] would eventually be vindicated.'" 240 F.R.D. at 108 (quoting *In re Kidder Peabody Sec. Litig.,* 168 F.R.D. 459, 465 (S.D.N.Y. 1996)).

The question of whether Clemens and his team would have prepared various documents as part of his public relations campaign, regardless of his decision to sue McNamee, is a fact-intensive question based on the "nature of the document and the factual situation in the particular case." *Id.* at 106-07. The court must "determine what 'would have' happened in some hypothetical situation" where litigation was not anticipated. *Id.* (noting that while this task is "not easy," it is "regularly performed" by courts; citing cases).

Here, however, the Court's task is eased because, as Judge Johnson recognized, the Court must credit the allegations that the Texas lawsuit was "frivolous" as it was "not contemplated in good faith, but rather, [was] part of a larger public relations campaign to defame [McNamee]." *McNamee v. Clemens*, 762 F. Supp. 2d 584, 607-08 (E.D.N.Y. 2011). *Clemens' public relations campaign was not in service of the Texas lawsuit; instead, his frivolous lawsuit was in service of his public relations campaign.* Judge Johnson thus rejected Clemens' invocation of the judicial proceedings privilege based on the Texas lawsuit: "The Court finds that the [defamatory statements at issue] were made in an effort to deny the accusations made in the Mitchell Report and were not in connect[ion] with or in furtherance of the Texas lawsuit." *Id.* at 607. Judge Johnson's determination takes the legs out of any claim that the withheld communications with Householder were only prepared because of the Texas lawsuit. *Adlman,* 134 F.3d at 1204.

To be clear, we do not dispute that there may be some small category of documents appropriately protected by the attorney work-product privilege.  For example, if defense counsel sent the public relations firm a draft of a pleading or motion, we do not seek that draft.  The bulk of the disputed documents likely do not fall within that realm however and, in the absence of a privilege log, no document-by-document analysis is possible.  The Court may review *in camera* a subset of documents asserted by Clemens to fit the work product category.  If this Court holds that certain of the withheld documents qualify for work product protection, plaintiff seeks a privilege log and an opportunity to demonstrate, pursuant to Rule 26(b)(4), his "substantial need for the materials."

## III.   COMMUNICATIONS WITH A SPORTS AGENT ARE NOT PRIVILEGED

Clemens has withheld all communications with his sports agent, Randy Hendricks, claiming privilege because Mr. Hendricks happens to be an attorney.  No privilege log has been produced.  The absence of a timely privilege log waives this objection.  *See OneBeacon Ins. Co.*, 2006 WL 3771010 at *7-8; *In re Application of Chevron Corp.*, 749 F. Supp. 2d at 140.

### A.   Attorney-Client Privilege Does Not Apply

Clemens' must first demonstrate that an attorney-client relationship exists between him and Hendricks:  "Such a relationship arises only when one contacts an attorney in his capacity as such for the purpose of obtaining legal advice or services."  *Priest v. Hennessy*, 409 N.E.2d 983, 986 (N.Y. 1980).  Courts consider the "client's purpose in contacting the attorney."  *People v. O'Connor*, 85 A.D.2d 92, 95 (N.Y. App. Div. 1982).

The existing evidence suggests that Clemens contacted Randy Hendricks—just as he contacted his brother Alan Hendricks, a non-attorney—to obtain a sports agent to provide

15

management services, not to seek legal advice.  *See supra* Facts § C; Exs. E-J.  Clemens has

repeatedly described Randy Hendricks as his agent (not his attorney).  The one existing contract

between Hendricks and Clemens details all manner of sport agency/management services that

Hendricks would provide, with no mention of legal services.  Nor is there any written legal

retainer between Hendricks and Clemens.  And nowhere on Hendricks Sports Management's

website does the firm hold itself out as providing legal services.  Even Randy Hendricks'

personal profile mentions only in passing (using the past tense) that he had "practiced law" over

30 years ago.  It is Clemens' burden to prove that he and Mr. Hendricks reached an "explicit

undertaking to perform a specific [legal] task."  *Egiazaryan*, 2013 WL 945462, at *4 (internal

quotations omitted).

> Even if Clemens could demonstrate that he had an attorney-client relationship

with Randy Hendricks, he must then prove that the allegedly-privileged communications were

"made for the purpose of obtaining legal advice."  *Matter of Bekins Record Storage Co., Inc.*,

465 N.E.2d 345, 348 (N.Y. 1984); *Priest v. Hennessy*, 409 N.E.2d at 986 (N.Y. 1980) (same).

It is black-letter law that "one who seeks out an attorney for business or personal advice may not

assert a privilege as to those communications."  *Bekins Record Storage Co.*, 465 N.E. 2d, at 348

(information conveyed to an attorney "while he was acting in a capacity as a commercial

consultant" are not privileged); *see also U.S. Postal Serv. v. Phelps Dodge Ref. Corp.*, 852 F.

Supp. 156, 160 (E.D.N.Y. 1994) ("If the communication is made to the attorney in her capacity

as a business adviser, for example, it ought not be privileged.").  Simply because Hendricks is a

member of the bar does not "automatically cloak" the services he provided "with legal garb."  *In*

16

*re Grand Jury Subpoena*, 599 F.2d 504, 511 (2d Cir. 1979).[7]  *It is Clemens' burden* to demonstrate that the withheld communications involved the provision of legal advice.

   The "circumstances of the communications do not suggest that [Clemens] would be receiving legal advice from [Randy Hendricks]." *Gulf Islands Leasing, Inc. v. Bombardier Capital, Inc.*, 215 F.R.D. 466, 472 (S.D.N.Y. 2003).  To the contrary, the few documents that have been produced show Hendricks providing business and press advice to bolster Clemens' reputation:  Speaking to the media and releasing press statements is not providing legal advice. *See* Complaint ¶ 44 & Ex. C; Ex. J.  Preparing a statistical report on Clemens' career is not providing legal advice.  *See supra* n. 4.  And when Hendricks spoke to the media he made clear that he "defer[ed] to Rusty Hardin on legal matters."  Ex. J.   "[D]iscussions of . . . press and public relations strategies" are not legal communications and are not protected by attorney-client privilege.  *de Espana*, 2005 WL 3455782, at *3 (denying privilege claim after *in camera* inspection).

### B. Work Product Protection Does Not Apply

   Clemens alternately claims work product protection for his communications with Hendricks.  As described above (*supra* § II.B), the work product privilege is not applicable because communications in the months after the Mitchell Report was issued were not prepared in anticipation of litigation.  Nor does work product protect any documents prepared by Hendricks or Clemens himself.  *In re Grand Jury Subpoenas Dated Mar. 19, 2002 & Aug. 2, 2002*, 318

---

[7]  Clemens claimed, in his pre-motion letter, that "mixed" communications that convey legal and business advice are covered by the attorney-client privilege.  Dkt. No. 81.  To the extent he attempts to characterize one component of Randy Hendricks' advice as "legal," Clemens has the "burden of demonstrating that the communications at issue are 'predominately of a legal character.'"  *Gulf Islands Leasing, Inc. v. Bombardier Capital, Inc.*, 215 F.R.D. 466, 472 (S.D.N.Y. 2003); *see also Spectrum Systems Intern. Corp. v. Chemical Bank,* 581 N.E.2d 1055 (N.Y. 1991) (privilege applicable only where communication is "primarily or predominantly of a legal character").

F.3d 379, 383 (2d Cir. 2003) (protection only applies to "materials prepared by or at the behest of counsel"). While work product may cover some small quantity of documents, without a privilege log, no document-by-document analysis is possible.

## IV.   CLEMENS' FINANCIAL RECORDS ARE RELEVANT TO PUNITIVE DAMAGES

Clemens has refused to provide documentation concerning his net worth. We sought, and ask this Court to compel:

> Request 62: Documents sufficient to show Clemens's net worth, including but not limited to, financial statements, balance statements, documents demonstrating the value of all properties and other assets owned in whole or in part by Clemens.

*See* Ex. L. Clemens objected on relevance and privacy grounds, claiming that the request is "premature." Greenberger Aff. ¶ 3; Ex. M. He did not produce any responsive documents. *Id.* Financial information is relevant to plaintiff's claim for punitive damages and must be produced. *Vasbinder v. Scott,* 976 F. 2d 118, 121 (2d Cir. 1992).

Courts frequently require production of financial information during discovery. *See Tillery v. Lynn*, 607 F. Supp. 399, 402-03 (S.D.N.Y. 1985) ("Discovery as to defendant's personal assets may be undertaken by plaintiff at this time. It would be unduly burdensome to plaintiff, and most particularly a jury and the court, to delay resolution of the issue as to the amount of punitive damages, if any, which should be awarded until discovery as to defendant's personal assets had been completed.); *Hazeldine v. Beverage Media, Ltd.*, No. 94 CIV. 3466, 1997 WL 362229 (S.D.N.Y. June 27, 1997) (holding that pre-trial financial discovery and a bifurcated trial is the more efficient method of managing a trial involving a punitive damages claim); *see also Wade v. Sharinn & Lipshie, P.C.*, CV 07-2838, 2009 WL 37521 (E.D.N.Y. Jan. 7, 2009); *Open Housing Center Inc. v. Kings Highway Realty,* 1993 U.S. Dist. LEXIS 15927 (E.D.N.Y. 1993).

18

Because Clemens did in fact use steroids and HGH, as the evidence will demonstrate, his defamation of McNamee is willful and wanton, entitling McNamee to punitive damages.  While Clemens claims that the Court will dismiss this case on summary judgment, obviating any need for disclosure of his financial documents, his intent to file a (meritless) summary judgment motion does not relieve him of his obligation to comply with discovery now. Despite Clemens' contention, this case cannot be resolved through summary judgment because a jury must decide who is telling the truth.  Though courts are "split on the issue of allowing pretrial disclosure of financial information relevant to a determination of punitive damages," there is little to be gained by delay here because punitive damages are likely in this case. *Copantitla v. Fiskardo Estiatorio, Inc.*, 09 CIV. 1608 RJH JCF, 2010 WL 1327921 (S.D.N.Y. Apr. 5, 2010) (citing cases).  Moreover, the existing confidentiality order resolves any privacy concerns.

## CONCLUSION

For the foregoing reasons, it is respectfully submitted that McNamee's motion to compel be granted and the Court order Clemens to produce:

- All communications between Clemens and/or Clemens' counsel, on the one hand, and Joe Householder and/or Public Strategies Inc., on the other hand, concerning the Criminal Action, Mitchell, the Mitchell Report, the Congressional Hearings, the Complaint, steroids, HGH, performance enhancing substances, and/or McNamee.

- All communications between Clemens or Clemens' counsel and Randal Hendricks, concerning the Criminal Action, Mitchell, the Mitchell Report, the Congressional Hearings, the Complaint, steroids, HGH, performance enhancing substances, and/or McNamee.

- Documents sufficient to show Clemens's net worth, including but not limited to, financial statements, balance statements, documents demonstrating the value of all properties and other assets owned in whole or in part by Clemens.

19

Date:   August 2, 2013                          Respectfully submitted,
        New York, NY


                                                _____/s/_____
                                                Richard D. Emery
                                                Earl Ward
                                                Debra L. Greenberger
                                                EMERY CELLI BRINCKERHOFF
                                                    & ABADY LLP
                                                75 Rockefeller Plaza, 20th Floor
                                                New York, NY 10019
                                                Telephone (212) 763-5000
                                                Fax (212) 763-5001
                                                *Counsel for Plaintiff*

20