UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
_____

BRIAN G. McNAMEE

                Plaintiff,

v.                                     Case No. 09-CV-1647 (SJ)(CLP)


WILLIAM ROGER CLEMENS,

                Defendant.
_____


**DEFENDANT ROGER CLEMENS'S MEMORANDUM OF LAW IN SUPPORT OF
MOTION TO RECONSIDER AND STAY
<u>SEPTEMBER 17, 2013 ORDER COMPELLING DISCOVERY</u>**


RUSTY HARDIN & ASSOCIATES, LLP
Rusty Hardin, *Admitted Pro Hac Vice*
Joe Roden, *Admitted Pro Hac Vice*
Jeremy T. Monthy, *Admitted Pro Hac Vice*
1401 McKinney Street, Suite 2250
Houston, Texas  77010-4035
Tel:  (713) 652-9000
Fax:  (713) 652-9800

ATTORNEYS FOR
WILLIAM ROGER CLEMENS

# **TABLE OF CONTENTS**

TABLE OF CONTENTS ..................................................................................... ii

TABLE OF AUTHORITIES ................................................................................ iii

INTRODUCTION ..............................................................................................1

ARGUMENT .....................................................................................................4

I.     The September 17, 2003 Order Overlooked Authority Supporting
       Clemens's Method Of Objecting To And Describing Privileged
       Documents. .............................................................................................5

II.    The September 17, 2003 Order Overlooked Facts Supporting Both
       Clemens's Method Of Describing Privileged Documents And Clemens's
       Privilege Designations. ...........................................................................9

III.   Enforcement Of The Court's Discovery Sanction Would Be Unfair And
       Contrary To Law.....................................................................................14

       A.    The Order Exceeded Plaintiff's Requested Relief. ..................................15

       B.    The Order Imposed a Sanction Without Required Findings of Bad Faith.............16

       C.    The Order Imposed a Sanction Despite a Record of Good Faith. .........................20

       D.    The Order Precipitously Overruled Additional Objections. ..................................21

IV.    Clemens Continues To Strive To Meet His Discovery Obligations. ................................22

       A.    Clarification of Documents Produced to Date.....................................................22

       B.    Discovery Correspondence and Production as of the Date of this
             Motion.........................................................................................................25

CONCLUSION ..................................................................................................27

# **TABLE OF AUTHORITIES**

## **Cases:**

*A.I.A. Holdings, S.A. v. Lehman Bros., Inc.*, Case No. 97 Civ. 4978 (LMM) (HB),
2002 WL 31385824 (S.D.N.Y. Oct. 21, 2002) ............................................................6, 19

*AMBAC Fin. Servs., LLC v. Bay Area Toll Authority*, Case No. 09 Civ. 7062(RJH)(RLE),
2010 WL 3260146 (S.D.N.Y. Aug. 5, 2010)....................................................................21

*American Broadcasting Co., Inc. v. Aereo, Inc.*, Case Nos. 12 Civ. 1540 (AJN) & 12 Civ. 1543,
2013 WL 139560 (S.D.N.Y. Jan. 11, 2013) ................................................................6, 26

*American Nat. Bank & Trust Co. of Chicago v. Equitable Life Assur. Soc. of U.S.*,
406 F.3d 867 (7th Cir. 2005) ......................................................................17, 19, 20–21

*Anderson v. Hale*, 202 F.R.D. 548 (N.D. Ill. 2001)......................................................................15

*Belmont v. Associates Nat'l Bank,* 219 F. Supp.2d 340 (E.D.N.Y. 2002)......................................4

*Bowling v. Hasbro, Inc.*, 582 F. Supp.2d 192 (D.R.I. 2008) ........................................................17

*Byrne v. Liquid Asphalt Sys., Inc.,* 250 F. Supp.2d 84 (E.D.N.Y. 2003)........................................4

*Capitol Records, Inc. v. MP3tunes, LLC*, 261 F.R.D. 44 (S.D.N.Y. 2009)..................................26

*Catholic Home Bureau v. Doe,* 464 U.S. 864 (1983) ........................................................................4

*Curto v. Medical World Communications, Inc.*, 783 F. Supp.2d 373 (E.D.N.Y. 2011)...............19

*Doe v. New York City Dep't of Social Servs.,* 709 F.2d 782 (2d Cir. 1983)....................................4

*Export-Import Bank of the U.S. v. Asia Pulp & Paper Co., Ltd.*,
232 F.R.D. 103 (S.D.N.Y. 2005) ...................................................................................8–9

*Ferrand v. Credit Lvonnais,* 292 F.Supp.2d 518 (S.D.N.Y. 2003)............................................2, 4

*First Sav. Bank, F.S.B. v. First Bank System, Inc.*, 902 F. Supp. 1356 (D. Kan. 1995) ...............14

*Gary Friedich Enterprises, LLC v. Marvel Enterprises, Inc.*, Case No. 08 Civ. 1533 (BSJ)(JCF),
2011 WL 1642381 (S.D.N.Y. April 26, 2011) ..........................................................25–26

*GenOn Mid-Atl., LLC v. Stone & Webster, Inc.*, Case No. 11 Civ. 1299 (HB)(FM),
2011 WL 5439046 (S.D.N.Y. Nov. 10, 2011) ..................................................................6

*Grand River Enterprise Six Nations, Ltd. v. Pryor*, Case No. 02 Civ. 5068(JFK)(DFE),
    2008 WL 4703114 (S.D.N.Y. Oct. 23, 2008) ............................................................17, 21

*Henderson v. Holiday CVS, LLC*, 269 F.R.D. 682 (S.D. Fla. 2010) ............................................16

*In re County of Erie*, 473 F.3d 413 (2d Cir. 2007) ...................................................................12

*In re Currency Conversion Antitrust Litig.*, Case No. 05 Civ. 7116 (WHP)(THK),
    2010 WL 4365548 (S.D.N.Y. Nov. 3, 2010).....................................................................19

*In re Grand Jury Subpoenas Dated March 24, 2003 Directed to
    (A) Grand Jury Witness Firm & (B) Grand Jury Witness*,
    265 F. Supp.2d 321 (S.D.N.Y. 2003)........................................................................13, 14

*In re Health Mgmt. Sys., Inc. Sec. Litig.*, 113 F. Supp.2d 613 (S.D.N.Y. 2000) ...........................4

*In re Imperial Corp. of America*, 174 F.R.D. 475 (S.D. Cal. 1997) ...............................................6

*In re In–Store Advertising Securities Litigation*, 163 F.R.D. 452 (S.D.N.Y. 1995).....................17

*In re Motor Fuel Temperature Sales Practices Litigation*, Case No. 07-MD-1840-KHV,
    2009 WL 959491 (D. Kan. April 3, 2009).........................................................................6

*In re Papst Licensing, GmbH Patent Litigation*, Case No. CIV. A. MDL 1298,
    2001 WL 1135268 (E.D. La. Sept. 19, 2001) ...................................................................6

*In re Rivastigmine Patent Litig.*, 237 F.R.D. 69 (S.D.N.Y. 2006) .................................................6

*In re von Bulow*, 828 F.2d 94 (2d Cir. 1987) ............................................................................20

*Orbit One Communications, Inc. v. Numerex Corp.*, 255 F.R.D. 98 (S.D.N.Y. 2008) .................6

*Paraiecki v. Int'l Bus. Machs. Corp.*, 165 F.R.D. 20 (E.D.N.Y. 1996)..........................................4

*People v. Osorio*, 549 N.E.2d 1183 (N.Y. 1989)........................................................................16

*PKFinans Int'l Corp. v. IBJ Schroder Leasing Corp.*,
    Case Nos. 93 Civ. 5375 (SAS) (HBP, 96 Civ. 1816 (SAS) (HBP),
    1996 WL 525862 (S.D.N.Y. Sept. 17, 1996)...................................................................14

*Riticca v. Abbott Laboratories*, 203 F.R.D. 332 (N.D. Ill. 2001) ..........................................14, 15

*Sajda v. Brewton*, 265 F.R.D. 334 (N.D. Ind. 2009) .............................................................15, 26

*Securities and Exchange Comm'n v. Thrasher*, Case No. 92 Civ. 6987,
    1996 WL 125661 (S.D.N.Y. Mar. 20, 1996) ...........................................................5, 6, 7

*Silberman v. Innovation Luggage, Inc.*, Case No. 10 Civ. 7109 GELDF,
    2002 WL 31175226 (S.D.N.Y. Sept. 30, 2002)................................................1

*Tirado v. Miller*, 75 A.D.3d 153 (N.Y. App. Ct. 2d Dep't 2010) ................................16

*Trans-Pro Logistic Inc. v. Coby Electronics Corp.*, Case No. 05 CV 1759 (CLP),
    2010 WL 4065603 (E.D.N.Y. Oct. 15, 2010)................................................4, 27

*Trudeau v. New York State Consumer Protection Bd.*,
    237 F.R.D. 325 (N.D.N.Y. 2006) ..................................................11, 14, 15, 26

*United States v. Adlman*, 68 F.3d 1495 (2d Cir. 1995) ....................................14

*United States v. Bouchard Transp.*, Case No. 08-CV-4490 NGG ALC,
    2010 WL 1529248 (E.D.N.Y. Apr. 14, 2010) ..........................................12, 26

*United States v. British Amer. Tobacco (Investments) Ltd.*, 387 F.3d 884 (D.C. Cir. 2004)........22

*United States v. Magnesium Corp. of America*, Case No. 2:01-CV-00040 DB,
    2006 WL 1699608 (D. Utah June 14, 2006)................................................6

*United States v. Nobles*, 422 U.S. 225 (1975) ..........................................14

*United States v. Philip Morris, Inc.*, 347 F.3d 951 (D.C.Cir. 2003)..........................14–15, 16–17

*Update Art, Inc. v. Modiin Pub., Ltd.*, 843 F.2d 67 (2d Cir. 1988) ..........................17

*Winkler v. Metro. Life Ins. Co.,* 340 F. Supp.2d 411 (S.D.N.Y. 2004)..........................4


**Statute:**

N.Y. C.P.L.R. §4503(a)(1) (McKinney 2002) ..............................................16


**Treatise:**

8 C. Wright, et al., Fed. Prac. & Proc. Civ. § 2016.1 (3d ed. 2013) ..................................11–12, 19


**Periodicals:**

Michael S. Schmidt, *McNamee's Legal Team Adds Power to Lineup*,
    N.Y. Times Dec. 29, 2007 ..............................................12, 26

*Roger Clemens' attorney Rusty Hardin reacts to indictment, repeats steroid denials*,
    N.Y. Daily News Aug. 19, 2010..............................................13

**Rules:**

Local Civil Rule 6.3.................................................................................................1, 2, 4

Local Civil Rule 26.2(a)(2)............................................................................................17

Local Civil Rule 26.2(b) ...............................................................................................17

Local Civil Rule 26.2(c) ..................................................................................2, 5, 7, 8, 17

Advisory Committee Note to Local Civil Rule 26.2 ....................................................8

Rule 26(b)(5) of the Federal Rules of Civil Procedure...........................................5, 7, 8

Advisory Committee Note to Fed. R. Civ. P. 26(b)(5)...........................................5, 21

Rule 6(e)(2) of the Federal Rules of Criminal Procedure.....................................18, 19

Texas Rule of Evidence 503(b)(1)(E)...........................................................................16

## MOTION TO RECONSIDER AND STAY
## <u>SEPTEMBER 17, 2013 ORDER COMPELLING DISCOVERY</u>

Defendant Roger Clemens respectfully requests this Court to reconsider its Order dated

September 17, 2013 [D.E. 93, hereafter referred to as "Order"] pursuant to Local Civil Rule 6.3.

In that Order, the Court ruled that conduct by counsel responding to discovery waived, *carte*

*blanche*, any internal communications between counsel and either a public relations consultant

retained and directed by counsel (Joe Householder) or Clemens's long-time legal adviser and

agent (Randy Hendricks).  *See* Order at 6, 8 & 19.  As a result, the Court ordered Clemens to

"produce all documents responsive to plaintiff's Document Requests 55 and 57 by September 30,

2013," *id.* at 19,[1, 2] even though:

- The Court acknowledged that the ordered production would include documents that are potentially privileged or work product, *see, e.g.*, Order at 8 n.10;

- Plaintiff asked for much more limited relief than the Court ordered, including the production of a privilege log, *see* D.E. 90 at 10;

- When the discovery conduct the Court found warranted waiver—failure to provide a detailed, non-categorical privilege log—was initially briefed, Plaintiff advised the Court that he "believe[s] this Court can deny [Clemens's] privilege invocation without resorting to a document-by-document analysis," D.E. 82 at 2;

- Clemens has raised additional objections to Document Request 55 and 57, *see* D.E. 87-2 at ¶3 & D.E. 87-15 at 26–27, which were not the subject of Plaintiff's motion to compel and have never been briefed to the Court; and

- Instead of finding unjustified delay, inexcusable conduct, or bad faith by Clemens or his counsel, the record demonstrates Clemens's reasonable belief that his privilege objections complied with the Local Rules, *see* Order at 4, and "good faith" efforts to resolve the parties' dispute over whether the requested documents were privileged, *see, e.g.*, D.E. 76; D.E. 87-1 at 6 & D.E. 87-2 at ¶5.

---

[1]     The Court also directed Mr. Clemens to "clarify" and "explain" which documents have been produced and withheld to date.  *See* Order at 18–19.  This information is included in the discussion in Point IV below.  Clemens does not seek reconsideration of the Court's ruling with respect to Document Request 62.

[2]     Although Mr. Clemens has made a supplemental production of communications initially withheld as described in Point IV below, Mr. Clemens also seeks a stay of the deadline set forth in the September 27, 2013 Order during the pendency of this motion for reconsideration and, if necessary, any appeal to Judge Sterling Johnson.  *See, e.g.*, *Silberman v. Innovation Luggage, Inc.*, Case No. 10 Civ. 7109 GELDF, 2002 WL 31175226, at *3 (S.D.N.Y. Sept. 30, 2002) (granting stay of discovery order despite untimely request after compliance date).

The Court should reconsider its Order, and particularly its waiver ruling and sanction, for three reasons.  *First*, the Court overlooked controlling authority, including the provisions of, and commentary explaining, Local Civil Rule 26.2(c) that deem Clemens's initial method of raising privilege objections applicable to "e-mails and e-mail chains" *en masse* "presumptively proper." *Second*, the Court overlooked a number of facts, including sworn statements attached to Clemens's opposition but not referenced at all in the Order, which would have altered the Court's interpretation of documents reviewed *in camera* and the Court's ultimate decision. These are classic grounds for reconsideration or reargument.  *See* Local Civ. R. 6.3; *Ferrand v. Credit Lvonnais,* 292 F.Supp.2d 518, 520 (S.D.N.Y. 2003).

*Third*, the Court's imposition of a discovery sanction exceeding Plaintiff's requests and contrary to a record of good faith would result in a huge windfall for Plaintiff.  As prefaced at the time of Clemens's *in camera* submission and as detailed in Point IV below, the Court's broad order to produce all documents "responsive to plaintiff's Document Requests 55 and 57" encompasses thousands of unique, confidential e-mails and memoranda in addition to the communications directly with Messrs. Householder and Hendricks previously produced *in camera*.  Plaintiff expressly *declined* to seek compulsory production of emails "authored by Hardin's firm" and "created because of the Texas litigation or Congressional inquiry," *see* D.E. 90 at 10, yet Clemens would be forced to produce hundreds, if not thousands, of such emails reflecting confidential legal advice, strategy, and mental impressions simply because those emails were sent to or carbon copied to an internal e-mail distribution list of which Messrs. Hendricks and Householder were members.  Plaintiff will also receive emails in which counsel are privately strategizing about *this case* as well as approximately 2,000 emails which are

arguably responsive, yet are not reasonably calculated to lead to the discovery of admissible evidence.  The Court should revisit its ruling to prevent such an injustice.

Although the Court should change its September 17, 2003 ruling and Order, Clemens fully appreciates that the Court disapproves of the circumstances of this case, disagrees with Clemens's application of the Local Rules to date, and has been frustrated and troubled by reviewing large numbers of documents withheld from production while the parties attempt to sort out fundamental privilege claims.  *See* Order at 6 & 13.  Undersigned counsel have earnestly attempted to advance the process of resolving a threshold privilege dispute and to comply with the Court's directives in a timely and straightforward manner.   Clemens would never intentionally try to impede the Court's examination of documents or issues.  *See* Order at 7.  To that end, irrespective of the instant request to stay compliance with the Order, as of the filing of this motion, Clemens is also:

(i)     Submitting to the Court, *in camera*, revised versions of Defendant's Privilege Log of Joe Householder Communications and Defendant's Privilege Log of Randy Hendricks Communications;

(ii)    Submitting to the Court, *in camera*, a Privilege Log identifying 2,865 additional communications between and among Clemens's e-mail distribution groups, Mr. Householder, and/or Mr. Hendricks responsive to Document Requests 55 and 57, as described on page 2 of Clemens's August 19, 2013 transmittal letter to the Court;

(iii)   Serving Plaintiff with 78 documents previously submitted for *in camera* review based on a good faith determination that no privilege applies and no reasonable argument exists that such production would constitute a subject-matter waiver, *see* Exhibit A attached hereto; and

(iv)    Serving Plaintiff with approximately 700 additional documents based on a good faith determination that no privilege applies and no reasonable argument exists that such production would constitute a subject-matter waiver, *see id.*; and

(v)     Redacting dozens of additional documents (as many as 275, including many duplicates) to remove portions of communications in which defense team members conveyed legal advice or analysis for supplemental production to Plaintiff later this week.

**ARGUMENT**

Local Civil Rule 6.3 provides the general standards for reconsideration and reargument of a Court ruling like the September 17, 2003 Order. *See Belmont v. Associates Nat'l Bank,* 219 F. Supp.2d 340, 343 (E.D.N.Y. 2002); *see also Winkler v. Metro. Life Ins. Co.,* 340 F. Supp.2d 411, 412–13 (S.D.N.Y. 2004); *Paraiecki v. Int'l Bus. Machs. Corp.,* 165 F.R.D. 20, 22 (E.D.N.Y. 1996). Courts considering a Rule 6.3 motion typically require that the moving party "demonstrate controlling law or factual matters put before the court on the underlying motion that the movant believes the court overlooked and that might reasonably be expected to alter the court's decision." *Ferrand,* 292 F. Supp.2d at 520 (internal citations omitted); *see also Byrne v. Liquid Asphalt Sys., Inc.,* 250 F. Supp.2d 84, 88 (E.D.N.Y. 2003). The Second Circuit has also stated that Local Rule 6.3 is designed to provide a mechanism to "correct a clear error or prevent manifest injustice." *Doe v. New York City Dep't of Social Servs.,* 709 F.2d 782, 789 (2d Cir. 1983), *cert. denied, Catholic Home Bureau v. Doe,* 464 U.S. 864 (1983); *see also Belmont,* 219 F. Supp.2d at 343. In addition, although parties seeking reconsideration of a Court order should be mindful that relief under Local Rule 6.3 is "to be employed sparingly in the interests of finality and conservation of scarce judicial resources," *see Winkler*, 340 F.Supp.2d at 412 (quoting *In re Health Mgmt. Sys., Inc. Sec. Litig.,* 113 F. Supp.2d 613, 614 (S.D.N.Y. 2000)), the Court also has discretion to consider the merits of a motion for reconsideration even if the movant repeats or reemphasizes previous arguments. *See, e.g.*, *Trans-Pro Logistic Inc. v. Coby Electronics Corp.*, Case No. 05 CV 1759 (CLP), 2010 WL 4065603, at *2 (E.D.N.Y. Oct. 15, 2010).

The Court should reconsider its Order because it (1) overlooked controlling authority justifying Clemens's method of objecting to Plaintiff's request for privileged communications and work product, (2) overlooked ten facts that, if considered, would reasonably be expected to

alter the Court's conclusions regarding waiver and privilege, and (3) issued a broad, unwarranted sanction contrary to Plaintiff's requested relief, the law, and fairness. The Court should also reconsider its Order and discovery sanction because (4), in a continuing effort to meet and exceed his discovery obligations, Clemens has provided the information requested by the Court and has submitted and produced additional and supplemental logs and documents to the Court and Plaintiff as of the date of this motion.

## I.  The September 17, 2003 Order Overlooked Authority Supporting Clemens's Method Of Objecting To And Describing Privileged Documents.

Local Rule 26.2(c) permits a party making the same privilege objection to an entire category of documents or communications to log those objections for an adversary in the aggregate instead of document by document. Federal Rule of Civil Procedure 26(b)(5) also envisions categorical descriptions of withheld documents, provided the descriptions are sufficient to enable other parties to evaluate the applicability of the claimed privilege or protection:

> Details concerning time, persons, general subject matter, etc., may be appropriate if only a few items are withheld, but may be unduly burdensome when voluminous documents are claimed to be privileged or protected, particularly if the items can be described by categories.

Advisory Committee Note to Fed. R. Civ. P. 26(b)(5).

It was reasonable for Clemens to rely on Rules 26(b)(5) and 26.2(c) to defend the categorical, rather than document-by-document, format of his privilege log. Even before Local Rule 26.2 was enacted, courts in this Circuit found that parties "certainly" should be permitted to identify documents withheld on privilege grounds in summary fashion "by category or otherwise:"

> This would certainly be the case if (a) a document-by-document listing would be unduly burdensome and (b) the additional

> information to be gleaned from a more detailed log would be of no
> material benefit to the discovering party in assessing whether the
> privilege claim is well grounded.

*Securities and Exchange Comm'n v. Thrasher*, Case No. 92 Civ. 6987, 1996 WL 125661, at *1–

2 (S.D.N.Y. Mar. 20, 1996) (citing Fed. R. Civ. P. 26(b)(5)).[3]   With the increase of emails

subject to discovery, courts in this jurisdiction have repeatedly endorsed the preparation of a

categorical, rather than document-by-document, log.  *See, e.g.*, *American Broadcasting Co., Inc.*

*v. Aereo, Inc.*, Case Nos. 12 Civ. 1540 (AJN) & 12 Civ. 1543, 2013 WL 139560, at *2 (S.D.N.Y.

Jan. 11, 2013) (instructing parties to submit "categorical" privilege logs "pursuant to Local Rule

26.2"); *GenOn Mid-Atl., LLC v. Stone & Webster, Inc.*, Case No. 11 Civ. 1299 (HB)(FM), 2011

WL 5439046, at *11 (S.D.N.Y. Nov. 10, 2011); *Orbit One Communications, Inc. v. Numerex*

*Corp.*, 255 F.R.D. 98, 109 (S.D.N.Y. 2008) (ordering the provision of "a categorical privilege

log rather than a traditional, itemized privilege log"); *In re Rivastigmine Patent Litig.*, 237

F.R.D. 69, 87 (S.D.N.Y. 2006).  Many courts in other jurisdictions have similarly endorsed logs

that describe privilege assertions by category to avoid unnecessary burden and expense.[4]

    The *Thrasher* case is instructive here.  In that case, the SEC requested that one of the

defendants "produce all documents reflecting contacts between his attorneys and those of the

---

[3]     *See also A.I.A. Holdings, S.A. v. Lehman Bros., Inc.*, Case No. 97 Civ. 4978 (LMM) (HB), 2002 WL
31385824, *6 (S.D.N.Y. Oct. 21, 2002), *order supplemented*, 2002 WL 31556382 (S.D.N.Y. 2002) (criticizing
requirement that party offer evidence to establish privilege as to each item on log); *In re Imperial Corp. of America*,
174 F.R.D. 475, 477–78 (S.D. Cal. 1997) (granting motion to modify order to permit log by category and stating "no
where in Fed. R. Civ. Pro. 26(b)(5) is it mandated that a document-by-document privilege log is required . . .").

[4]     *See, e.g.*, *In re Motor Fuel Temperature Sales Practices Litigation*, Case No. 07-MD-1840-KHV, 2009 WL
959491, at *3 (D. Kan. April 3, 2009) (permitting party to log privileged communications by category because
"individually logging thousands of privileged attorney communications would be immensely burdensome and have
little, if any, benefit to plaintiffs"); *United States v. Magnesium Corp. of America*, Case No. 2:01-CV-00040 DB,
2006 WL 1699608, at *5 (D. Utah June 14, 2006), modified in part, 2006 WL 2350155 (D. Utah Aug. 11, 2006)
(detailed log not required where there were thousands of withheld documents and it "seem[ed] clear that documents
at issue would be protected by the work product privilege, the attorney-client privilege, or the joint defense
privilege"); *In re Papst Licensing, GmbH Patent Litigation*, Case No. CIV. A. MDL 1298, 2001 WL 1135268, *4
(E.D. La. Sept. 19, 2001) (finding detailed descriptions unnecessary because listed communications between
attorney and client were within core of the privilege).

other defendants in connection with [that] case." 1996 WL 125661, at *1. The defendant objected that the "voluminous" materials were protected by the attorney-client privilege or work product doctrine without providing a detailed privilege log.[5] *Id.* The Court noted that the demand sought "wholesale production of documents that are ordinarily covered by the work-product rule, and, if the joint-defense principle is applicable, very probably by the attorney-client privilege," and it therefore found that the SEC did not establish that it would gain any benefit from a document-by-document listing. Accordingly, in *Thrasher*, the Court ordered the party asserting the privilege merely to provide (i) the time range encompassed by the withheld documents, (ii) a listing of the individual authors and recipients of the documents, and (iii) "a representation by counsel as to whether all of the documents either were prepared to assist in anticipated or pending litigation or contain information reflecting communications between . . . counsel or counsel's representatives and . . . the client or the client's representatives, for the purpose of facilitating the rendition of legal services to the client." *Id.* at *1–2.

Clemens has provided the same information ordered in *Thrasher*. It also was reasonable for Clemens to think that the purpose of the descriptions required under Rule 26(b)(5) and Local Rule 26.2—"to enable other parties to assess the claim"—was satisfied because Plaintiff was able to challenge the claim in letter briefing and a motion to compel and, most tellingly, *Plaintiff represented to the Court* that a document-by-document analysis was not necessary to resolve the parties' dispute. *See* D.E. 82 at 2 ("[W]e believe this Court can deny [Clemens's] privilege invocation without resorting to a document-by-document analysis."). Clemens subsequently provided a list of documents submitted *in camera* for the Court's convenience, and is now, in essence, being punished for the depth of information set forth in that list.

---

[5]   The defendant in *Thrasher* also argued that a log would disclose the "pattern" of the attorney's communications, which "might reveal some aspects of his litigation strategy." 1996 WL 125661, at *1. Clemens shares this concern, which is why the logs prepared to date have been submitted to the Court for review *in camera*.

In the Order, the Court noted, but then immediately discounted, Local Rule 26.2(c) and the related commentary to that Rule. *Compare* Order at 4 n.7 ("The required privilege log need not necessarily provide descriptions on a document-by-document basis.") *and id.* at 6 ("[T]he defendant's written summary continues to lack sufficient information as to the content of the documents to enable plaintiff or the Court to evaluate whether *each* of the withheld documents is privileged.") (emphasis added). The Court also overlooked the specific commentary by the Advisory Committee about the applicability of the Local Rule to the exact type of email communications sought here: "With the advent of electronic discovery and the proliferation of e-mails and e-mail chains, traditional document-by-document privilege logs may be extremely expensive to prepare, and not really informative to opposing counsel and the Court." Advisory Committee Note to Local Civ. R. 26.2. The Court did not refer to the advisory committee notes at all in the Order, much less the case law cited above justifying Clemens's decision to provide a categorical privilege log to Plaintiff.

The Court's oversight of the endorsement of categorical privilege designations by Local Rule 26.2, Rule 26(b)(5), and related cases had a material impact on the decision. The Order based its finding that Clemens's privilege log was not adequate on the understanding that Clemens was required to log and defend the assertion of privilege or protection for "each of the withheld documents." *See, e.g.*, Order at 6. Had the Court considered the "more efficient" approach endorsed by Local Rule 26.2, Rule 26(b)(5), and related cases, it is reasonable to assume that, at most, the Court would have ordered Clemens to prepare a document-by-document privilege log (this has been accomplished in any event, as described in Point IV) in connection with either deciding or deferring a decision on the privilege assertions themselves. *See, e.g.*, *Export-Import Bank of the U.S. v. Asia Pulp & Paper Co., Ltd.*, 232 F.R.D. 103, 111

(S.D.N.Y. 2005) (ordering the production of a revised privilege log in similar circumstances). The Court should therefore reconsider its ruling.

## II.    The September 17, 2003 Order Overlooked Facts Supporting Both Clemens's Method Of Describing Privileged Documents And Clemens's Privilege Designations.

The Court also overlooked a number of facts, including sworn statements attached to Clemens's opposition, which would have altered the Court's interpretation of documents reviewed *in camera* and the Court's ultimate decision.  Ten such omissions are apparent from the text of the Order itself:

1.  *Plaintiff's Request for Relief:*  Plaintiff narrowed the scope of his request for relief, consistent with the parties' continued negotiations and the Local Rules, to production of three things:  (a) "communications with Householder or Hendricks *that were not authored by Hardin's firm*," (b) "communications with Householder or Hendricks, regardless of author, *that were not created because of the Texas litigation or Congressional inquiry*)," and (c) "*a privilege log* of all remaining withheld communications."  D.E. 90 at 10.  The Order did not appear to take this narrowed scope of relief into account, as it compelled Clemens to produce a much broader category of documents rather than a privilege log.

2.  *Affirmation of Rusty Hardin:*  Clemens submitted a four-page sworn statement from Rusty Hardin in support of Clemens's opposition to Plaintiff's motion to compel and in support of Clemens's privilege and work product objections to Document Requests 55 and 57.  *See* D.E. 89-1.  The Order did not cite or refer to the affirmation.

3.  *Affirmation of Randy Hendricks:*  Clemens submitted a four-page sworn statement from Randy Hendricks in support of Clemens's opposition to Plaintiff's motion to compel and in support of Clemens's privilege and work product objections to Document Request 55.  *See* D.E. 89-2.  The Order did not cite or refer to the affirmation.  Instead, the Order refers to and appears to rely on Plaintiff's allegation that Hendricks was Clemens's "sports agent[]" at the time of the communications in question, *see* Order at 3, when sworn testimony from Hendricks showed that he instead only served as a legal adviser to Clemens at the time of the communications, as Clemens's MLB career had ended.  *See* 89-2 at ¶4.  Clemens also submitted sworn testimony from Hendricks and briefing showing other characteristics of a legal relationship, including the fact that Hendricks hosted the initial meeting between Clemens and Hardin's team at his house and that Hendricks wrote, received, and was copied on hundreds of internal communications concerning the Mitchell Report, the civil defamation suit filed in the Southern District of Texas, Clemens's appearance before the U.S. House of

Representatives, the successful defense of criminal charges against Clemens in Washington DC, and this lawsuit.  *Id.*; *see also* D.E. 89 at 6.

4.    *Refutation of Clemens's 1998 Agency Contract:*  Clemens submitted sworn testimony from Randy Hendricks explaining that a 1998 agency agreement between Clemens and a former organization Hendricks co-owned had no bearing at all on the relationship among Clemens, Hendricks, and the legal defense team nearly ten years later.  *See* D.E. 89-2 at ¶7; *see also* D.E. 89 at 6–7.  The Order refers to and appears to rely on "the contract" and Plaintiff's interpretation of it without taking Clemens's facts into account.  Order at 3.

5.    *Refutation of Alleged Defamatory PR Campaign:*  Clemens submitted sworn testimony from Rusty Hardin explaining that Clemens did not engage in a public relations campaign to defame Plaintiff.  *See* D.E. 89-2 at ¶2.  The Order only refers to and appears to rely on Plaintiff's allegation that the context of the communications at issue was "a coordinated public relations offensive against McNamee" by Clemens.  Order at 1–2.

6.    *Refutation of Alleged Voluntary Congressional Testimony:*  Clemens submitted sworn testimony from Rusty Hardin and trial testimony provided by a Congressional staffer explaining that Clemens did not voluntarily seek to obtain a hearing before Congress.  *See* D.E. 89-2 at ¶1; D.E. 89-4; *see also* D.E. 89 at 3–4.  The Order only refers to and appears to rely on Plaintiff's allegation that Clemens's affirmative defamation suit and public hearing before Congress were "obtained" by Clemens to attack McNamee.  Order at 2.

7.    *Purpose of PR Consultation:*  Clemens submitted sworn testimony from Rusty Hardin explaining that counsel, not Clemens, retained Public Strategies, Inc. to assist counsel in reducing public pressure on Congressional staff and prosecutors to bring charges against Clemens.  *See* D.E. 89-2 at ¶¶3–4; *see also* D.E. 89 at 3–4.  The Order only refers to and appears to rely on Plaintiff's allegation that Public Strategies, Inc. was retained for media relations services unconnected with anticipated litigation.  Order at 2.

8.    *Good Faith Efforts to Narrow Privilege Dispute:*  Plaintiff's motion to compel was the product of many conversations and attempts by the parties to narrow the scope of their respective discovery objections and positions.  Plaintiff propounded 63 Requests in his Second Set of Requests for Production, and Clemens objected to 27 of the Requests to the extent that they sought documents protected from disclosure by the attorney-client and work product privileges.  *See* 87–15.  *Both* parties conferred in "good faith" to sharpen their respective positions.  *See* D.E. 76; D.E. 87-1 at 6 & D.E. 87-2 at ¶5.  The Order, however, comments on Clemens's perceived "failure to narrow the scope of his privilege claims."  Order at 13.

9.    *Additional Objections to Discovery Requests:*  Clemens objected to Document Requests 55 and 57 on grounds other than attorney-client privilege and work

10

product.  Clemens's objections that the requests sought irrelevant documents, were overly broad, and were unduly burdensome were not challenged in Plaintiff's motion to compel or the preceding letter briefing, but the objections were part of the record before the Court.  *See* D.E. 87-2 at ¶3 & D.E. 87-15 at 26–27; *see also* D.E. 89 at 1–2.  The Order effectively overrules those objections by compelling the production of "all documents responsive to plaintiff's Document Requests 55 and 57."  Order at 19.

10.    *Context and Information from* In Camera *Documents:*  At the Court's direction, Clemens submitted hundreds of actual email communications *in camera*, along with a list of parties to those emails and a log to facilitate the Court's review on August 19, 2013.  Although the Court documented its extensive effort to review the *in camera* production, the Order looks only to the log and cover letter accompanying the production "to provide adequate background or context."  *See* Order at 13.  By restricting its review of documents to a search for express references to "litigation strategy," *see id.* at 15, the Court overlooked important and apparent factual context.

The final factual oversight warrants further explanation in light of the time and effort devoted by the Court to the documents produced *in camera*.  Clemens is not arguing that the Court did not physically review and analyze documents submitted for *in camera* inspection in the Order.  *See* Order at 8.  Clemens's point is that the Court did not allow the facts and context apparent in those documents to establish Clemens's claim of privilege and work product protection.  Productions of documents *in camera* are not designed simply to enable the Court to spot-check whether a party's previous privilege descriptions and support are sufficient; rather, the Court is to consider the documents themselves to be further potential evidence submitted by a party asserting a privilege/protection to establish the existence of that privilege/protection.  *See Trudeau v. New York State Consumer Protection Bd.*, 237 F.R.D. 325, 335 (N.D.N.Y. 2006) (declining to declare waiver despite "woefully inadequate" privilege logs in light of other information provided in support of privilege); *see also* 8 Wright, et al., Fed. Prac. & Proc. Civ. § 2016.1 (3d ed. 2013) ("It is important to appreciate . . . that the showing may vary at different points in the process.  An initial response may lack details that the responding party should add if the other side challenges a privilege designation.  More information still may be necessary if the

11

matter is presented to the judge for resolution.").  In other words, an *in camera* production is an important part of a party's effort to meet its burden to show that a privilege or protection applies.

Although the Court documented its extensive effort to review the *in camera* production, the Order looked only to the previous briefing, log, and cover letter accompanying the production "to provide adequate background or context."  *See* Order at 13.  Even for documents with obvious work product implications,[6] the Order found it "impossible to determine the specific purpose of many of the documents."  *Id.*  By restricting its review of documents to a search for express references to "litigation strategy," *see id.* at 15, the Court overlooked important and apparent factual context.  *Cf. In re County of Erie*, 473 F.3d 413, 420–21 (2d Cir. 2007) ("The predominant purpose of a communication cannot be ascertained by quantification or classification of one passage or another; it should be assessed dynamically and in light of the advice being sought or rendered . . . .").

Each of the facts listed above might reasonably be expected to have altered the Court's decision if they had not been overlooked.  For example, the Court found that Clemens failed to make a sufficient evidentiary showing to support his assertion of attorney-client privilege and work product protection, *see* Order at 12, 13 & 15, but the Court made no mention of sworn testimony from Rusty Hardin and Randy Hendricks bearing directly on Clemens's invocation of the privileges (Items 2, 3 & 7 above).  When that evidence is taken into account, it should be

---

[6]       For example, in footnote 12 of the Order, the Court refers to an email and draft memorandum sent on September 28, 2010 from Andy Drumheller, a partner at Rusty Hardin & Associates, to Randy Hendricks, Rusty Hardin, and Michael Attanasio, co-counsel for Clemens in the criminal trial, summarizing an interview with a potential witness to the criminal trial.  September 28, 2010 was one month after Clemens was indicted in the District of Columbia, seventeen months after this case was removed to federal court, nearly two years after Plaintiff served Clemens with this lawsuit in New York State court, and nearly three years after counsel for Plaintiff first threatened to bring a lawsuit against Clemens if he denied Plaintiff's allegations on December 29, 2007.  *See* Michael S. Schmidt, *McNamee's Legal Team Adds Power to Lineup*, N.Y. Times Dec. 29, 2007.  Far from being impossible, "it can be assumed" that Mr. Drumheller's mental impressions and opinions related to anticipated and pending litigation based on the timeline alone.  *See United States v. Bouchard Transp.*, Case No. 08-CV-4490 NGG ALC, 2010 WL 1529248, at *2 (E.D.N.Y. Apr. 14, 2010).

clear that, contrary to the finding on page 12 of the Order, Clemens's privilege claims are exactly like the claims made in *In re Grand Jury Subpoenas Dated March 24, 2003 Directed to (A) Grand Jury Witness Firm & (B) Grand Jury Witness*, 265 F. Supp.2d 321, 325 (S.D.N.Y. 2003).

As the Order noted, the Court in *In re Grand Jury Subpoenas* upheld the privilege over communications with a public relations firm where the firm "was hired to assist counsel to create a climate in which prosecutors might feel freer not to indict the client." Order at 11. Clemens's counsel retained Public Strategies, Inc. for the same purpose. Even before the Mitchell Report was released containing false allegations that Clemens took steroids and HGH, Clemens and counsel realized that any refutation by Clemens of those allegations would almost certainly result in (i) civil litigation, (ii) a Congressional inquiry doomed to fail because of the impossible feat of 'proving a negative' without the benefit of a jury and cross-examination, and (iii) referral of Congressional testimony for criminal prosecution. *See Roger Clemens' attorney Rusty Hardin reacts to indictment, repeats steroid denials*, N.Y. Daily News Aug. 19, 2010.[7] Clemens's communications with the press were not designed to restore his public image—his misplaced inclusion in the Mitchell Report alone damaged Clemens's image beyond immediate repair—they were designed to make an inevitable criminal referral less attractive to the U.S. Attorney in

---

[7]     On August 19, 2010, Rusty Hardin was quoted saying, "He was told by us, by me, when the Mitchell Report came out, the night before when we knew it was going to come out, we just didn't know whether it was going to name names: 'Roger, here's what's going to happen if you publicly deny the accusations in the Mitchell Report. You will get an invitation to testify before Congress because the Mitchell commission was a creature of Congress. If you decline to appear voluntarily, you'll be issued a subpoena. If you're issued a subpoena, your choice will be to either take the fifth, or to testify under oath. If you testify under oath before Congress and deny that you took steroids, you will be referred to the Department of Justice for possible perjury, and my calculation and belief is one day you'll be indicted.' Roger has known, in other words, that exactly what has happened was what was going to probably happen if he publicly insisted on denying his innocence of using steroids and HGH."

This expected course of action has come to pass. From early December 2007 to date, undersigned counsel has represented Clemens in (i) a Congressional investigation, discovery, and public hearing (mid-December 2007 to February 2008), (ii) the defense of this defamation action (late-December 2007 to present), (iii) Clemens's affirmative defamation suit against Plaintiff (late-December 2007 to June 28, 2011), (iv) the defense of criminal prosecution, including two jury trials (February 27, 2008 to June 18, 2012). The central issue in all of these representations has been the same—were Plaintiff's allegations that Clemens took steroids and HGH true?—which explains, in part, why Clemens's privilege assertions and determinations have been challenging.

the District of Columbia.  Had the Court taken sworn testimony to this effect into account, the analysis regarding *In re Grand Jury Subpoenas* and, indeed, the entire substantive part of the Order, would have been different.  *See* Order at 12.[8]  The Court should therefore reconsider its ruling to reflect Clemens's "showing" to date.

## III.   Enforcement Of The Court's Discovery Sanction Would Be Unfair And Contrary To Law.

The Order was a sanction.  *See PKFinans Int'l Corp. v. IBJ Schroder Leasing Corp.*, Case Nos. 93 Civ. 5375 (SAS) (HBP, 96 Civ. 1816 (SAS) (HBP), 1996 WL 525862, at *4 (S.D.N.Y. Sept. 17, 1996) (ordering "harsh sanction" of waiver to remedy failure to produce privilege log for over three years).  The Court acknowledged that documents submitted *in camera* were potentially privileged, *see* Order at 8 n.10, but it ordered their (and many other documents') production anyway.

The Court was not obligated to issue such a severe order.  A waiver finding is not an automatic consequence of a party's alleged failure to respond to a discovery request or to state an objection with sufficient detail.  Rather, "[a]cknowledging the harshness of a waiver sanction, courts have reserved the sanction for those cases where the offending party committed unjustified delay in responding to discovery." *Riticca v. Abbott Laboratories*, 203 F.R.D. 332, 335 (N.D. Ill. 2001).  Waiver may also be justified after a demonstration of "inexcusable conduct . . . and bad faith." *First Sav. Bank, F.S.B. v. First Bank System, Inc.*, 902 F. Supp. 1356, 1361 (D. Kan. 1995); *see also United States v. Philip Morris, Inc.*, 347 F.3d 951, 954

---

[8]     The Court appears to agree with Clemens that consultants retained by counsel, including public relations professionals, may be privy to attorney-client communications and work product without waiving those privileges. Such a finding comports with client law in this jurisdiction.  *See, e.g.*, *Trudeau*, 237 F.R.D. at 338 ("Obviously, impressions and strategies are not always created in a vacuum, but, rather are generated in cogent discourse with others, including the clients and agents.  Further, the exchange of such documents and ideas with those whose expertise and knowledge of certain facts can help the attorney in the assessment of any aspect of the litigation does not invoke a waiver of the doctrine."); *see also United States v. Nobles*, 422 U.S. 225, 239 (1975); *United States v. Adlman*, 68 F.3d 1495, 1502 (2d Cir. 1995).

14

(D.C. Cir. 2003) (explaining that waiver because of failing to file a privilege log is a serious sanction most suitable for cases of unjustified delay, inexcusable conduct, and bad faith); *Sajda v. Brewton*, 265 F.R.D. 334, 339 (N.D. Ind. 2009) (declining to impose a waiver sanction without a showing of bad faith, willfulness, or fault). "Minor procedural violations, good faith attempts at compliance, and other such mitigating circumstances militate against finding waiver." *Riticca*, 203 F.R.D. at 335; *see also Anderson v. Hale*, 202 F.R.D. 548, 553 (N.D. Ill. 2001) (declining to apply Rules 34(b) and 26(b)(5) "in an overly formalistic and technical manner" because "[t]he sanction would not only be unduly harsh, but it would also impinge on the spirit and purpose of the Rules"); *Trudeau*, 237 F.R.D. at 335 ("[A]djudging these documents as waived would be too austere a remedy when the deficiencies can be readily rectified at this juncture of the litigation.").

In this case, however, the Order did not establish a justification to award such a disfavored and serious waiver sanction. The waiver ruling exceeded Plaintiff's requests, was not premised on any express finding of "unjustified delay, inexcusable conduct and bad faith," did not take into account the admitted "good faith" efforts by Clemens, and steam-rolled Clemens's other discovery objections to the document requests at issue. Reconsideration is designed to remedy such a ruling.

### A.    The Order Exceeded Plaintiff's Requested Relief.

Over the entire course of this dispute, Plaintiff continued to narrow his discovery requests consistent with the Local Rules. By the time he filed a reply in support of his motion to compel (after the Court issued a minute order directing Clemens to produce documents *in camera*), Plaintiff asked for a fairly limited production of withheld documents in connection with Document Requests 55 and 57:

> We respectfully request that, after its *in camera* review, the Court order Clemens to produce to plaintiff (a) those communications with Householder or Hendricks *that were not authored by Hardin's firm*, (b) those communications with Householder or Hendricks, regardless of author, *that were not created because of the Texas litigation or Congressional inquiry* (which would include communications relating to public relations strategy or Clemens' career, image, or endorsements), and (c) *a privilege log of all remaining withheld communications* and allow plaintiff the opportunity to demonstrate an entitlement to such documents.

D.E. 90 at 10 (emphasis added).

Plaintiffs' request for relief is much more limited than the relief the Court ordered. An order beyond Plaintiff's prayer is unfair here in light of the gravity of the sanction and the fact that the Court made no findings to justify it. *See Henderson v. Holiday CVS, LLC*, 269 F.R.D. 682, 686 (S.D. Fla. 2010) (finding waiver to be "an extreme sanction, too harsh under the circumstances" where defendant's way of describing privilege was done "with the tacit approval of Plaintiffs"); *cf. Tirado v. Miller*, 75 A.D.3d 153, 159 (N.Y. App. Ct. 2d Dep't 2010) (describing rare instances where state court may grant "further relief").[9] The Court should therefore reconsider the unjustified sanction rendered in the Order.

## B. The Order Imposed a Sanction Without Required Findings of Bad Faith.

As discussed above, a waiver sanction should be predicated on a finding of unjustified delay, inexcusable conduct, or bad faith. *See United States v. Philip Morris*, 347 F.3d at 954;

---

[9]     The Court erred in finding that "the parties have implicitly consented to having New York privilege law apply" to communications in Texas, by Texas counsel, on behalf of or in the course of the representation of a Texas client. *See* Order at 9. Clemens expressly declined to provide such consent. *See* D.E. 89 at 8–9 n.2. To date, Clemens has not pressed for a choice of law analysis because New York law and Texas law appear to be substantially the same regarding the categorical issues before the Court—*e.g.*, whether communications with public relations professionals may be withheld on the basis of attorney-client privilege or work product—but this may not be true in light of the Court's document-by-document approach. For example, under Texas law, a communication between two attorneys/agents for the same client may still be covered by the attorney-client privilege, even if the client was not a party to that communication. *See* Tex. R. Evid. 503(b)(1)(E). As a result, communications solely between and among counsel may be withheld (and logged) on the basis of attorney-client privilege, as Clemens has done. Under New York law, however, a client may need to be party to a communication (or the document must overtly refer to such a communication) in order for it to be covered by the attorney-client privilege. *See* N.Y. C.P.L.R. §4503(a)(1) (McKinney 2002); *People v. Osorio*, 549 N.E.2d 1183, 1185 (N.Y. 1989).

*Grand River Enterprise Six Nations, Ltd. v. Pryor*, Case No. 02 Civ. 5068(JFK)(DFE), 2008 WL 4703114, at *1–2 (S.D.N.Y. Oct. 23, 2008) (denying request for privilege waiver sanction); *Trudeau*, 237 F.R.D. at 337; *see also, e.g.*, *Update Art, Inc. v. Modiin Pub., Ltd.*, 843 F.2d 67, 71–72 (2d Cir. 1988) (affirming discovery sanctions due to "great detail" and "great lengths" taken by Magistrate Judge to justify sanction).  Full production of documents is best suited to a party's "flagrant" failure to assert privilege in a timely fashion.  *See In re In–Store Advertising Securities Litigation,* 163 F.R.D. 452, 456 (S.D.N.Y. 1995); *see also Bowling v. Hasbro, Inc.*, 582 F. Supp.2d 192, 211 (D.R.I. 2008) ("This Court has an obligation to safeguard the virtually sacrosanct privacy of the attorney-client privilege, and absent evidence that Bowling deliberately concealed the existence of these documents, that privilege remains in effect.").

The Order, however, made no such findings.  The Order is therefore unwarranted.  *See, e.g.*, *American Nat. Bank & Trust Co. of Chicago v. Equitable Life Assur. Soc. of U.S.*, 406 F.3d 867, 877–78 (7th Cir. 2005) (reversing discovery sanction where "the magistrate judge was silent on willfulness and fraud" because "the method for arriving at the sanction must be fair").

The Order did mention Clemens's alleged failure to "timely submit" a privilege log, *see* Order at 6 & 8, a previous ruling by the Court that a separate privilege log prepared by Clemens was insufficient, *see id.* at 7 n.9, and the lack of detail on the log submitted to the Court *in camera*, but none of these comments rises to the level of bad faith.  First, the Court's reference to "timely" submission of a log appears to have been a typographical error corrected later in the Order itself.  At the same time he served timely responses to Plaintiff's Requests for Production of Documents, Clemens attempted to comply with Local Civil Rules 26.2(a)(2), 26.2(b), and 26.2(c) by asserting privilege with respect to multiple documents and providing categorical descriptions of the type of documents withheld, the general subject matter of the documents, and

17

the author and other parties to the documents.  *See* D.E. 87-2 at ¶3 & D.E. 87-15 at 26–27.  The

Order found that this assertion and description was not "adequate," *see, e.g.*, Order at 19, but it is

inaccurate to say Clemens's index was untimely.

Second, the Court's note regarding *in camera* review of records provided by the Toronto

Blue Jays reflects a continued misunderstanding rather than any malice on Clemens's part.  *See*

Order at 7 n.9.  On May 21, 2013, the Court resolved two disputes arising out of Plaintiff's

request for the production of all documents previously produced to Clemens by prosecutors in

connection with the successful defense of Clemens's criminal action.  *See* D.E. 73.  The first

dispute had to do with the potential prohibition on voluntary disclosure imposed by Federal Rule

of Criminal Procedure 6(e)(2) because Clemens obtained some of the requested documents

solely as a result of grand jury proceedings.  "[M]ore than 900 pages" of records provided by the

Toronto Blue Jays in response to a grand jury subpoena were implicated by this dispute.  *See id.*

at 2 n.1.  Clemens ultimately had no objection to production of the Toronto Blue Jays documents

to Plaintiff, but counsel's reading of federal law prevented Clemens from doing so without a

court order authorizing the production.  Clemens actually invited that aspect of the May 21, 2013

Order and did not believe an in-depth *in camera* review was required.

Clemens prepared an index of documents in dispute at the time to enable the parties and

the Court to assess the application of Rule 6(e)(2), but it only used one row/entry in that index to

refer to records provided by the Toronto Blue Jays.  Clemens did not break down the Toronto

Blue Jays records into separate log entries for three reasons:  (1) the parties sought a single order

with respect to the entire collection of records—indeed, again, in sealed submissions, Clemens

advised the Court that he would not oppose production of the records; (2) the strictures of Rule

6(e)(2) applied (or did not apply) to all records in that collection, regardless of whether each

record also had an independent basis for protection or objection; and (3) Clemens's log generally tracked the document break-downs used by the Government in its production in the criminal matter.  It would be regrettable if the Court harbored a grudge against Clemens for its document-by-document *in camera* review of the Toronto Blue Jays records, as Clemens did not request such a review or feel that one was necessary given the posture of the parties' dispute over Rule 6(e)(2).  *See American Nat. Bank & Trust Co. of Chicago*, 406 F.3d at 878 (reversing discovery sanction and noting that defendant "was sanctioned for having too many good-faith differences of opinion with the magistrate judge").

Finally, the Court's comment that Clemens has "fail[ed] to narrow the scope of his privilege claims" is misplaced.  Order at 13.  The Order appears to take a static view of the parties' discovery negotiations, when, in reality, the Court's ruling is part of, and Clemens dutifully participated in, a well-recognized process.  "[T]he initial assertion of a privilege claim need not always include all specifics that might ultimately be necessary to resolve it; in a sense it is more like a *prima facie* showing that the identified materials were properly withheld on privilege grounds."  8 Wright, et al., Fed. Prac. & Proc. Civ. § 2016.1 (citing, *inter alia*, *Curto v. Medical World Communications, Inc.*, 783 F. Supp.2d 373 (E.D.N.Y. 2011)); *see also, e.g.*, *In re Currency Conversion Antitrust Litig.*, Case No. 05 Civ. 7116 (WHP)(THK), 2010 WL 4365548, at *3 (S.D.N.Y. Nov. 3, 2010) (taking into account declarations and "further explanation" supporting invocation of privilege in response to motion to compel).  Put another way, "[t]he initial privilege log . . . is not intended in all cases to provide specificity ripe for resolution by the court."  *Id.*; *see also A.I.A. Holdings*, 2002 WL 31385824, at *3–6 (describing the practice in this jurisdiction regarding "what does the proponent of a privilege have to prove and at what stage does it need to prove it").  Clemens did not endeavor to sort documents withheld at this stage by

19

strength of the privilege claim because the question put before the Court was whether communications with Messrs. Householder and Hendricks were capable of being privileged at all. Prudence and caution also dictated that Clemens should also withhold all internal, confidential communications with Messrs. Householder and Hendricks pending a ruling on his privilege assertion so that Plaintiff could not argue later that a production of some, but not all, internal, confidential team communications constituted an implied or subject-matter waiver of all such communications. *Cf. In re von Bulow*, 828 F.2d 94, 102–03 (2d Cir. 1987) (reversing trial court's waiver ruling, but discussing various considerations and authorities arguing for and against implied waiver). As demonstrated by the partial production described in Point IV below, Clemens has no reservations with applying the Court's ruling in that regard to the specific communications withheld to date. Accordingly, even if the Court had made findings of bad faith justifying a waiver sanction in this case, those findings would not have been supportable.

### C. The Order Imposed a Sanction Despite a Record of Good Faith.

In this case, not only is there no evidence of bad faith by Clemens deserving an austere discovery sanction, but *Plaintiff's own submissions* also document Clemens's good faith. According to Plaintiff, Clemens engaged in "good faith" efforts, including multiple meet-and-confer sessions conducted over several months, to resolve the parties' dispute over whether the requested documents were privileged. *See, e.g.*, D.E. 76; D.E. 87-1 at 6 & D.E. 87-2 at ¶5. In fact, Clemens has produced hundreds of thousands of documents and pages of electronic data in fifteen production installments starting on or around October 2012. The Order also notes that Clemens's conduct was based on a belief that his privilege objections complied with the Local Rules. *See* Order at 4. Courts have declined to compel the type of production directed in the Order when, like here, the record shows that the party resisting discovery did not act in bad faith. *See, e.g.*, *American Nat. Bank & Trust Co. of Chicago*, 406 F.3d at 879 (reversing discovery

sanction, in part, because defendant "exhibited good faith throughout the privilege log proceeding"); *Grand River Enterprise Six Nations*, 2008 WL 4703114, at *2; *AMBAC Fin. Servs., LLC v. Bay Area Toll Authority*, Case No. 09 Civ. 7062(RJH)(RLE), 2010 WL 3260146, at *2 (S.D.N.Y. Aug. 5, 2010).  The Court should reconsider the Order to reach the same result.

### D.      The Order Precipitously Overruled Additional Objections.

The Court should also reconsider its waiver sanction because the Order to "produce all documents responsive to plaintiff's Document Requests 55 and 57" compels the production of documents over Clemens's separate objections on relevance, burden, and scope grounds.  *See* D.E. 87-2 at ¶3 & D.E. 87-15 at 26–27.  This is improper because the obligation to provide pertinent information concerning withheld privileged materials "applies only to items 'otherwise discoverable.'" Advisory Committee Note to Fed. R. Civ. P. 26(b)(5); *Grand River Enterprise Six Nations*, 2008 WL 4703114, at *2 (denying request for privilege waiver sanction based, in part, on fact that party resisting disclosure also "objected on the ground of over-breadth").

As the Advisory Notes to Rule 26(b)(5) explain, the proper process to be undertaken when, as is the case here, requests for production of documents raise objections based on privilege concerns as well as the scope of the request is as follows:

> If a broad discovery request is made—for example, for all documents of a particular type during a twenty year period—and the responding party believes in good faith that production of documents for more than the past three years would be unduly burdensome, it should make its objection to the breadth of the request and, with respect to the documents generated in that three year period, produce the unprivileged documents and describe those withheld under the claim of privilege.  If the court later rules that documents for a seven year period are properly discoverable, the documents for the additional four years should then be either produced (if not privileged) or described (if claimed to be privileged).

Advisory Committee Note to Fed. R. Civ. P. 26(b)(5).  Along these lines, when a party has a reasonable belief that a discovery objection other than the assertion of privilege or work product protection is applicable, courts have held that omitting such documents from a log does not warrant a waiver of the privilege.  *See, e.g.*, *United States v. British Amer. Tobacco (Investments) Ltd.*, 387 F.3d 884, 891–92 (D.C. Cir. 2004).

Clemens has done more than the law arguably requires by describing *all documents* withheld on privilege and other grounds to date in an effort to comply fully with the Court's direction to produce documents *in camera*, but this does not amount to a waiver of Clemens's scope or burden objections.  Indeed, compliance with the Order as stated would involve production of approximately 2,000 email communications that are arguably responsive, yet are are not reasonably calculated to lead to the discovery of admissible evidence.  Plaintiff did not challenge Clemens's scope or burden objections in his motion to compel, and the Court did not expressly rule on those objections, because the broad issue before the Court was whether communications to and/or from Messrs. Householder and Hendricks could be privileged at all. The Court should therefore reconsider its Order to the extent that it overrules the objections without briefing or full and fair consideration.

## IV.    Clemens Continues To Strive To Meet His Discovery Obligations.

### A.    Clarification of Documents Produced to Date.

In the Order, the Court directed Clemens to "clarify whether he has produced all potentially responsive documents to the plaintiff" in connection with Document Requests 55 and 57 in response to concerns raised in a letter submitted by Plaintiff's counsel on August 20, 2013. *See* Order at 18.  If potentially responsive documents had not been produced, the Court also directed Clemens to "explain what they are and why they should not also be produced based on this Order's findings."  *Id.* at 18–19.  Plaintiff's stated concerns, however, are unfounded.

Clemens has produced all non-privileged documents responsive to Document Requests 55 and 57 in his possession, custody or control, and he will produce any additional documents he may discover pursuant to the continuing discovery obligations in the Federal Rules of Civil Procedure.

With respect to Mr. Householder, Clemens has searched his and counsel's files, and he has produced all non-privileged communications to, from, *and* copied to Mr. Householder. These communications include e-mail correspondence with media and other third parties. *See, e.g.*, CLEMENS 8291–8305 (produced on June 13, 2013). Clemens has also made an effort to produce non-privileged portions of communications with Mr. Householder in Clemens's files by redacting subsequent communications among the defense team to which Clemens is asserting attorney-client privilege or work product protection. Clemens has asked Mr. Householder and Public Strategies, Inc. if they have any potentially responsive documents in their files or servers, and they have informed him they do not. Any potentially responsive documents withheld on the basis of privilege and/or work product have been sorted and logged for potential production or further review in connection with the instant motion to reconsider and stay compliance.

Clemens's August 19, 2013 letter referred to "communications . . . *directly with* Joe Householder and/or Public Strategies, Inc." because, as described elsewhere in the letter, Mr. Householder was a member for a brief time in an e-mail distribution group called "Clemens," but Clemens was unable to identify, index, and produce for *in camera* review all emails to that e-mail distribution group by August 19, 2013. Those e-mails have since been retrieved by a third-party information technology firm, de-duplicated, and indexed in a separate privilege log provided in connection with this motion.[10] This third-party search in archived e-

---

[10]     This endeavor was a significant and expensive undertaking, particularly in light of the expedited nature of the Court's request for an *in camera* production and additional detail in the September 17, 2013 Order. Although

mail servers also identified over 1,000 additional communications (the vast majority of which were duplicates) in which Mr. Householder was individually named as sender or recipient (to or cc), and those have either been logged, withheld as non-responsive, or produced to Plaintiffs.

With respect to Mr. Hendricks, Clemens has searched his, counsel's files, *and* Hendricks's own files, and he has produced all non-privileged communications to, from, *and* copied to Mr. Hendricks.  These communications include e-mail correspondence with media and other third parties.  *See, e.g.*, CLEMENS 8306–8326 (produced on June 13, 2013).  Clemens has also made an effort to produce non-privileged portions of communications with Mr. Hendricks by redacting subsequent communications among the defense team to which Clemens is asserting attorney-client privilege or work product protection.  Clemens has asked Mr. Hendricks if he has any additional potentially responsive documents in his files or servers, and Mr. Hendricks has informed Clemens he does not.  Any potentially responsive documents withheld on the basis of privilege and/or work product have been sorted and logged for potential production or further review in connection with the instant motion to reconsider and stay compliance.

As described in Clemens's August 19, 2013 letter, Mr. Hendricks also was a member in several e-mail distribution groups called "Clemens," "ClemensAll," and "ClemensOut," but Clemens was unable to identify, index, and produce for *in camera* review all emails to those e-mail distribution groups by August 19, 2013.  Those e-mails have since been retrieved by a third-party information technology firm, de-duplicated, and either (i) indexed in a separate privilege log totaling over 800 pages provided in connection with this motion or (ii) designated as non-responsive or subject to production.   Approximately 700 in the latter category have been produced to Plaintiffs.  *See* Exhibit A.

counsel has made a good faith effort to accurately and thoroughly describe 2,865 communications indexed in the additional log, Clemens will certainly endeavor to amend or supplement the log if the Court or counsel's ongoing review identifies any errors or deficiencies.

**B.      Discovery Correspondence and Production as of the Date of this Motion.**

Although Clemens believes that the Order should be reconsidered and that he should be relieved of any obligation to produce additional documents potentially responsive to Document Requests 55 and 57, irrespective of the instant request to stay compliance with the Order, Clemens is also doing the following as of the filing of this motion:

1.      Submitting to the Court, *in camera*, revised versions of Defendant's Privilege Log of Joe Householder Communications and Defendant's Privilege Log of Randy Hendricks Communications;

2.      Submitting to the Court, *in camera*, a Privilege Log identifying 2,865 additional communications between and among Clemens's e-mail distribution groups, Mr. Householder, and/or Mr. Hendricks responsive to Document Requests 55 and 57, as described on page 2 of Clemens's August 19, 2013 transmittal letter to the Court;

3.      Serving Plaintiff with 78 documents previously submitted for *in camera* review based on a good faith determination that no privilege applies and no reasonable argument exists that such production would constitute a subject-matter waiver, *see* Exhibit A attached hereto; and

4.      Serving Plaintiff with approximately 700 additional documents based on a good faith determination that no privilege applies and no reasonable argument exists that such production would constitute a subject-matter waiver, *see id.*; and

5.      Redacting dozens of additional documents (as many as 275, including many duplicates) to remove portions of communications in which defense team members conveyed legal advice or analysis for supplemental production to Plaintiff later this week.

These efforts, and the 800-page supplemental privilege log in particular (item 3), exceed Clemens's likely discovery obligations.  Had the Court granted Plaintiff's request compelling the preparation of a privilege log, Clemens would have had a valid basis to limit the entries in the privilege log to documents created before late December 2007, the latest date litigation by Plaintiff was threatened and anticipated.  *See Gary Friedich Enterprises, LLC v. Marvel Enterprises, Inc.*, Case No. 08 Civ. 1533 (BSJ)(JCF), 2011 WL 1642381, at *2 (S.D.N.Y. April 26, 2011); *Capitol Records, Inc. v. MP3tunes, LLC*, 261 F.R.D. 44, 51 (S.D.N.Y. 2009);

*Bouchard Transp.*, 2010 WL 1529248, at *2; *see also American Broadcasting*, 2013 WL 139560, at *2 (instructing parties to exclude from privilege logs documents created after the commencement of litigation).  As the Court explained in *Capitol Records*, "at some point in most civil suits the focus of the principals' discussions shifts from the acts or omissions giving rise to the claims to the prosecution or defense of the lawsuit."  261 F.R.D. at 51.  In this case, Plaintiff publicly threatened to bring a lawsuit against Clemens if he denied Plaintiff's allegations no later than December 29, 2007.  *See* Michael S. Schmidt, *McNamee's Legal Team Adds Power to Lineup*, N.Y. Times Dec. 29, 2007.  Applying this defensible date restriction to Plaintiff's requests would have eliminated 313 of the 410 entries (76 percent) from the logs initially submitted to the Court *in camera*, and it would have eliminated 2,789 of the 3,191 entries (87 percent) entries from the revised and supplemental logs described above.

Courts have credited a party's efforts to cure perceived deficiencies in a privilege log in the course of denying or reconsidering a waiver sanction.  *See, e.g.*, *Trudeau*, 237 F.R.D. at 335 ("[A]djudging these documents as waived would be too austere a remedy when the deficiencies can be readily rectified at this juncture of the litigation."); *see also Sajda*, 265 F.R.D. at 339 ("Although the initial version of the privilege log was deficient, the more current version appears to meet the requirements document by document.").  In *Trudeau*, for example, the privilege logs at issue were "woefully inadequate" in that they (i) did not identify the sender or recipients of withheld documents, (ii) did not specify the dates sent or received, (iii) provided only meager or cursory document descriptions, and (iv) failed to identify the type of privilege being asserted.  *See* 237 F.R.D. at 334.  Nonetheless, the Court in *Trudeau* declined to "waive *carte blanche* the privileges" after considering supplementation by the defendants in that case as well as the documents themselves.  *Id.* at 335.  In this case, the Order criticized Clemens for only one of the

26

shortfalls identified in *Trudeau* (insufficient descriptions in the log, *see* Order at 7), and that shortfall has been rectified.  Indeed, Clemens has therefore undertaken a good faith effort to go above and beyond the possible requirements of the Federal Rules of Civil Procedure to comply with the Court's directives and perceived preferences.   For all these reasons, Clemens respectfully requests that the Court reconsider its waiver ruling so the Court and parties can proceed on the merits of Clemens's privilege assertions and the rest of the case.

## <u>CONCLUSION</u>

For the foregoing reasons, Clemens respectfully requests that the Court reconsider and revise the Order dated September 17, 2013 and filed September 18, 2013.  Clemens also expressly requests that the Court set a hearing on this motion.  *See, e.g.*, *Trans-Pro Logistic Inc.*, 2010 WL 4065603, at *3.  Clemens also requests all other relief to which he is entitled.

Respectfully submitted,

RUSTY HARDIN & ASSOCIATES, LLP

By   /s/
Rusty Hardin, *Admitted Pro Hac Vice*
rhardin@rustyhardin.com
Joe Roden, *Admitted Pro Hac Vice*
jroden@rustyhardin.com
Jeremy T. Monthy, *Admitted Pro Hac Vice*
jmonthy@rustyhardin.com
1401 McKinney Street, Suite 2250
Houston, Texas  77010-4035
Telephone:  (713) 652-9000
Facsimile:  (713) 652-9800

*Attorneys for Defendant*