UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
BRIAN G. McNAMEE,

                               Plaintiff,                           09 Civ. 1647(SJ)(CLP)

       -against-

WILLIAM ROGER CLEMENS,

                               Defendant.
------------------------------------------------------------------x

# PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION FOR RECONSIDERATION

Richard D. Emery
Earl Ward
Debra L. Greenberger
Emery Celli Brinckerhoff & Abady LLP
75 Rockefeller Plaza, 20th Floor
New York, NY 10019

*Counsel for Plaintiff*

## TABLE OF CONTENTS

PAGE NO(s)

TABLE OF AUTHORITIES ....................................................................................ii-iv

PRELIMINARY STATEMENT ................................................................................. 1

ARGUMENT ........................................................................................................... 3

    I.      Legal Standard .................................................................................. 3

    II.     The Court Did Not Overlook Any Relevant Law ................................. 4

    III.    The Court Did Not Overlook Any Relevant Facts ................................ 7

         A.     The Court's Order Did Not Exceed Plaintiff's Request for Relief ............ 7

         B.     The Court Did Not Overlook Any of Clemens' Factual Submissions........ 8

         C.     Clemens Failed to Narrow His Privilege Invocation .................................. 9

         D.     Clemens' Belated Challenges to Breadth and Burdensomeness............... 10

         E.     It Was Clemens' Burden, Not the Court's, to Supply the Necessary Context.................................................................................................... 12

    IV.    Enforcement of the Court's Order Would Not Be Unfair .................................................................................................... 13

         A.     Plaintiff Argued That Clemens Waived the Asserted Privileges by Failing to Produce an Adequate Privilege Log .......................................... 13

         B.     The Court Correctly Found That Clemens Waived His Privilege Claims..................................................................................................... 14

         C.     The Court Was Well Within Its Authority to Issue Its Order, and No Additional Findings of Fact Were Required ....................................... 17

    V.     Plaintiff Opposes Any Stay of the Order Compelling Production........................ 19

CONCLUSION....................................................................................................... 21

i

## <u>TABLE OF AUTHORITIES</u>

<u>PAGE NO(s)</u>

### <u>FEDERAL CASES</u>:

*A.I.A. Holdings, S.A. v. Lehman Bros.*,
    No. 97 Civ. 4978, 2000 WL 1538003 (S.D.N.Y. Oct. 17, 2000) .............................. 14, 16

*Aiossa v. Bank of Am., N.A.*,
    No. CV 10-01275, 2011 WL 4026902 (E.D.N.Y. Sept. 12, 2011).................................... 6

*Allied Irish Banks v. Bank of Am., N.A.*,
    240 F.R.D. 96 (S.D.N.Y. 2007) ................................................................................... 12

*Bogan v. Nw. Mut. Life Ins. Co.*,
    163 F.R.D. 460 (S.D.N.Y. 1995) ................................................................................. 20

*Bowne of N.Y. City, Inc. v. AmBase Corp.*,
    150 F.R.D. 465 (S.D.N.Y. 1993) ........................................................................... 15, 16

*City of New York v. Milhelm Attea & Bros., Inc.*,
    591 F. Supp. 2d 234 (E.D.N.Y. 2008) .................................................................. 3, 4, 11

*Clinton v. Jones*,
    520 U.S. 681 (1997)..................................................................................................... 20

*Com-Tech Assocs. v. Computer Assocs. Int'l, Inc.*,
    753 F. Supp. 1078 (E.D.N.Y. 1990) ........................................................................... 20

*DLC Mgmt. Corp. v. Town of Hyde Park*,
    163 F.3d 124 (2d Cir. 1998)........................................................................................ 18

*Egiazaryan v. Zalmayev*,
    No. 11 Civ. 2670, 2013 WL 945462 (S.D.N.Y. Mar. 8, 2013) ................................ 12, 13

*Favors v. Cuomo*,
    285 F.R.D. 187 (E.D.N.Y. 2012) ................................................................................ 14

*FG Hemisphere Assocs. v. Republique Du Congo*,
    No. 01 Civ. 8700, 2005 WL 545218 (S.D.N.Y. March 8, 2005)............................... 17-18

*Fleisher v. Phoenix Life Ins. Co.*,
    No. 11 Civ. 8506, 2013 WL 42374 (S.D.N.Y. Jan. 3, 2013)............................................ 5

*Fox Indus. v. Gurovich*,
    No. CV 03-5166, 2006 WL 2882580 (E.D.N.Y. Oct. 6, 2006)........................................ 18

*GenOn Mid-Atlantic, LLC, v. Stone & Webster, Inc.*,
    No. 11 Civ. 1299, 2011 WL 5439046 (S.D.N.Y. Nov. 10, 2011) ..................................... 5

*Haugh v. Schroder Inv. Mgmt.*,
    No. 02 Civ. 7955, 2003 WL 21998674 (S.D.N.Y. Aug. 25, 2003) ..................................... 8

*Horace Mann Ins. Co. v. Nationwide Mut. Ins. Co.*,
    240 F.R.D. 44 (D. Conn. 2007).................................................................................... 7, 15

*In re Chevron Corp.*,
    749 F. Supp. 2d 170 (S.D.N.Y. 2010) ...................................................................... 16, 18

*In re Grand Jury Subpoenas*,
    265 Supp. 2d 321 (S.D.N.Y. 2003).......................................................................... 12-13

*In re Grand Jury Subpoenas Dated March 19, 2002 & August 2, 2002*,
    318 F.3d 379 (2d Cir. 2003)............................................................................................ 12

*In re Health Mgmt. Sys., Inc. Secs. Litig.*,
    113 F. Supp. 2d 613 (S.D.N.Y. 2000)................................................................................ 3

*In re Houbigant, Inc.*,
    914 F. Supp. 997 (S.D.N.Y. 1996) .................................................................................... 5

*In re Rivastigmine Patent Litig.*,
    237 F.R.D. 69 (S.D.N.Y. 2006) ................................................................................... 6, 19

*Metro. Opera Ass'n, Inc. v. Local 100, Hotel Emps. and Rest. Emps. Int'l Union*,
    212 F.R.D. 178 (S.D.N.Y. 2003) .................................................................................... 19

*Nken v. Holder*,
    556 U.S. 418 (2009)......................................................................................................... 20

*OneBeacon Ins. Co. v. Forman Int'l, Ltd.*,
    No. 04 Civ. 2271, 2006 WL 3771010 (S.D.N.Y.  Dec. 15, 2006)................................... 15

*Orbit One Commc'ns, Inc. v. Numerex Corp.*,
    255 F.R.D. 98 (S.D.N.Y. 2008) ........................................................................................ 5

*Reilly v. Natwest Mkts. Grp., Inc.*,
    181 F.3d 253 (2d Cir. 1999)...................................................................................... 13, 19

*Residential Funding Corp. v. DeGeorge Fin. Corp.*,
    306 F.3d 99 (2d Cir. 2002)........................................................................................ 17, 19

*Sadofsky v. Fiesta Prods., LLC*,
    252 F.R.D. 143 (E.D.N.Y. 2008) .................................................................................... 14

*SafeCo Ins. Co. of Am. v. M.E.S., Inc.*,
　　289 F.R.D. 41 (E.D.N.Y. 2011) ..................................................... 6

*SEC v. Thrasher*,
　　No. 92 Civ. 6987, 1996 WL 125661 (S.D.N.Y. Mar. 20, 1996) ........................ 4

*Shrader v. CSX Transp., Inc.*,
　　70 F.3d 255 (2d Cir. 1995) ......................................................... 3

*Starter Corp. v. Converse, Inc.*,
　　170 F.3d 286 (2d Cir. 1999) ....................................................... 14

*United States v. Constr. Prods. Research, Inc.*,
　　73 F.3d 464 (2d Cir. 1996) ........................................................ 15

*United States v. Seltzer*,
　　227 F.3d 36 (2d Cir. 2000) ........................................................ 17

*Weiss v. Nat'l Westminster Bank, PLC*,
　　242 F.R.D. 33 (E.D.N.Y. 2007) ..................................................... 14


**STATE CASES**:

*Tirado v. Miller*,
　　75 A.D.3d 153 (N.Y. App. Div. 2010) .............................................. 14


**RULES**:

Fed. R. Civ. P. 26(b)(2)(B) ......................................................... 11, 19

Fed. R. Civ. P. 26(b)(5)(A) ......................................................... 18

Fed. R. Civ. P. 37(b)(2) ............................................................ 19

Local Rule 26.2 ................................................................. *passim*

iv

Plaintiff Brian McNamee ("Plaintiff" or "McNamee") submits this memorandum of law in opposition to defendant Roger Clemens' ("Defendant" or "Clemens") motion for reconsideration of this Court's September 17, 2013 Order granting Plaintiff's motion to compel (the "Order").

## PRELIMINARY STATEMENT

Clemens' motion is audacious: Reconsideration is an extraordinary remedy and should be reserved for the infrequent case where the Court overlooked governing law or dispositive facts. But Clemens demonstrates no such legal or factual missteps. Instead, his motion misrepresents the Court's Order, re-hashes unsuccessful arguments he previously made, and quarrels with the Court's well-supported factual determinations.

This Court reviewed the parties' submissions and undertook an extensive *in camera* review of hundreds of documents Clemens claimed were privileged. Its findings are thus entitled to deference. And the Court has broad authority to resolve discovery disputes and fashion an appropriate remedy for a party's non-compliance with his discovery obligations.

Each of the premises underlying Clemens' motion is erroneous. First, Clemens runs afoul of clear rules of court by withholding allegedly privileged documents without providing any useful information about them. This is a bedrock violation of Rule 26. Clemens' claim that his boilerplate privilege invocations constitute a categorical privilege log does not hold up to even minimal scrutiny. And the Court's finding of waiver by virtue of this crystal clear violation of basic discovery obligations is bolstered by Clemens' continuing intransigence: to this day, Clemens has never provided a privilege log to Plaintiff.

Second, Clemens ignores that it is *his* burden to establish that a privilege applies and instead, without support, attempts to shift that burden onto the Court. But it is not the Court's

1

role to speculate as to the potentially privileged purpose of conversations; Clemens was required to so demonstrate, and the Court, after *in camera* review, found that he failed to do so.  Clemens now attempts to blame the Court for failing to conjure arguments to bar production that Clemens admits he never made.

Third, Clemens misrepresents the record, spinning it to claim that the Court overlooked relevant facts and granted Plaintiff relief he did not seek.  The Court granted only the relief sought in Plaintiff's motion — compelling the production of communications with Messrs. Householder and Hendricks on specified topics — and no more.  And the Court's Order demonstrates that the Court considered Clemens' factual submissions but determined, in a finding entitled to deference, that Clemens did not meet his burden of establishing the elements of the work product or attorney-client privileges.

Finally, Clemens' instant motion presents no legitimate challenge to this Court's alternative ground for production — that the documents to be produced are, in fact, neither privileged nor work product.  Rather, Clemens asks the Court once again to accept his conclusory assertions that the documents contain legal advice "and/or" litigation strategy — arguments that were originally offered *prior* to the Court's *in camera* review — as a basis for reconsideration.  The Court correctly rejected those arguments in its Order, and should do so again now without hesitation.

This reconsideration motion, and Clemens' actions in the wake of filing it — submitting reams of documents that he, *post hoc*, has determined are not privileged notwithstanding that he has been withholding them for months — reinforces the propriety of the Court's Order.  Having belatedly adopted a stance *partially* consistent with what has always been his clear discovery obligation, he now admits that "no privilege applies" to hundreds of

previously withheld documents.  The fact that Clemens now admits that he never even analyzed whether each communication was actually privileged before offloading hundreds of documents for the Court's *in camera* review, demonstrates a cavalier attitude towards the Court's function and betrays an arrogance that itself should preclude reconsideration.  Clemens' decision to flout unambiguous rules belies his claims of good faith.  Reconsideration is not warranted.

<u>**ARGUMENT**</u>

### I.     Legal Standard

"Reconsideration is an 'extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources.'" *City of New York v. Milhelm Attea & Bros., Inc.*, 591 F. Supp. 2d 234, 236 (E.D.N.Y. 2008) (quoting *In re Health Mgmt. Sys., Inc. Secs. Litig.,* 113 F. Supp. 2d 613, 614 (S.D.N.Y. 2000)).  "The standard for granting such a motion is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked — matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995).  "[A] motion to reconsider should not be granted where the moving party seeks solely to relitigate an issue already decided." *Id.* at 257.

Clemens' motion does not come close to satisfy this stringent burden.  Clemens offers three primary contentions in support of his motion: (1) the court overlooked relevant law; (2) the court overlooked relevant facts; and (3) the court's ruling is unfair.  All three arguments lack merit.  In reality, Clemens merely seeks to re-assert arguments he raised in opposition to the motion to compel — arguments the Court's thorough Order carefully considered and rejected.

3

## II.   The Court Did Not Overlook Any Relevant Law

Despite Clemens' many imaginative arguments, there is no legal authority that permits a party in litigation to assert evidentiary privileges over withheld evidence without explaining how or why those privileges apply.  Citing an array of inapposite precedent, Clemens belabors the truism that a categorical privilege log may be used in lieu of a document-by-document log where the use of a categorical log will reduce expense and inefficiency and "a more detailed log would be of no material benefit to the discovering party in assessing whether the privilege claim is well grounded."  *SEC v. Thrasher*, No. 92 Civ. 6987, 1996 WL 125661, at *1 (S.D.N.Y. Mar. 20, 1996).[1]  But far from overlooking this aspect of the Local Rules, the Court acknowledged that a "document-by-document privilege log is not always required," yet found in this instance that Clemens' "written summary continues to lack sufficient information as to the content of the documents to enable plaintiff or the Court to evaluate whether each of the withheld documents is privileged."  D.E. 93[2] at 6 (citing Local Rule 26.2); *see also id.* at 4 n.7.

Rather than pointing out relevant authority overlooked by the Court, Clemens improperly seeks to quarrel with that determination.  But a motion for reconsideration is not "an occasion for repeating old arguments previously rejected,"  *Milhem Attea & Bros., Inc.*, 591 F.

---

[1] Despite Clemens' reliance on it, *Thrasher* is inapposite.  There, the disputed request for production sought "all communications between defense counsel concerning the lawsuit," and the court's holding that a detailed privilege log was unnecessary hinged on the fact that such documents would ordinarily be covered by the work product doctrine.  1996 WL 125661, at *1.  Here, Plaintiff is seeking documents which are presumptively *not* privileged (and which the Court has now held are not entitled to attorney-client or work product protection).  Moreover, the party seeking production in *Thrasher*, the Securities and Exchange Commission, made "no effort to explain what benefit it [would] gain from a detailed document-by-document log."  *Id.* at *2.  But McNamee has explained, in numerous letters and in a detailed motion to compel, exactly why he needs a more detailed privilege log (or any privilege log).  And, as the Court recognized, Plaintiff's concerns were well founded because Clemens' vague "categorical" descriptions masked the withholding of numerous non-privileged documents.  Most crucially, *Thrasher* concerned whether a categorical log could properly be used in lieu of a document-by-document log.  But that is not the issue here: The conclusory privilege objections Clemens raised do not come close to satisfying the requirements for a categorical privilege log, as detailed herein.

[2] All "D.E." citations herein refer to docket entries in this matter.

Supp. 2d at 236, nor an opportunity "to reargue those issues already considered when a party

does not like the way the original motion was resolved," *In re Houbigant, Inc.*, 914 F. Supp. 997,

1001 (S.D.N.Y. 1996).

Even if the Court were inclined to reconsider its decision on this score, its conclusion was

entirely correct: the descriptions Clemens provided are nowhere near adequate to support his

assertions of privilege.  Even where a categorical privilege log is appropriate, it must supply

sufficient information about the characteristics common to each document in a given category to

establish that one or more privileges apply to each of them.  *See, e.g.*, *Orbit One Commc'ns, Inc.*

*v. Numerex Corp.*, 255 F.R.D. 98, 109 (S.D.N.Y. 2008) (noting that a party "may not assert a

blanket claim of privilege and completely refuse to comply with the document request," but

"must justify its assertion of privilege with regard to each category, and the description of each

category must provide sufficient information for [the adversary] to assess any potential

objections to the assertions of . . . privilege"); *see also Fleisher v. Phoenix Life Ins. Co.*, No. 11

Civ. 8506, 2013 WL 42374, at *3 (S.D.N.Y. Jan. 3, 2013) (finding defendant's categorical log

inadequate where it "list[ed] only four broad classes of documents" with "exceedingly general

and unhelpful" descriptions); *cf. GenOn Mid-Atlantic, LLC, v. Stone & Webster, Inc.*, No. 11

Civ. 1299, 2011 WL 5439046, at *11 (S.D.N.Y. Nov. 10, 2011) (permitting the use of a

categorical privilege log whose entries "generally indicate[d] the type of document, and the

subject matter, date, authors, and recipients of the document, as required by Local Rule 26.2").

The descriptions Clemens provided are woefully inadequate in this regard, as this Court

found.  Clemens merely makes the boilerplate representation that:

> The privileged documents encompass: (1) confidential communications between
> Mr. Clemens and/or his representatives and his attorneys and/or the attorneys'
> representatives that were made for the purpose of facilitating the rendition of
> professional legal services to Mr. Clemens; (2) material prepared or mental

> impressions developed in anticipation of litigation or for trial by Mr. Clemens, his attorneys, his consultants, insurers, and/or agents; and/or (3) communications made in anticipation of litigation or for trial between Mr. Clemens, his attorneys, his consultants, insurers, and/or agents, or among Mr. Clemens' attorneys, consultants, insurers, and/or agents.[3]

D.E. 87-15 at 27.  "While this statement accurately sets out the standards for the two privileges, it is devoid of any other content.  Rather, it is the sort of conclusory assertion that is insufficient to invoke the protection of either privilege."  *Aiossa v. Bank of Am., N.A.*, No. CV 10-01275, 2011 WL 4026902 at *10 (E.D.N.Y. Sept. 12, 2011).  Indeed, these "descriptions" are no more than pro forma restatements of the elements of the work product and attorney-client privileges with Mr. Clemens' name inserted; they could apply to *any party* in *any case* simply by changing "Clemens" to another proper noun.  Aside from Clemens' self-interested say-so, "nothing on the log informs us whether the document contains legal advice or was prepared to elicit legal advice from others or informs whether the notes were prepared in anticipation of litigation or for any other reason.'"  *SafeCo Ins. Co. of Am. v. M.E.S., Inc.*, 289 F.R.D. 41, 47 (E.D.N.Y. 2011) (internal alterations and quotation marks omitted).  To argue under these circumstances that a more detailed log would not have materially benefitted Plaintiff's ability to assess the validity of Clemens' assertions of privilege is wishful thinking.[4]

As another Magistrate Judge in this Circuit has aptly observed:

---

[3] Clemens's repeated use of "and/or" in these descriptions is particularly illustrative of their insufficiency.  Without specific information about who authored and received the documents in each category and in what specific context, Plaintiff is left to speculate about whether any communications are actually covered by the work product doctrine or the attorney-client privilege.  *See, e.g.*, *In re Rivastigmine Patent Litig.*, 237 F.R.D. 69, 87-88 (S.D.N.Y. 2006) (finding references to communications between clients and "Australian patent agents and/or Australian law firms" insufficient to sustain the withholding party's burden to establish the applicability of any privilege).

[4] Clemens appears to make the bizarre claim that his privilege log must have been adequate because Plaintiff's counsel was able to prepare a motion to compel based on it.  Obviously, the motion was based on the log's *inadequacy;* Plaintiff argued that Clemens had not met his burden to show that the asserted privileges were applicable precisely because the "logs" he provided lacked necessary information about the nature of the withheld communications.  Indeed, the paucity of information in Clemens' stated objection forced Plaintiff to rely on publicly available information and web searches for much of the factual matter in the motion to compel.

> The purpose of preparing the privilege log is to assist the court and the parties in performing the careful analysis that a privilege or immunities evaluation demands. An invocation of a claim of privilege without producing an accompanying privilege log can be an unfair discovery tactic that increases delay in the resolution of lawsuits, fosters excessive motion practice, increases the costs of litigation, and greatly increases the work of the court. In addition, the very act of preparing a privilege log has a salutary effect on the discovery process by requiring the attorney claiming a privilege to actually think about the merits of [an] assertion before it is made, and to decide whether such a claim is truly appropriate. Moreover, the requirement of a privilege log is intended to underscore the gravity, if not the solemnity, of an assertion that otherwise presumptively discoverable documents are exempt from discovery. The requirement that detail be provided operates to discourage pro forma, half-baked, dilatory, and even jocular assertions of privilege.

*Horace Mann Ins. Co. v. Nationwide Mut. Ins. Co.*, 240 F.R.D. 44, 47 (D. Conn. 2007).  The

Court was correct in holding Clemens to his burden of producing a log, and his belated reversal

of course, taken only *after* the Court conducted *in camera* review, demonstrates his failure to

take seriously the log's important function.

### III.   The Court Did Not Overlook Any Relevant Facts

#### A.  The Court's Order Did Not Exceed Plaintiff's Request for Relief

Clemens misrepresents the record in claiming that the Court granted Plaintiff documents

Plaintiff did not seek.  *See* D.E. 97 at 9 (#1).  Plaintiff's motion was clear that he sought to

compel *all* communications between (1) defendant and Householder on specified topics and (2)

between defendant and Hendricks on specified topics.  *See* D.E. 87 at 7, 19.  Plaintiff explained

that he was entitled to all such documents based on Clemens' waiver of any applicable privilege

by his failure to submit a privilege log*, id.* at 9 & n.5, and due to Clemens' failure to meet his

burden of demonstrating that any privilege attached to his (or his counsel's) communications

with a sports agent and public relations strategist, *id.* at 15-18.

On August 13, after Defendant submitted his opposition brief, but before Plaintiff

submitted his reply brief, the Court ordered Defendant to submit all the withheld documents for

*in camera* review.  Given space constraints, Plaintiff's reply brief focused on guiding the Court's

inquiry in reviewing documents *in camera*.  *See* D.E. 90 at 10 (urging the Court to find that no

privilege applies to documents "not authored by Hardin's firm" and "not created because of the

Texas litigation or Congressional inquiry").  These arguments in no way disclaimed or

abandoned Plaintiff's prior waiver argument, and Clemens takes these statements out of context

by claiming these were the only documents McNamee sought.  In fact, Plaintiff nowhere limited

the relief originally sought in his motion to compel.  *See* D.E. 87 at 7, 19.  To the contrary, is his

reply brief, Plaintiff reiterated his argument that Clemens failed to produce a privilege log — the

consequence of which is waiver of the privilege.  *See* D.E. 90 at 9-10.

### B.  The Court Did Not Overlook Any of Clemens' Factual Submissions

Clemens misrepresents the Court's Order in claiming that the Court "overlooked"

evidence which, he claims, supports his privilege designations.  To the contrary, the Order

reveals that the Court reviewed all of the evidence and reached a factual conclusion that

Defendant had merely submitted "'conclusory descriptions'" of the role played by Householder

and Hendricks.  D.E. 93 at 13 (quoting *Haugh v. Schroder Inv. Mgmt.*, No. 02 Civ. 7955, 2003

WL 21998674, at *3 (S.D.N.Y. Aug. 25, 2003)).

Because disagreeing with the Court's characterization of Clemens' submission is not

grounds for reconsideration, Clemens couches his disagreement in an argument that the Court

"overlooked" relevant evidence.  But the Order makes clear that the Court did nothing of the

sort.  For example, Clemens falsely claims that the Order did not refer to Randy Hendricks'

affirmation.  Yet throughout its Order, the Court cited — and even quoted — portions of

Clemens' brief which cited the affirmation.  *See, e.g.*, D.E. 93 at 3 & n.5; *id.* at 12.  Similarly,

while Clemens claims that the Court ignored evidence that "counsel, not Clemens, retained

Public Strategies, Inc.," D.E. 97 at 10, the Order explicitly states that "Hardin . . . hired Public Strategies."  D.E. 93 at 2.

More fundamentally, having conducted a thorough *in camera* review, and having reviewed submissions from both parties, the Court was not obligated to accept Clemens' conclusory statements.  For example, Clemens' motion claims that Hendricks "only served as a legal adviser," because "Clemens' MLB career had ended."  D.E. 97 at 9.  But Clemens made the exact same claims in opposition to the motion to compel, and McNamee rebutted them.  *See* D.E. 90 at 8 (detailing the non-legal services Hendricks provided after the Mitchel Report was issued). The Court has now had the additional benefit of an *in camera* review, which confirmed that Hendricks did not provide legal advice.  D.E. 93 at 12 (noting that "the majority of the communications with both Householder and Hendricks facilitated the development of a public relations campaign and media strategy . . . in the face of allegations that he used performance-enhancing drugs").

Finally, Clemens persists in claiming that he did not engage in a public relations campaign to defame McNamee.  D.E. 97 at 10.  Yet, the Court's *in camera* review revealed "a public relations campaign and media strategy."  D.E. 93 at 12.  And, as noted in Plaintiff's reply, Judge Johnson has twice held that a jury is entitled to find that Clemens' public relations campaign defamed McNamee.  D.E. 35, 86.  Disagreeing with a Court's (two Courts') holding is not grounds for reconsideration.

### C.  Clemens Failed to Narrow His Privilege Invocation

While Clemens asserts that he engaged in "good faith efforts" to narrow the privilege dispute, the record is to the contrary.

Clemens asserted a privilege as to every single communication with Mr. Householder or Mr. Hendricks.  Despite meet-and-confers, pre-motion letters, and Plaintiff's formal motion,

Clemens did not narrow that assertion but instead insisted that all such communications were privileged. Yet when the Court undertook the "arduous" task of reviewing hundreds of documents *in camera*, the Court determined that Clemens had withheld hundreds of non-confidential documents. D.E. 93 at 8. That is enough to support the Court's conclusion that Clemens failed to narrow his privilege invocations in response to Document Requests 55 and 57. D.E. 93 at 13. Clemens' response to distinct and unrelated document demands does not speak to the propriety of his privilege invocations concerning the document requests at issue here.

Clemens' assertion that he engaged in a "good faith" narrowing of his privilege assertion is particularly manipulative because it was *only after the Court's Order* that Clemens produced 785 additional responsive documents for which he now concedes "no privilege applies." D.E. 97 at 3. Clemens had submitted dozens of these documents for the Court's *in camera* review, needlessly burdening the Court. Withholding hundreds of responsive documents without any basis for claiming privilege undermines Clemens' assertions of good faith.[5]

### D. Clemens' Belated Challenges to Breadth and Burdensomeness

Clemens claims that the Court erred because it "overlooked" his objections to Document Requests 55 and 57 on relevance, breadth, and burdensomeness grounds. But Clemens never advanced this argument in his opposition to the motion to compel, and it is not for the Court to hypothesize arguments a litigant might wish to pursue.

Plaintiff's motion was clear: It sought to compel all documents responsive to Documents Requests 55 and 57. *See* D.E. 87-1 at 7. In Clemens' opposition, Clemens raised but one

---

[5] Clemens claims that he did not produce these documents earlier for fear of facing a claim of subject matter waiver. This makes no sense. First, if, as Clemens now admits, "no reasonable argument exists that such production would constitute a subject-matter waiver," D.E. 97. at 25, then Clemens obviously never had any grounds for withholding the documents. Moreover, Clemens cites no authority for the novel proposition that counsel may withhold concededly non-privileged documents from discovery for fear that disclosure would somehow waive valid privilege claims as to completely separate documents.

objection to Plaintiff's motion to compel such documents: privilege.  Having raised only a privilege challenge and having failed to meet his burden of proving the documents were privileged, Clemens cannot now raise other purported (boilerplate) objections in a motion for reconsideration.  Reconsideration is not "an opportunity for making new arguments that could have been previously advanced." *Milhelm Attea & Bros*., 591 F. Supp. 2d at 236 (internal quotation marks omitted).  Clemens effectively admits that his boilerplate objections were not raised in his opposition to the motion to compel, but he nonetheless seeks reconsideration because the objections "were part of the record before the Court."  D.E. 97 at 11.  This attempt to blame the Court for failing to consider arguments Clemens never made is improper.

Moreover, Clemens' objections are unfounded.  Clemens now, for the first time, presses his original rote invocation of breadth, relevance, and burdensomeness objections as to nearly every document request Plaintiff propounded.  *See generally* D.E. 87-15.  Yet at no point — not in the meet-and-confers, not during motion practice, not even in Clemens' current reconsideration motion — has Clemens ever made a specific argument about any impropriety in the scope of Document Request 55 or 57.  And the demands are well within what is proper under the broad discovery contemplated by the Federal Rules.  First, Plaintiff's requests are not overbroad or irrelevant:  Requests 55 and 57 are limited to communications "concerning the Criminal Action, Mitchell, the Mitchell Report, the Congressional Hearings, the Complaint, steroids, HGH, performance enhancing substances, and/or McNamee."  D.E. 87-14 at 8.  These are the specific subject matters relevant to Plaintiff's claims.  And, as to burdensomeness, it appears that Clemens has now identified all responsive documents, and has included them in the privilege log submitted to the Court.  The fact that all documents were located rebuts any claim of undue burden.  *Cf.* Fed. R. Civ. P. 26(b)(2)(B) (providing that a party seeking to avoid

discovery of electronically stored information "must show that the information is not reasonably accessible because of undue burden or cost").

### E.  It Was Clemens' Burden, Not the Court's, to Supply the Necessary Context

Clemens faults the Court for purportedly not considering the "facts and context" that would establish Clemens' privilege claims.  Clemens has it exactly backwards.  It is Clemens' burden — not the Court's — to prove that the attorney-client or work product privilege applies. *Egiazaryan v. Zalmayev*, No. 11 Civ. 2670, 2013 WL 945462, at *4 (S.D.N.Y. Mar. 8, 2013) (attorney-client privilege); *Allied Irish Banks v. Bank of Am., N.A.*, 240 F.R.D. 96, 105 (S.D.N.Y. 2007) (work product privilege).  This burden, the Second Circuit has counseled, "is a heavy one," and cannot be met by "speculative" or "conclusory" affidavits.  *In re Grand Jury Subpoenas Dated March 19, 2002 & August 2, 2002*, 318 F.3d 379, 384, 386 (2d Cir. 2003).

The Court gave Clemens every opportunity to meet his burden:  After Clemens sought to submit a sur-reply to Plaintiff's pre-motion letter (seeking to file a motion to compel), the Court ordered full motion practice on July 19.  Yet rather than taking seriously his burden of establishing the applicability of the privilege, Clemens submitted vague and conclusory affidavits from his attorney and his sports agent — and no affidavit from Clemens himself or from Mr. Householder.  *See, e.g.*, D.E. 90 at 7 (listing topics never addressed in affidavits).  It was Clemens' burden to demonstrate the allegedly legal purpose of communications with a sports agent or public relations strategist.[6]

---

[6]  In a last ditch attempt to urge the Court to reconsider its holding, Clemens claims that his litany of communications with the press, youtube.com videos, press conferences and appearances on *60 Minutes* were not "designed to restore his public image" but were designed only to influence prosecutors.  D.E. 97 at 13.  This assertion is belied by the very nature of the media strategy Clemens applied, the lack of any contemporaneous support for this unsworn claim, and by Clemens' decision to appear before Congress even when Congress was willing to cancel the hearing.  Compl. ¶ 36.  But even if the Court were persuaded by this *post-facto* justification, *In re Grand Jury Subpoenas*, 265 F. Supp. 2d 321, 326 (S.D.N.Y. 2003) would not apply.  First, that case was not a diversity action, so the court "applied the principles of federal common law rather than New York State privilege

## IV.    Enforcement of the Court's Order Would Not Be Unfair

Contrary to Clemens' scolding tone and insinuations of impropriety, the Court's Order was an entirely appropriate and predictable response to discovery abuses that have been ongoing for months. Clemens argues that the Court's Order is fundamentally unjust because it went beyond Plaintiff's requested relief and sanctioned Clemens without any accompanying finding of bad faith. He is wrong on both counts. The Court did not "exceed" the relief requested by Plaintiff (although, even if the Court had found waiver *sua sponte*, that would be of no moment). And the Court did not sanction Clemens, but rather found — correctly — that he failed to satisfy his burden of demonstrating that the claimed privileges apply to the withheld documents. Even if the Order could be construed as a sanction, the Court acted well within its inherent authority and the strictures of the Federal Rules of Civil Procedure in issuing it. After months passed in which Clemens had notice of his failure to comply with Rule 26 and failed to take any action to rectify it, the Court followed numerous other courts in this district and throughout the Second Circuit in finding waiver. Clemens' motion presents no grounds for revisiting that decision and should be denied.

### A.  Plaintiff Argued That Clemens Waived the Asserted Privileges by Failing to Produce an Adequate Privilege Log

The Court's Order is fair because Plaintiff argued in his motion to compel that Clemens' failure to provide an adequate privilege log waived any claim of privilege, as detailed *supra* at 7-8. This argument placed Clemens on notice that a waiver finding was a form of relief the Court could grant Plaintiff, and there was nothing inequitable about the Court's decision to choose that remedy. *Cf. Reilly v. Natwest Mkts. Grp., Inc.*, 181 F.3d 253, 270 (2d Cir. 1999) (noting the lack

---

law." *Egiazaryan*, 2013 WL 945462, at *7. State privilege law applies here. Moreover, unlike in *In re Grand Jury Subpoenas*, Clemens hired a public relations strategist long before there was any "climate of opinion pressing prosecutors" to indict (if there ever was such a climate), and Clemens' counsel was "skilled at public relations," and did not need "outside help." 265 F. Supp. 2d at 326.

of "rigid requirements on either the timing or the form of the notice afforded to a sanctioned

party" and concluding that notice was sufficient where a party's adversary specifically sought the

relief granted).  Even if Clemens were correct that Plaintiff "narrowed" his requested relief over

the course of this dispute — which he is not, *see supra* at 7-8 — that would not deprive the Court

of the power to Order appropriate relief.  *See Starter Corp. v. Converse, Inc.*, 170 F.3d 286, 299

(2d Cir. 1999) ("[T]he district court certainly has discretion to grant relief to a party even where

that party has earlier abandoned the same requested relief.").[7]  The Court did nothing improper.

### B.  The Court Correctly Found That Clemens Waived His Privilege Claims

The Court concluded, as a matter of substantive privilege law, that Clemens waived any

claim of evidentiary privilege over communications responsive to Document Requests 55 and

57.  In doing so, it relied on a well-established rule that "[f]ailing to include sufficiently

descriptive information [in a privilege log] may result in waiver of the privilege."  *Weiss v. Nat'l*

*Westminster Bank, PLC*, 242 F.R.D. 33, 66 (E.D.N.Y. 2007); *accord Favors v. Cuomo*, 285

F.R.D. 187, 222 (E.D.N.Y. 2012) (observing that "[c]ourts in this Circuit have long held" that an

inadequate privilege log may result in waiver); *Sadofsky v. Fiesta Prods., LLC*, 252 F.R.D. 143,

154 (E.D.N.Y. 2008) ("It is well established that failure to provide a privilege log in a timely

manner may result in waiver of objections on the basis of privilege." (internal quotation marks

omitted)); *A.I.A. Holdings, S.A. v. Lehman Bros.*, No. 97 Civ. 4978, 2000 WL 1538003, at *3

(S.D.N.Y. Oct. 17, 2000) ("The dearth of information in the index listing is so complete that the

listing is the functional equivalent of no listing at all . . . .  Where a party has completely failed to

---

[7] Clemens's citation to *Tirado v. Miller*, 75 A.D.3d 153 (N.Y. App. Div. 2010), is irrelevant.  There, the Appellate Division simply listed a series of circumstances under which New York state "trial courts may not order certain forms of relief without giving the parties an opportunity to be heard on the specifics."  *Id.* at 158 (noting also that "these circumstances are typically identified in statutes").  Discovery sanctions are not among them.  *See id.* at 158-59.  But the question is academic in any event, because Plaintiff's motion requested the precise relief the Court granted, and Clemens had ample opportunity to be heard.

provide an index of documents withheld on the ground of privilege, a finding of waiver is appropriate."); *see also OneBeacon Ins. Co. v. Forman Int'l, Ltd.*, No. 04 Civ. 2271, 2006 WL 3771010, at *7-8 (S.D.N.Y.  Dec. 15, 2006) (collecting cases).

      Most courts treat an inadequate privilege log as a simple failure to meet the burden borne by any party invoking an evidentiary privilege to prove that the privilege applies to any withheld communications.  *See United States v. Constr. Prods. Research, Inc.*, 73 F.3d 464, 473-474 (2d Cir. 1996) (noting that a privilege log is a tool to facilitate judicial review of an assertion of privilege, and that general allegations supported by vague descriptions are insufficient to carry a party's burden to show that the elements of a privilege claim are present); *Horace Mann Ins. Co.*, 240 F.R.D. at 47 ("An essential step in meeting the burden of establishing the existence of a privilege or any immunity from discovery is the production of an adequately detailed privilege log sufficient to enable the demanding party to contest the claim" (internal quotation marks omitted)).  "[I]f the party invoking the privilege does not provide sufficient detail to demonstrate fulfillment of all the legal requirements for application of the privilege, his claim will be rejected."  *Bowne of N.Y. City, Inc. v. AmBase Corp.*, 150 F.R.D. 465, 474 (S.D.N.Y. 1993).

      The Court's approach here is consistent with this body of law.  The Court found that Clemens' descriptions "clearly do not provide sufficient information as to the content of the documents to enable plaintiff or the Court to evaluate whether each of the withheld documents is privileged, as required by Rule 26."  D.E. 93 at 7.  That the Court also conducted *in camera* review does not alter the fact that it was Clemens' burden to show, through an adequate log coupled with other competent evidence, that the withheld documents are actually confidential.

*See Bowne*, 150 F.R.D. at 474.  Absent that showing, the Court was correct to find that any applicable privilege is waived.[8]

Courts in the Eastern and Southern Districts of New York routinely find waiver where a privilege log is inadequate or untimely, and do so without an explicit bad faith finding.  *See supra* at 14-15 (citing cases).  Clemens relies on authority from outside this Circuit to claim otherwise, but the authorities he cites stand for no more than the proposition that courts have discretion in deciding how strictly to enforce Rule 26.  Clemens cites no case undermining the clearly established rule that the Court has the authority to find waiver.  It may be that courts vary in how strictly they enforce the Rule, but "[t]o suggest . . . that any of these lines of authority is binding would be an overstatement."  *In re Chevron Corp.*, 749 F. Supp. 2d 170, 182 (S.D.N.Y. 2010).  In fact, the approach taken by the Court — waiver — has been lauded repeatedly for its faithfulness to the spirit of Rule 26.  *See, e.g.*, *A.I.A. Holdings, S.A.*, 2000 WL 1538003, at *3 n.1

Far from overlooking the controlling law, the Court selected an entirely appropriate option from the menu of remedies available to it in its discretion.  Nothing about the Court's Order warrants reconsideration.

---

[8] Notably, and contrary to Clemens' intimations, the Court did not order the production of any document it found to be privileged.  Instead, the Court held that, after performing an "arduous" *in camera* review, it "determined that neither protection (attorney-client or work product privilege) applies to the vast majority of records."  D.E. 93 at 8.  It observed that some documents "might potentially be considered privileged or work product depending on a further showing that the documents were prepared as part of litigation strategy and not media strategy — *a showing that has not been made in defendant's supporting papers*."  *Id.* at 8 n.10 (emphasis added).  In fact, the Court specifically concluded that, "for the vast majority of documents provided for *in camera* review, defendant has not shown that Householder or Hendricks performed anything other than standard public relations or agent services for Clemens, nor has he shown that his communications with either were necessary so that Rusty Hardin could provide Clemens with legal advice."  *Id.* at 12.  And the Court further determined that Clemens "failed to show that the work-product doctrine protects the documents at issue here" because "the topic of litigation strategy is rarely mentioned and in the rare instances when it is brought up, it is often contained within communications predominately focused on public relations and media strategy."  *Id.* at 15.  That the Court acknowledged that, under some conceivable factual scenario, such documents *could* be privileged is not tantamount to a concession that any document is in fact entitled to protection.  Indeed, the Court specifically concluded that Clemens did *not* make the factual showing necessary to support such a conclusion.

16

## C. The Court Was Well Within Its Authority to Issue Its Order, and No Additional Findings of Fact Were Required

Even if the Court's order were construed as a sanction, it would be entirely proper.  The Court has broad discretion to sanction discovery abuses, and need not find bad faith to do so unless the sanctioned conduct is a matter of litigation strategy — which a failure to follow court rules clearly is not.

 "Even in the absence of a discovery order, a court may impose sanctions on a party for misconduct in discovery under its inherent power to manage its own affairs."  *Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 106-07 (2d Cir. 2002).  That power includes the power to "police the conduct of attorneys as officers of the court . . . *without a finding of bad faith*."  *United States v. Seltzer*, 227 F.3d 36, 42 (2d Cir. 2000) (emphasis added); *see also Residential Funding Corp.*, 306 F.3d at 101 ("[D]iscovery sanctions, including an adverse inference instruction, may be imposed where a party has breached a discovery obligation not only through bad faith or gross negligence, but also through ordinary negligence.").  A bad faith finding is required only "when the court sanctions an attorney for conduct that is integrally related to the attorney's role as an advocate for his or her client."  *Seltzer*, 227 F.3d. at 40.

The decision to provide an inadequate privilege log is not within counsel's strategic discretion.  Clemens' counsel was, of course, free to withhold communications for which a good-faith argument existed as to the applicability of one or more evidentiary privileges.  *See id.*  But counsel is not free to flout the Local Rules for tactical reasons.  "It should be clear to all attorneys that the Federal Rules of Civil Procedure and the Local Civil Rules are not starting points for a discussion concerning the handling of privileged documents nor are they merely suggested practice guidelines that attorneys are free to disregard.  They are *rules,* and in the absence of a court Order or stipulation providing otherwise, they must be obeyed."  *FG*

17

*Hemisphere Assocs. v. Republique Du Congo*, No. 01 Civ 8700, 2005 WL 545218 at *5

(S.D.N.Y. March 8, 2005).  The requirements of Rule 26.2 are clear, a factor which — as the

Court's Order noted — "cut[s] in favor of waiver."  *In re Chevron Corp.*, 749 F. Supp. 2d 170,

182 (S.D.N.Y. 2010) (noting "our Circuit's holdings that an attorney's failure to adhere to a clear

rule of court or of procedure rarely will be regarded as excusable neglect").  Sanctioning failures

to comply with the Federal Rules is clearly within the Court's power to police attorney conduct.[9]

        But even if the Court *were* required to make a finding of bad faith in order to issue its

order, one would be amply supported here.  To justify a sanction, the Court need only find that a

party has "acted in conscious disregard of [its] discovery obligations."  *See DLC Mgmt. Corp. v.

Town of Hyde Park*, 163 F.3d 124, 136 (2d Cir. 1998) (internal quotation marks omitted).  As the

Court noted, it previously admonished Clemens for his deficient privilege logs, and specifically

for  his practice of improperly "group[ing] a broad range of documents together as one document

in violation of Federal Rule of Civil Procedure 26(b)(5)(A)."  D.E. 73 at 2 n.1.  With respect to

the documents at issue here, Plaintiff specifically pointed out as early as his April 1, 2013

deficiency letter that Defendant failed to produce a privilege log.  D.E. 87-2 ¶ 4.  And in his July

19 pre-motion letter, Plaintiff stated that "Defendant did not produce a privilege log," but rather

furnished only vague descriptions that are "patently insufficient" under the Local Rules.  D.E. 79

at 1.  Yet even today, after months of litigation that would not have been necessary absent

Clemens' intransigence, Plaintiff *still* has never seen a privilege log that complies with Rule 26.

---

[9] *DLC Mgmt. Corp. v. Town of Hyde Park*, 163 F.3d 124 (2d Cir. 1998), is not to the contrary.  There, the Second Circuit required a bad faith finding for discovery sanctions where a municipal litigant failed to produce undisputedly discoverable materials that were "in a Town Hall closet that defendants apparently had never bothered to search."  *Id.* at 135.  But that failure is much more akin to an overzealous litigation tactic than counsel's outright failure to comply with the procedural — even ministerial — requirements of the Civil Rules.  *Cf. Fox Indus. v. Gurovich*, No. CV 03-5166, 2006 WL 2882580 at *9 (E.D.N.Y. Oct. 6, 2006) (bad faith finding required to sanction an attorney for improperly instructing non-parties not to respond to subpoenas, where the conduct was "an example of the excess of zealous advocacy that seems to be the hallmark of his style of representation").  In contrast, it would make scant sense to hamstring judges from enforcing court rules unless they are violated in bad faith.

*Cf. In re Rivastigmine Patent Litig.*, 237 F.R.D. 69, 88 (S.D.N.Y. 2006) ( "Particularly after a motion to compel, submissions lacking the detail necessary to support the privilege claims are inadequate."); *Metro. Opera Ass'n*, *Inc. v. Local 100, Hotel Emps. and Rest. Emps. Int'l Union*, 212 F.R.D. 178, 222 (S.D.N.Y. 2003) (finding bad faith where a party failed to comply with Rule 26 even after its adversary's "continuing high-decibel allegations" of non-compliance and "numerous last clear chances to comply with their discovery obligations").

  Furthermore, the Court found that the privilege log that Clemens produced *in camera* — which Plaintiff, of course, has never seen — contained descriptions of withheld communications that were "exceedingly unhelpful."  D.E. 93 at 7.  And Clemens has now admitted that hundreds of documents were withheld for which no basis in fact existed to assert any evidentiary privilege. *See* D.E. 97 at 25 (noting that Clemens is serving Plaintiff with 78 documents previously submitted for *in camera review*, and 700 others previously withheld, "based on a good faith determination that no privilege applies").  Apparently, Clemens' use of vague "categories" of allegedly confidential communications was not sufficient even for his own attorneys to determine which documents are actually privileged.

  Under these circumstances, a bad faith finding is perfectly appropriate.  Given that Clemens *continues to this day* to refuse to provide Plaintiff with the privilege log required by Rule 26, sanctions are entirely proper.[10]

### V.  Plaintiff Opposes Any Stay of the Order Compelling Production.

---

[10] Federal Rule of Civil Procedure 37 would provide an independent ground for the Court's authority to issue its Order.  "Rule 37(b)(2) of the Federal Rules of Civil Procedure provides, in relevant part, that if a party fails to obey a discovery order, the court may make such orders in regard to the failure as are just." *Residential Funding Corp.*, 306 F.3d at 106 (internal quotation marks omitted).  The court enjoys "wide discretion in sanctioning a party for discovery abuses." *Reilly*, 181 F.3d at 267.  Here, the Court's May 2013 admonition placed Clemens on more than sufficient notice of his noncompliance with Rule 26, and his failure to produce an adequate log to date would justify Rule 37 sanctions.

"A stay is not a matter of right, even if irreparable injury might otherwise result.  It is instead an exercise of judicial discretion, and the propriety of its issue is dependent on the circumstances of the particular case."  *Nken v. Holder*, 556 U.S. 418, 433 (2009).  In determining whether to grant a stay, courts consider whether the applicant has made a strong showing that he is likely to succeed on the merits; whether the applicant will be irreparably injured absent a stay; whether issuance of the stay will substantially injure the other parties interested in the proceeding; and where the public interest lies.  *Id.* at 434.  "The first two factors of the traditional standard are the most critical."  *Id.*

Clemens' motion for reconsideration perfunctorily requests a stay of the Court's Order, but does not attempt to satisfy these criteria.  *See Clinton v. Jones*, 520 U.S. 681, 708 (1997) ("The proponent of a stay bears the burden of establishing its need.").  Clemens has not come close to establishing a likelihood of success on the merits; rather, he quarrels with the Court's entirely discretionary decision to enter a remedy that innumerable other courts in this Circuit have awarded under similar circumstances, and does not show that the Court overlooked anything.  Even if Clemens were to appeal to the district court, a party seeking to overturn a magistrate judge's "discovery ruling generally bears a 'heavy burden'" and must show that the challenged order was clearly erroneous.  *Com-Tech Assocs. v. Computer Assocs. Int'l, Inc.*, 753 F. Supp. 1078, 1099 (E.D.N.Y. 1990) ("Magistrates are considered to have broad discretion over nondispositive matters."); *see also Bogan v. Nw. Mut. Life Ins. Co.*, 163 F.R.D. 460, 463 (S.D.N.Y. 1995) (observing that where the magistrate judge "examined *in camera* each of the documents involved in light of the facts surrounding their creation . . . , we are not permitted to second guess his findings" but "must only examine whether they find reasonable support in the evidence").  Clemens' likelihood of success on the merits of his motion is exceedingly remote.

In contrast, a stay would substantially injure Mr. McNamee.  Plaintiff has been seeking the documents at issue here for months.  Further delay will impede Plaintiff's ability to prepare for depositions and to comply with discovery deadlines.  Without these documents it would be unwise to proceed with scheduling the vast majority of outstanding depositions, as the documents will likely shed light on the deponents and the deposition subjects.  The Court has already reviewed numerous letters and instructed the parties to engage in full-scale motion practice concerning this discovery dispute, and it has made its ruling.  Plaintiff is entitled to the benefit of that ruling as this litigation proceeds.

## CONCLUSION

For the foregoing reasons, it is respectfully submitted that Clemens' motion for reconsideration and request for a stay be denied.

Date:   October 11, 2013                    Respectfully submitted,
        New York, NY

                                            _____/s/_____
                                            Richard D. Emery
                                            Earl Ward
                                            Debra L. Greenberger
                                            EMERY CELLI BRINCKERHOFF
                                                & ABADY LLP
                                            75 Rockefeller Plaza, 20th Floor
                                            New York, NY 10019
                                            Telephone (212) 763-5000
                                            Fax (212) 763-5001
                                            *Counsel for Plaintiff*